**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| MANAGEMENT REGISTRY, INC., | Civil No. 17-5009 (JRT/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| A.W. COMPANIES, INC., ALLAN K. BROWN, WENDY BROWN, and ERIC BERG, | |
| Defendants. | |

> James M. Morris, **MORRIS & MORRIS, P.S.C.**, 217 North Upper Street, Lexington, KY 40507, and Janet M. Olawsky, Jessica M. Marsh, and Laura J. McKnight, **JACKSON LEWIS P.C.**, 150 South Fifth Street, Suite 3500, Minneapolis, MN 55402, for plaintiff.
>
> Darren M. Sharp and Lawrence P. Schaefer, **SCHAEFER HALLEEN LLC**, 412 South Fourth Street, Suite 1050, Minneapolis, MN 55415, for defendants.

Plaintiff Management Registry, Inc. ("MRI") brought this diversity action against A.W. Companies, Inc. ("A.W."), Allan and Wendy Brown, and Eric Berg for events that transpired after MRI acquired numerous business entities from Mr. Brown and two other non-parties. It was generally understood – but not necessarily agreed – that Mr. Brown's wife, Wendy Brown, would purchase some of those entities from MRI after the acquisition. Ms. Brown's purchase never happened.

When the negotiations between MRI and Ms. Brown broke down, Mr. Brown – who had been previously hired by MRI in relation to the acquisition – resigned or was

fired.  Allan and Wendy Brown promptly formed A.W. and employed Mr. Berg, who had worked for one of the entities that MRI acquired and that Ms. Brown was planning to purchase.  A.W. began hiring other employees that had worked for the company that Ms. Brown planned to purchase, and A.W. began servicing clients.

MRI filed this action alleging numerous business-related causes of action.  Simultaneous with its complaint, MRI moved for a temporary restraining order ("TRO") and preliminary injunction. The Court granted MRI an ex parte TRO against the Defendants to preserve the status quo pending a response from the Defendants.  The Court heard from MRI and Defendants on whether the Court should convert the TRO to a preliminary injunction.  Because there were factual disputes that prevented the Court from finding that MRI was likely to succeed on the merits of its claims and because MRI failed to show irreparable harm absent preliminary relief, the Court vacated the TRO and denied MRI's motion for a preliminary injunction.

This memorandum opinion further details the Court's rationale for vacating the TRO and denying MRI's motion.

MRI now moves under Federal Rule of Civil Procedure 62(c) for an injunction pending appeal.  For substantially the same reasons that the Court vacated the TRO and denied MRI's motion for a preliminary injunction, the Court will deny MRI's Rule 62(c) motion.

**I.     FACTUAL BACKGROUND**

MRI is a healthcare, professional, and general-labor staffing company comprised of approximately thirty smaller staffing companies.  (Pl.'s Mem. in Supp. of Mot. for Prelim. Inj. ("Pl.'s Mem.") at 2-3, Nov. 3, 2017, Docket No. 7.)[1]  In 2017, MRI began negotiating the purchase of twelve more staffing companies for which Mr. Brown served as president and co-owner.  (*Id.* at 3; *see* Compl. ¶¶ 18, 21, Exs. A & B, Nov. 3, 2017, Docket No. 1.)  Before that acquisition closed, MRI hired Mr. Brown to help lead the companies that MRI's would acquire.  (*See* Compl. ¶¶ 18-20, Ex. A.)  At that time there was also an understanding that, after closing, MRI would sell one of the twelve acquired companies, titled AllStaff Recruiting, Inc. ("ARI"), to Mr. Brown's wife, Wendy Brown. (Decl. of Wendy Brown ("W. Brown Decl.") ¶ 4, Nov. 10, 2017, Docket No. 25; Decl. of Allan Brown ("A. Brown Decl.") ¶ 17, Nov. 10, 2017, Docket No. 26.)  ARI  operates in Minnesota and services clients in Minnesota and the surrounding states.  (*See* W. Brown Decl. ¶ 42.)

On September 11, 2017, MRI's acquisition closed.  (Compl. ¶ 16.)  Ms. Brown's purchase of ARI did not take place on September 11; rather, MRI and Ms. Brown had an understanding that she would purchase ARI within 30 days of September 11 on mostly agreed-to terms.  (W. Brown Decl. ¶¶ 3-4; *see id.* ¶ 8, Ex. 4.)  There was never a written agreement regarding Ms. Brown's purchase of ARI from MRI.  (Defs.' Opp. at 17, Nov. 10, 2017, Docket No. 23.)  According to Ms. Brown, she and MRI agreed that, during the

---

[1] MRI is sometimes referred to as "Malone," which is the last name of its founder and current owners.  (Pl.'s Mem. at 2-3.)

30-day period following closing, she was to "run ARI as its CEO" and "Eric Berg would be second-in-command." (W. Brown Decl. ¶ 5.) Also during that 30-day period, all revenue from ARI was to be credited to Ms. Brown. (*Id.* ¶ 6.) Moreover, in an email from MRI's controller to Ms. Brown, MRI's controller referred to ARI employees as "your people" and "your employees." (*Id.* ¶ 6, Ex. 3.) MRI claims that it never knew that Ms. Brown was holding herself out as the CEO of ARI after September 11. (Decl. of Tim Malone ("Malone Decl.") ¶¶ 44-45, Nov. 15, 2017, Docket No. 37.)

Defendant Eric Berg was employed starting in 2015 by AllStaff Solutions, Inc., which was one of the entities that MRI would acquire. (*See* Compl. ¶¶ 50-51, Ex. C.) A few days after closing, MRI sent ARI's employees packets of employment-related paperwork. (*See, e.g.*, Decl. of Eric Berg ("Berg Decl.") ¶ 19, Nov. 10, 2017, Docket No. 27..)[2] Neither Mr. Berg nor any of ARI's employees ever signed those employment agreements with MRI. (*See, e.g.*, *id.*; *see also* n.2. *supra*.) Nevertheless, MRI continued to pay those employees. (*See* Decl. of Susan LaCoe ¶¶ 7-10, Nov. 15, 2017, Docket No. 39.)

In mid to late October, MRI's negotiations with Ms. Brown broke down. (Pl.'s Mem. at 6.) According to Defendants, MRI demanded that it would only sell ARI if Ms. Brown agreed not to service any clients outside of Minnesota – a condition that was

---

[2] (*See also* Decl. of Cleo Zanmiller ¶ x, Nov. 10, 2017, Docket No. 28; Decl. of Linda Thomas ¶¶ 1-5, Nov. 10, 2017, Docket No. 29; Decl. of Andrea Smith ¶¶ 1-4, Nov. 10, 2017, Docket No. 30; Decl. of Maren Sands ¶¶ 1-4, Nov. 10, 2017, Docket No. 31; Decl. of Jason Runyon ¶¶ 1-5, Nov. 10, 2017, Docket No. 32; Decl. of Barbara Dusold ¶¶ 1-2, Nov. 10, 2017, Docket No. 33; Decl. of Luke Doty ¶¶ 1-4, Nov. 10, 2017, Docket No. 34; Decl. of Ann Bennett ¶¶ 1-4, Nov. 10, 2017, Docket No. 35.)

never part of the original understanding, and that would have forced ARI to forfeit more than half its revenue. (W. Brown Decl. ¶¶ 27-29.) MRI maintains that negotiations broke down because the Defendants insisted that they be allowed to operate outside of Minnesota after having led MRI to believe that ARI only had clients in Minnesota. (Malone Decl. ¶¶ 20-26.) On October 27, Ms. Brown and MRI were at an impasse, and MRI alleges that Mr. Brown resigned from MRI on that day. (*Id.* ¶¶ 38-40.) Mr. Brown maintains that he did not resign – that he showed up for work the following Monday, October 30, and was fired. (A. Brown Decl. ¶¶ 50-53.)

Allan and Wendy Brown formed A.W. on October 30 for the admitted purpose of directly competing with MRI. (Defs.' Opp. at 11.) A.W. hired Mr. Berg and began to get the newly formed business up and running. (Berg Decl. ¶ 23, Ex. 4.) Ms. Brown asked the ARI employees to work for A.W. and to bring client files and computers with them for the purpose of continuing to service ARI clients. (*See* W. Brown Decl. ¶¶ 36-37, 41, 44-45.) According to MRI, Ms. Brown used these employees to steal MRI property. (Pl.'s Mem. at 10-11.) Defendants maintain that those files and computers belong to clients, not to MRI. (Defs.' Opp. at 14.)[3] MRI alleges that Defendants began soliciting MRI clients and servicing them – clients that were previously ARI clients. (*See* Malone Decl. ¶¶ 46-49.) Defendants, however, maintain they were up front and honest with those clients and that the clients chose to continue working with A.W. because those

---

[3] MRI did not assert any claims for conversion or any other property-related offenses in its original Complaint, which was the basis for MRI's request for a TRO and preliminary injunction. MRI's Amended Complaint – which was filed after the Court vacated the TRO and denied MRI's motion for a preliminary injunction – asserts property-related claims. (Am. Compl. ¶¶ 185-196, 202-213, Nov. 21, 2017, Docket No. 59.)

"clients simply made the understandable decision to continue working with the team they had a productive relationship with." (Defs.' Opp. at 14.)

It was the conduct of the Browns, A.W., and Mr. Berg in late 2017 that gave rise to this lawsuit.

## II.  PROCEDURAL HISTORY

MRI filed this action on Friday, November 3, 2017.  MRI asserts claims for tortious interference and unfair competition against A.W.; claims for breach of contract, breach of the duty of loyalty, and fraudulent misrepresentation against Mr. Brown and Mr. Berg; and claims for civil conspiracy, unjust enrichment, and computer fraud against all Defendants.  (Compl. ¶¶ 90-140.)

Simultaneously with its complaint, MRI filed a motion for a temporary restraining order, which the Court granted – also on Friday, November 3 – to maintain the status quo. (Order, Nov. 3, 2017, Docket No. 16.)  MRI asked the Court to convert the TRO into a preliminary injunction.  Because there were factual disputes that prevented the Court from finding that MRI was likely to succeed on the merits of its claims, and because MRI failed to show irreparable harm absent preliminary relief, the Court vacated the ex parte temporary restraining order and denied MRI's motion for a preliminary injunction. (Order, Nov. 17, 2017, Docket No. 53.)

MRI appealed the Court's November 17 Order to the Eighth Circuit. (*See* Notice of Appeal to Eighth Circuit, Nov. 29, 2017, Docket No. 64.)[4] MRI then filed a motion under Federal Rule of Civil Procedure 62(c) for an injunction pending appeal. (*See* Pl.'s Mot. for Prelim. Inj. Pending Appeal, Dec. 4, 2017, Docket No. 67.)

## DISCUSSION

### I.     STANDARD OF REVIEW

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The Court must consider four factors in determining whether to grant preliminary injunctive relief: (1) the probability that the moving party will succeed on the merits; (2) the threat of irreparable harm to the moving party; (3) the balance of harms as between the parties; and (4) the public interest. *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 776 (8th Cir. 2012) (citing *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc)). "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase*, 640 F.2d at 113. The party requesting injunctive relief bears the burden of showing the above factors. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

---

[4] As of the date of this Opinion and Order, no judgment has been entered. The Court will direct that judgment be entered on its November 17 Order.

## II.   LIKELIHOOD OF SUCCESS ON THE MERITS

MRI did not specify the claims on which it was likely to prevail.  Rather, MRI broadly asserted that it was entitled to preliminary relief in view of all of its claims. (Pl.'s Mem. at 17; *see* Hr'g Tr. 10:22-11:9, Dec. 7, 2017, Docket No. 75.)  MRI did not cite to, nor is the Court aware of, any authority that permits a Court to grant preliminary relief without analyzing specific legal claims.  The Court will therefore evaluate MRI's likelihood of success on the merits of the claims in MRI's original complaint.

### A.   Breach-of-Contract Claims Against Allan Brown

Mr. Brown's August 2017 employment agreement with MRI contains confidentiality, non-compete, and non-solicitation provisions.  (Compl. ¶18, Ex. A ¶ 11.) The confidentiality provision applies after Mr. Brown's termination.  (*Id.* ¶ 11(b).)  The non-compete and non-solicitation provisions apply for three years after termination. (*Id.* ¶ 11(c)-(d).)  MRI alleges that Mr. Brown has breached his employment agreement with MRI by forming and working with A.W.  Mr. Brown argues that the contract's confidentiality, non-compete, and non-solicitation provisions are unenforceable because MRI's wrongful conduct breached those contracts or because such breaches justify rescission.[5]

Mr. Brown presented facts that he was fired, suggesting that MRI might have breached the employment agreement before Mr. Brown allegedly did.  (*See id.* ¶ 9(d)-(e).)  Those same facts could support a finding of rescission, thereby rendering the

---

[5] To the extent that the Defendants argue that MRI violated an obligation to sell ARI to Ms. Brown, the Court cannot determine at this early stage whether MRI had such an obligation or to what extent such obligation is legally enforceable.

agreement unenforceable. Moreover, MRI stated that it had accepted Mr. Brown's resignation, despite the fact that the employment agreement requires Mr. Brown to give MRI 30-days' notice before resigning. (*Id.* ¶ 9(f).) That MRI purportedly accepted Mr. Brown's early resignation raises questions about how enforceable MRI and Mr. Brown considered his employment agreement to be. These factual disputes and the underdeveloped record prevented the Court from finding that MRI was likely to succeed on the merits of its breach-of-contract claim against Mr. Brown.

### B. Breach-of-Contract Claim Against Eric Berg

Mr. Berg's 2015 employment agreement with AllStaff Solutions, Inc. – one of the companies that MRI acquired – contains confidentiality, non-compete, and non-solicitation provisions. (Compl. ¶ 51, Ex. C ¶ 9.) The non-compete and non-solicitation provisions apply for two years after termination. (*Id.* ¶ 9(A)-(B).) Mr. Berg's employment agreement also requires Berg to return confidential information upon termination. (*Id.* ¶ 22.)

It is unclear whether MRI can enforce Berg's 2015 employment agreement when MRI was not a party to that contract. Paragraph 19 of Mr. Berg's employment contract provides: "This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, successors and assigns." (*Id.* ¶ 19.) But Paragraph 15, titled "Non-Alienation," appears to conflict with Paragraph 19. Paragraph 15 provides: "No right or benefit under this Agreement shall be subject to anticipation, alienation, sale, assignment, pledge, encumbrance or charge . . . ." (*Id.* ¶ 15.) The parties

did not analyze Mr. Berg's employment contract in sufficient detail for the Court to determine whether MRI can enforce it.

Additionally, the purchase agreement states that MRI "**shall cause** the Companies to maintain the employment of all Employees."  (Compl., ¶ 21, Ex. B § 6.3(a) (emphasis added).)   The purchase agreement does not state that MRI assumes any existing employment contracts or that the sellers assign to MRI any then-existing employment contracts.  After closing, MRI sent ARI's employees – including Mr. Berg – employment contracts for them to sign, but none of them did.  This suggests that MRI believed that those employees were not (or at least not yet) MRI employees.  Further, several former-ARI, now-A.W. employees stated that they never understood that they were employed by MRI.

In light of these factual disputes and the underdeveloped record, MRI did not carry its burden of showing that it was likely to succeed on the merits of its breach-of-contract claim against Mr. Berg.[6]

### C.     Tortious Interference Claims Against A.W.

MRI asserts two claims against A.W. for tortious interference: one for the aforementioned alleged breaches of contract, and one for interference with a prospective business advantage.

---

[6] After the Court's November 17 Order, MRI submitted additional evidence – including emails by Mr. Berg to MRI clients – to support its claims and its Rule 62(c) motion. (*See* Am. Decl. of James M. Morris, Nov. 20, 2017, Docket No. 55; Third Decl. of James M. Morris, Dec. 4, 2017, Docket No. 70.)  This evidence was not part of the record on November 17.  Although this evidence might have affected MRI's likelihood of success on the merits of its breach-of-contract claim against Mr. Berg, the remaining *Dataphase* factors still weighed against granting MRI a preliminary injunction against Mr. Berg.

### 1. Interference with Contract

To establish tortious interference with contract, a plaintiff must show: (1) the existence of a contract; (2) knowledge of the contract by the alleged wrongdoer; (3) intentional procurement of the contract's breach; (4) absence of justification; and (5) damages caused by the breach. *Furlev Sales & Assocs., Inc. v. N. Am. Auto. Warehouse, Inc.*, 325 N.W.2d 20, 25 (Minn. 1982). "A successful claim requires proof of all five elements." *Bebo v. Delander*, 632 N.W.2d 732, 738 (Minn. Ct. App. 2001) (citing *St. Jude Med., Inc. v. Medtronic, Inc.*, 536 N.W.2d 24, 30 n.6 (Minn. Ct. App. 1995)).

Because MRI did not show at this early stage that it was likely to prevail on its breach-of-contract claims against Mr. Brown or Mr. Berg, MRI was not likely to prevail in showing that A.W. tortiously interfered with those contracts. Moreover, it is unclear whether or how MRI could show intentional procurement. MRI did not articulate how A.W. – which came into legal existence on October 30 – intentionally procured either of Mr. Brown's or Mr. Berg's alleged breaches on or after October 30.

MRI did not carry its burden of showing that it was likely to succeed on the merits of its tortious interference of contract claim against A.W.

### 2. Interference with Prospective Economic Advantage

To prevail on a claim for tortious interference with prospective advantage, a plaintiff must prove:

> 1) The existence of a reasonable expectation of economic advantage;
>
> 2) Defendant's knowledge of that expectation of economic advantage;

    3) That defendant intentionally interfered with plaintiff's reasonable expectation of economic advantage, and the intentional interference is either independently tortious or in violation of a state or federal statute or regulation;

    4) That in the absence of the wrongful act of defendant, it is reasonably probable that plaintiff would have realized his economic advantage or benefit; and

    5) That plaintiff sustained damages.

*Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc.*, 844 N.W.2d 210, 219 (Minn. 2014).

MRI alleges that A.W. has tortiously interfered with MRI's business relationships with MRI's customers. But it is unclear how A.W.'s alleged interference is "independently tortious," which Minnesota law requires. *Id.* MRI did not articulate why it was independently tortious for A.W. to cause MRI customers to stop doing business with MRI and start doing business with A.W. Thus, MRI did not carry its burden of showing that it was likely to succeed on the merits of claim against A.W. for tortious interference with prospective business advantage.

    **D.**     **MRI's Other Claims**

MRI's failed to sufficiently develop its remaining claims (Civil Conspiracy, Unjust Enrichment, Breach of the Duty of Loyalty, Computer Fraud and Abuse, and Common Law Fraudulent Misrepresentation) such that the Court could find that MRI

carried its burden of showing that it is likely to succeed on the merits any of these claims.[7]

## III.  IRREPARABLE HARM

MRI failed to show irreparable harm.  "Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." *Watkins*, 346 F.3d at 844.  "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009).  Here, MRI did not sufficiently describe any specific, certain, and imminent harms requiring equitable relief.  MRI stated in conclusory terms and without citation to evidence that the Defendants are irreparably harming MRI by their conduct with respect to MRI's customers and employees.  (Pl.'s Mem. at 16.)  But MRI did not show that its alleged loss of customers constituted irreparable harm.  *See GreatAmerica Leasing Corp. v. Dolan*, No. 10-4631, 2011 WL 334829, at *2-3 (D. Minn. Jan. 31, 2011) (finding no irreparable harm where lost customers and business were quantifiable and where nothing in the record showed that loss of certain customers damaged company's reputation or customer goodwill); *see also Lisec Am., Inc. v. Wiedmayer*, No. 05-1082, 2005 WL 3143985, at *5 (D. Minn. Nov. 23, 2005).  Moreover, MRI did not show how the Defendants have

---

[7] Indeed, some of MRI's remaining claims, such as computer fraud and civil conspiracy, might not be legally cognizable in a private civil action in Minnesota.  *See Walsh Bishop Assocs., Inc. v. O'Brien*, 2012 WL 669069, at *2 n.2 (D. Minn. Feb. 28, 2012) (computer fraud); *Cenveo Corp. v. So. Graphic Sys., Inc.*, 784 F. Supp. 2d. 1130, 1136 (D. Minn. 2011) (holding that civil conspiracy is "merely a vehicle for asserting vicarious or joint and several liability").

irreparably harmed (or will irreparably harm) MRI with respect to MRI's employees. Thus, MRI failed to carry its burden of showing that it would have been irreparably harmed absent preliminary relief.

### IV.     BALANCE OF HARMS AND PUBLIC INTEREST

Neither party provided meaningful analysis of the final two *Dataphase* factors. In light of the factual disputes regarding the merits of MRI's claims, the underdeveloped record, and the absence of irreparable harm, neither the balance of harms nor the public interest weighed in favor of granting MRI preliminary relief.

### V.      MRI'S MOTION UNDER RULE 62(C)

MRI asks the Court to grant an injunction against the Defendants while MRI appeals the Court's November 17 Order to the Eighth Circuit. Rule 62(c) permits a court to "suspend, modify, restore, or grant an injunction" during the pendency of an appeal. Fed. R. Civ. P. 62(c). Relief under Rule 62(c) is "an exercise of judicial discretion," and the moving party "bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009); *United Food v. Fresh Seasons Mkt., LLC*, No. 15-3910, 2016 WL 6634874, at *1 (D. Minn. Nov. 8, 2016). In evaluating a Rule 62(c) motion, the court considers (1) whether the movant has made a "strong showing" that it is likely to succeed on the merits; (2) whether the movant "will be irreparably injured absent relief;" (3) whether relief "will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *United Food*, 2016 WL 6634874, at *1 (quoting *Nken*, 556 U.S. at 434).

For substantially the same reasons that the Court vacated the TRO and denied MRI's motion for a preliminary injunction, the Court will deny MRI's motion. MRI has not made a strong showing that it is likely to succeed on the merits, and MRI has failed to show irreparable harm.[8] Moreover, Defendants now assert several counterclaims against MRI for breach of contract, tortuous interference, defamation, fraud, misrepresentation, and unjust enrichment. (Answer, Affirmative Defenses, and Countercls. to First Am. Compl. ¶¶ 345-413, Dec. 5, 2017, Docket No. 72.) Relief for MRI under Rule 62(c) might substantially injure the Defendants, and the public interest does not favor such relief.

*　　　*　　　*

In short, MRI came running to court before sufficiently developing either the factual record or its legal theories. Although the Court understands – in light of the allegations – MRI's belief that it had to act with all haste, the desire to act quickly does not excuse MRI's failure to carry its burden of showing that it is entitled to the extraordinary remedy of preliminary relief. By MRI's own admission, new facts were coming to light every hour. (Pl.'s Mem. at 1.); MRI recently amended its complaint to add five new claims; and the Defendants now assert claims of their own. New facts and new legal theories further highlight the uncertainty of this dispute at such an early stage. As such, MRI is not entitled to preliminary relief at this time.

---

[8] In making this determination on MRI's Rule 62(c) motion, the Court has considered the additional evidence that MRI submitted after the Court's November 17 Order. *See supra* n.6. Mr. Berg's October 31 emails – while helpful to MRI – do not support a finding that MRI has made a **strong** showing on the merits of its claims.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for a Preliminary Injunction Pending Appeal [Docket No. 67] is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court is **DIRECTED** to enter judgment on the Court's Order Vacating the Court's Temporary Restraining Order and Denying Plaintiff's Motion for Preliminary Injunction [Docket No. 53].

DATED: January 16, 2018 _____s/John R. Tunheim_____
at Minneapolis, Minnesota.           JOHN R. TUNHEIM
                                                   Chief Judge
                                     United States District Court