UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Management Registry Incorporated,   Case No. 0:17-cv-05009-JRT-KMM

    Plaintiff,

v.   **ORDER**

A.W. Companies, Inc., et al.,

    Defendants.

This matter is before the Court on Eric Berg's Motion to Intervene and for Contempt. Berg Mot., ECF No. 311. The Court held a hearing on the motion on October 3, 2019. For the reasons that follow, the motion is granted in part. Mr. Berg is permitted to intervene for limited purposes in this case and although a finding of contempt is unnecessary, the Court concludes that defendants Wendy Brown and A.W. Companies ("AW"), and their attorney, Alex Loftus,[1] should be subject to sanctions under Federal Rule of Civil Procedure 37(b)(2) for violating the Protective Order.

**I.    Background**

Mr. Berg was originally a defendant in the lawsuit, but in August, 2018, MRI dismissed its claims against him. Order (Aug. 9, 2018), ECF No. 163. He is now performing work in some capacity for MRI. On December 7, 2018 Mr. Berg filed a separate lawsuit against Mr. Brown, Ms. Brown, and AW in Minnesota state district court. The state court litigation remains pending and, at the time of the October 3, 2019 hearing in this matter, Mr. Berg's deadline for responding to the defendants' motion for summary judgment in that case was fast approaching.

In July 2019, Mr. Berg received a subpoena from the parties seeking his deposition in this case. Through his counsel, Scott Moriarty, Mr. Berg made clear that his subpoenaed deposition testimony could not be used in the state court litigation. Moriarty Decl, Ex. 1, ECF No. 315-1. At the hearing, Mr. Moriarty explained the context for his email in more detail. Specifically, Mr. Moriarty represented, without disagreement from defense counsel, that the defendants in the

---

[1]     Another attorney for the defendants, Ryan Moore, withdrew from representation in this case on October 3, 2019. Mr. Loftus indicated at the hearing that Mr. Moore would no longer be with his firm.

1

state court litigation had failed to serve any written discovery requests by the applicable state court deadline, which had passed. Though their requests were untimely, the defendants took the position in the state case that they would not take Mr. Berg's deposition in connection with that matter until he responded to their written discovery requests. Mr. Moriarty's communications in response to the federal subpoena attempted to avoid responding to discovery requests in the state court case that the defendants had allegedly failed to diligently pursue. To put it simply, Mr. Berg did not want the defendants to use the federal-case deposition to end-run the already expired state court deadlines.

During Mr. Berg's deposition in this case, Mr. Moriarty designated certain testimony regarding Berg's income and his consulting work "Confidential—Attorney's Eyes Only" ("AEO") under the Protective Order. Moriarty Decl., Ex. 3, ECF No. 318-1; *see also* Protective Order ("PO"), ECF No. 88. Mr. Moore was representing the defendants at the deposition and did not object to the AEO designation. After he received a transcript of the deposition, Mr. Moriarty informed the parties' counsel that he was preliminarily designating the entire transcript AEO, but would follow up with the parties regarding a "more detailed description of the matters to be designated Confidential or AEO." Moriarty Decl., Ex. 4, ECF No. 315-4. Neither Mr. Moore, nor his co-counsel, Mr. Loftus, objected to the designation.

A few weeks after Mr. Berg's deposition, on September 4, 2019 Mr. Moriarty took Ms. Brown's deposition in the state court litigation. Ms. Brown testified regarding her knowledge of Mr. Berg's approximate income from his consulting business and indicated she learned those details after reading his deposition transcript from this case. Moriarty Decl., Ex. 5, ECF No. 318-2. Because Mr. Moriarty had notified counsel that the deposition transcript should be treated as AEO material, and the Protective Order in this case prevents AEO designated information from being used in another proceeding or from being shared with a party, Mr. Berg believed Ms. Brown's testimony showed the Protective Order had been violated. Mr. Moriarty raised this issue with Mr. Moore during Ms. Brown's deposition, but Mr. Moore asked that the matter be addressed later. On September 6, 2019, Mr. Moriarty sent Mr. Moore and Mr. Loftus a letter asking to discuss this issue sometime before September 11th. Moriarty Decl., Ex. 6, ECF No. 315-6. Neither Mr. Moore nor Mr. Loftus raised any disagreement with the propriety of the designation in response to the September 6th letter or at any other time, and Mr. Moriarty received no other response.

On September 18, 2019, Mr. Moriarty drafted a letter narrowing the specific portions of Mr. Berg's transcript that were being designated Confidential and AEO. Moriarty Decl., Ex. 7,

2

ECF No. 315-7. On September 19, 2019, despite having received Mr. Moriarty's September 6th and 18th letters, the defendants in the state court litigation publicly filed the transcript of Mr. Berg's August 13, 2019 deposition. Moriarty Decl., Ex. 8, ECF No. 315-8. Mr. Berg's motion to intervene and for contempt followed. After the October 3rd hearing on the present motion, Mr. Loftus notified Mr. Moriarty that the defendants in the state court litigation would withdraw the entire motion for summary judgment they filed. E-mail from A. Loftus to S. Moriarty (October 3, 2019, 11:15 CST) (on file with the Court).

## II.  Intervention

Mr. Berg contends that he should be allowed to intervene for the limited purpose of addressing the defendants' and their attorneys' alleged violations of the Protective Order and to remedy the harm caused by those violations. *See* Intervention Pleading, ECF No. 311-1. MRI has not taken any position on Mr. Berg's request. Min. Entry (Sept. 23, 2019), ECF No. 320. The defendants oppose Mr. Berg's motion, arguing that he has not shown a valid basis to intervene. Defs.' Resp., ECF No. 321.

Mr. Berg claims a right to intervene under Rule 24(a), or alternatively, that his intervention is permissible under Rule 24(b). "A party seeking mandatory intervention under Rule 24(a) must establish that '(1) it has a recognized interest in the subject matter of the litigation; (2) the interest might be impaired by the disposition of the case; and (3) the interest will not be adequately protected by the existing parties.'" *WaterLegacy v. U.S. E.P.A.*, 300 F.R.D. 332, 338 (D. Minn. 2014) (quoting *S.D. ex rel. Barnett v. U.S. Dep't of Interior,* 317 F.3d 783, 785 (8th Cir. 2003)).

Even if intervention as a matter of right cannot be demonstrated, a court has discretion to allow intervention under Rule 24(b) and must construe the Rule liberally, resolving any doubts in favor of the person seeking to intervene. *WaterLegacy*, 300 F.R.D. at 338–39. A court may permit intervention by anyone who "(A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). Courts must consider (1) whether the motion is timely; (2) whether a shared question of law or fact exists between the movant's claim and the main action; and (3) whether intervention will result in undue delay or prejudice to the original parties. *Franconia Minerals (US) LLC v. United States*, 319 F.R.D. 261, 265 (D. Minn. 2017). When a person "seek[s] to intervene only to modify a protective order or unseal documents, and not to litigate a claim on the merits, an independent basis for jurisdiction is not required." *Flynt v.*

3

*Lombardi*, 782 F.3d 963, 967 (8th Cir. 2015) (reversing district court's order denying journalist's motion to intervene for the purpose of seeking to unseal judicial records). "[P]ermissive intervention under Rule 24(b) is an appropriate procedural vehicle for non-parties" who seek to litigate their interests with respect to confidentiality orders. *See id.* (discussing permissive intervention for the purpose of seeking access to judicial records that are unavailable due to confidentiality orders).

The defendants generally allege that Mr. Berg should not be allowed to intervene because the interests he seeks to protect are collateral to the substance of the dispute between the parties. *See* Defs.' Resp. at 6–13. However, they do not point to any controlling Eighth Circuit precedent addressing the issue here: whether a nonparty that has marked information provided in discovery confidential pursuant to a protective order may intervene to obtain enforcement of that protective order.

The defendants next argue that Mr. Berg's request to intervene should be denied because he cannot show any injury and therefore lacks standing. They assert that the information designated as confidential (the amount Mr. Berg was paid by MRI for consulting work), is already available from other sources, so the disclosure of his transcript in the state court litigation in support of the defendants' summary-judgment motion caused no harm. *See* Defs.' Resp. at 6–9. For two reasons, this argument is flawed.

First, the Court concludes that a traditional showing of injury is not required in this context. When an intervenor seeks to be involved in litigation for a limited purpose related to the application of a confidentiality order, some courts conclude that the usual requirement of standing is unnecessary. *See In re Baycol Prods. Litig.*, 214 F.R.D. 542, 544 (D. Minn. 2003) ("To date the Eighth Circuit has not yet ruled on whether standing is a prerequisite for permissive intervention. … Other courts, however, have created an exception to the standing requirement when third parties seek intervention solely to challenge a confidentiality order."). The Court agrees that a traditional showing of standing is unnecessary under the circumstances presented here.

Courts have permitted third parties to intervene under Rule 24 for "collateral discovery issues" under similar circumstances. *J.D. Fields & Co. v. Nucor-Yamato Steel Co.*, No. 4:12-cv-00754-KGB, 2015 WL 12696208, at *2–4 (E.D. Ark. June 15, 2015) (granting nonparty's motion to intervene for the limited purpose of opposing the plaintiff's motion to remove confidentiality designations from the nonparty's information produced in discovery); *see also*

*California Parents for Equalization of Educ. Materials v. Torlakson*, No. 17-cv-00635-CRB(JSC), 2018 WL 3930141, at *4–6 (N.D. Cal. Aug. 16, 2018) (granting nonparty's motion to intervene for the limited purpose of joining a motion to maintain confidentiality designations on documents produced pursuant to Rule 45 subpoena). Consistent with these cases, the Court finds that where a nonparty has been subpoenaed for a deposition, has marked aspects of his deposition testimony confidential pursuant to a protective order, and claims that a party to the case has used his information in violation of the protective order, permissive intervention under Rule 24(b) is appropriate.

The Court is convinced that Mr. Berg should be permitted to intervene under Rule 24(b). There is no principled distinction between allowing a nonparty to a lawsuit to intervene to modify a protective order or unseal records and allowing intervention in a case like this one. Mr. Berg is a third party whose interests are affected by the Court's application of the Protective Order in this case. He is not seeking to have a claim adjudicated on the merits here, but merely to intervene to ensure that his confidential information is protected. Allowing him to intervene will not delay this litigation or prejudice any of the parties' rights. *S. Dakota ex rel Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 787 (8th Cir. 2003) ("The principal consideration in ruling on a Rule 24(b) motion is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights.").

Second, the record demonstrates that, even if some sort of injury is required in this context, Mr. Berg has shown such harm. Specifically, the defendants' violation of the Protective Order likely required Mr. Berg to begin preparing a response to a summary judgment motion that he would not have otherwise had to defend. Indeed, his response to the state court summary judgment motion would have been due the day after the October 3rd hearing before this Court if Mr. Loftus had not subsequently agreed during the hearing to withdraw that motion. Although counsel for the defendants claimed that the information in question was available from "other sources," the only information that was submitted in support of the defendants' summary judgment motion in the state case was Mr. Berg's deposition transcript. Because the defendants in the state case failed to timely pursue discovery and the period for taking discovery was closed, the defendants failed to rely upon any "other sources" for the information at issue.

For these reasons, Mr. Berg's request to intervene for the limited purpose of enforcing the Protective Order is granted.

### III. Sanctions

Mr. Berg asks the Court to hold Ms. Brown and AW Companies in contempt for violating the Protective Order and seeks an Order: (1) enjoining the defendants from using his deposition testimony in the state court litigation; (2) prohibiting disclosure of the AEO information in his deposition testimony to the Defendants for any purpose; (3) requiring the defendants to return any AEO information that was disclosed to their counsel and to purge or destroy any electronic copies; and (4) requiring defense counsel to undertake reasonable efforts to prevent any further unauthorized disclosures in violation of the Protective Order. Proposed Order ¶ 5. Finally, Mr. Berg requests that the defendants and their attorneys be jointly assessed a daily fine in the amount of $1,000 until they have demonstrated compliance with the proposed contempt order. Proposed Order ¶ 6.

The full panoply of contempt sanctions requested by Mr. Berg is unnecessary under the circumstances of this case. In particular, following the Court's notice at the hearing that it would be ordering withdrawal of the deposition as an exhibit in state court, Mr. Loftus has already withdrawn the entire motion for summary judgment from the state court litigation. Mr. Loftus has also declared under 28 U.S.C. § 1746 that Ms. Brown deleted the electronic copy of Mr. Berg's deposition transcript that he emailed to her. He further represented to the Court at the hearing that he did not provide a copy of the transcript to anyone other than Ms. Brown. It thus appears unnecessary for the Court to use the coercive power of contempt sanctions to compel compliance with the Protective Order.

For these reasons, the Court concludes that certifying facts to the District Court regarding a finding of civil contempt is not necessary. However, the Court concludes that sanctions are warranted under Federal Rule of Civil Procedure 37 because the defendants and their counsel violated the Protective Order's clear prohibitions.

#### A. Legal Standards

Although Mr. Berg's motion references only the Court's contempt powers, a violation of a protective order can also be addressed under Rule 37(b)(2). Violations of protective orders are enforceable under Rule 37(b)(2). *U.S. ex rel. Johnson v. Golden Gate Nat. Sr. Care, LLC*, No. 08-cv-1194 (DWF/JJK), 2013 WL 1182905, at *7 (D. Minn. Mar. 21, 2013) (citing *Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 267 F.R.D. 257, 264 (D. Minn. 2007)). Rule 37(b)(2) provides: "If a party … fails to obey an order to provide, or permit discovery … the court … may issue further just orders," which include a range of sanctions. Fed. R. Civ. P. 37(b)(2)(A)(i)–(vii). "Instead of

or in addition to the [sanctions listed in Rule 37(b)(2)(A)(i)–(vii)], the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

A court must find a willful violation of a discovery order and prejudice to impose the most serious of sanctions under Rule 37(b)(2)—dismissal or default—but has wide latitude to impose other appropriate sanctions for a failure to obey a discovery order. *Burgett v. Gen. Store No Two Inc.*, 727 Fed. App'x 898, 900 (8th Cir. 2018) (per curiam) ("Dismissal under Rule 37 is permitted only where there is an order compelling discovery, a willful violation of the order, and prejudice."); *see also Lemaire v. Monster Energy Co.*, No. 5:17-cv-05104, 2018 WL 5091604, at *2 (W.D. Ark. Oct. 18, 2018) ("The district court has wide latitude in imposing sanctions for failure to comply with discovery.") (internal quotation marks omitted). Here, the Court finds that sanctions are appropriate for the defendants' flagrant violations of the Protective Order under Rule 37(b)(2).

### B. The Protective Order is Clear

The Court finds that the December 26, 2017 Protective Order includes several clear provisions that apply in this case. First, the Protective Order's language plainly allows a non-party providing discovery to mark documents confidential and AEO. Paragraph 2(a) allows a non-party disclosing or producing a "Document" to designate it "Confidential." Paragraph 3(c) states that a party can mark a document "Confidential-Attorney's Eyes Only." And Paragraph 4 specifically provides that "[a] non-party producing Documents in the course of this action may also designate Documents as 'Confidential' or 'Confidential—Attorney's Eyes Only,' subject to the same protections and constraints as the Parties."

Second, the Protective Order provides a straightforward definition of "Document" that applies to deposition testimony. A "Document" includes "information disclosed or produced in discovery, including at a deposition…." PO ¶ 1(e). Third, the Protective Order plainly prohibits the disclosure of a "Document" that is marked "Confidential—Attorney's Eyes Only" to a party.

Fourth, the Protective Order limits the permissible uses for any Confidential Document. Specifically, in Paragraph 3(b), it provides that "[n]o person receiving a Confidential Document may reveal it, except to … the Court and its staff," and other approved recipients. Paragraph 3(a) provides that "[a] Confidential Document, along with the information contained therein, shall be used only in this action. Any other use is prohibited."

And finally, the Protective Order includes a feature common to nearly every umbrella protective order entered in this District—it establishes a procedure for designating documents as confidential and removing those designations. The right to designate a document "Confidential" rests unilaterally, in the first instance, with the party disclosing or producing it. PO ¶ 2(a) (providing the right to designate a Document confidential "if the party or non-party contends that it contains confidential or proprietary information"). "A Confidential Document produced by a non-party remains Confidential unless the non-party agrees to change its designation or the Court orders otherwise after providing an opportunity for the non-party to be heard." PO ¶ 7(b). If a party disagrees with a non-party's designation and they cannot resolve their dispute, the party may move the Court for an order changing the designation and the nonparty would be required to show that the designation meets the requirements for confidentiality. PO ¶ 7(c).

Accordingly, as it pertains to Mr. Berg's motion for sanctions, the Protective Order in this case: (1) clearly authorizes a non-party to designate deposition testimony as "Confidential—Attorney's Eyes Only"; (2) plainly prohibits the disclosure of a document with the AEO designation to a party;[2] and (3) unmistakably prohibits the use of a document with a "Confidential" or AEO designation from being used for any purpose other than in this lawsuit.

The defendants' textual arguments regarding the Protective Orders' terms are unconvincing and, at times, frivolous. First, citing only Paragraph 3(c) the defendants suggest that only a party has the power to designate a document AEO. Defs.' Resp. at 2, 5–6. This argument is frivolous. It completely the plain terms of Paragraph 4, which provides that a non-party has the same powers as a party to make an AEO designation on any "Document."

Faced with the clear language of Paragraph 4, the defendants nevertheless suggest a non-party does not have the power to designate deposition testimony confidential or AEO because the definition of "Document" does not clearly refer to deposition testimony. This argument depends upon a strained, stilted, and unreasonable reading of the Protective Order. *See Lusk*, 2018 WL 5919342, at *4 ("Courts should construe protective orders in a reasonable and commonsense fashion, so that their prohibitions are connected to their purpose."). As noted, the Protective Order defines a "Document" to include "information" disclosed at a deposition. The "information" disclosed at a deposition includes, primarily, the deponent's testimony, making the information in any deposition transcript a "Confidential Document" whenever it is designated as

---

[2] Mercifully, the defendants do not dispute that this prohibition is clear or that a disclosure of a document to a party that is properly marked AEO is a violation of the Protective Order.

8

such. Nothing in that definition limits its applicability to the exhibits used in a deposition, as Mr. Loftus suggested at the hearing. A commonsense reading of the relevant provisions of the Protective Order demonstrates that a nonparty who testifies at a deposition may designate the transcript as "Confidential—Attorney's Eyes Only."

Mr. Loftus further argued at the hearing that the Protective Order does not prohibit filing a confidential document in a separate state court proceeding because the Protective Order refers to "the Court" among the persons to whom a Confidential Document may be revealed. He suggests that because the Protective Order does not reference "this Court" or use other similar language, it is unclear about whether filing Mr. Berg's deposition in the state court litigation was prohibited. This argument strikes the Court as particularly insincere. In no uncertain terms, the Protective Order provides that a Confidential Document can only be used in "this action" and that "[a]ny other use is prohibited." Even if the Court were to credit the rather preposterous suggestion that there is some confusion about which judicial forum "the Court" refers to in Paragraph 3(b), there is no question that using a confidential document for purposes of other litigation is prohibited by the Protective Order.

### C.     Multiple Violations

The defendants and their counsel blatantly violated the Protective Order in three separate ways. First, Mr. Loftus provided Ms. Brown with an electronic copy of Mr. Berg's entire deposition transcript, and she reviewed portions of it that were designated AEO, which Mr. Loftus failed to redact. Mr. Loftus concedes that he provided the transcript to her and Ms. Brown testified during her own deposition about having read the entire deposition and being unfamiliar with the Protective Order in this case. Ms. Brown was not permitted by the terms of the Protective Order to have access to information that had been designated as AEO. By disclosing the AEO material in Mr. Berg's deposition to his client, Mr. Loftus willfully violated the Protective Order.

Second, the defendants and defense counsel used Mr. Berg's deposition transcript in the state court litigation. Mr. Moore's affidavit, filed on September 19, 2019, indicates that the entire Berg transcript was attached as an exhibit in support of a motion for summary judgment in the state case. In so doing, Mr. Moore, Mr. Loftus, A.W. Companies, Mr. Brown, and Ms. Brown intentionally violated the Protective Order's prohibition on using any confidential information for purposes other than in this proceeding.

9

Third, defense counsel originally submitted Mr. Berg's deposition transcript in the state court litigation in a public filing. Although public access to the deposition transcript was eventually cut off, the filing still violated the Protective Order's prohibition on disclosing confidential information beyond the list of authorized recipients.

The Court is obliged to address one final issue raised by Mr. Loftus at the October 3rd hearing. Mr. Loftus suggested that no violation of the Protective Order occurred because the information Mr. Berg designated as confidential does not qualify for protection. As noted, the Protective Order includes a common procedure for the designation and de-designation of documents as confidential. If defense counsel or the defendants believed that Mr. Berg had improperly designated his testimony as confidential or AEO, they could and should have availed themselves of that clearly defined procedure. Mr. Loftus threw his colleague, Mr. Moore, under the bus for failing to challenge Mr. Moriarty's invocation of the Protective Order at Mr. Berg's deposition or sooner. But neither Mr. Moore, Mr. Loftus, nor their local counsel ever raised the propriety of the confidentiality or AEO designations before Mr. Berg filed the motion to intervene and for contempt sanctions. Nor did they ask the Court to make a ruling regarding those designations. Instead, the defendants used Mr. Berg's deposition in the state court litigation as though it had never been subject to a confidentiality designation at all. That choice reveals that Mr. Loftus and the defendants either ignored the applicable provisions of the Protective Order, treated them as optional, or arrogated to themselves the authority to make determinations that are left to the Court's discretion. Whichever is true, none is acceptable.

### D. Appropriate Sanctions

Finding that the defendants and their counsel violated the Protective Order does not end the matter. The question remains: what is an appropriate remedy under these circumstances? As noted, many of the sanctions Mr. Berg requested have been rendered unnecessary by events that have since taken place. Nevertheless, the Court concludes that other sanctions are appropriate.

#### 1. Fee Shifting

The defendants argue that sanctions are not warranted at all because Mr. Berg cannot articulate harm. Defs.' Resp. at 14–15. The Court disagrees. Mr. Berg did articulate harm from the defendant's violation of the Protective Order. Specifically, the defendants obtained information from a nonparty through a subpoenaed deposition in this case that they, having missed the state court deadline for completing discovery, would not have otherwise received in the state case. Mr. Berg was entitled to rely on the Protective Order's terms in testifying pursuant

to the subpoena. The defendants undermined the reasonable expectation that they would abide by the Protective Order when they filed his deposition in support of their summary judgment motion in the state court litigation. This caused Mr. Berg to incur attorney's fees in bringing his motion to enforce his rights the Protective Order. That is real harm that can be remedied through an award of expenses, including attorney's fees, that were incurred in litigating the defendants' violation of the Protective Order. With respect to those costs, it makes no difference that the defendants have already withdrawn the summary judgment motion in the state court litigation and Ms. Brown has deleted the electronic copy of the depositions he received from Mr. Loftus. Mr. Berg was forced to bring a motion and have his attorney attend a hearing and argue its merits before the defendants and their attorneys complied with the Protective Order.[3]

In addition to compensating Mr. Berg for the expenses he incurred because of the defendants' violations, an award of expenses and fees is warranted to deter future violations. The behavior of Mr. Loftus in connection with this dispute evinces a disrespect for the Court's Orders that Mr. Loftus has exhibited at other points in this litigation. His behavior is turning into a pattern and that pattern needs to end. Given that the Court has already admonished Mr. Loftus regarding the need to abide by Court orders, another stern lecture simply will not do. A fee-shifting sanction is warranted.

### 2. Revocation of Pro Hac Vice Status and Local Counsel

In his motion to intervene and for contempt sanctions, Mr. Berg suggested that a "potential remedy within the scope of this Court's inherent authority is revocation of [defense] counsel's pro hac vice admissions to this Court." [Berg Mem. at 17 n.5.] "Revocation of *pro hac vice* admission is a recognized sanction for violation of court orders or disciplinary rules." *Data Sys. Analysts, Inc. v. Netplex Gr., Inc.*, 187 F.R.D. 181, 183–84 (D.N.J. 1999) (citing *Johnson v. Trueblood*, 629 F.2d 302, 304 (3d Cir. 1980)). "There are, however, 'no national standards' on disqualification of pro hac vice counsel, whether and to what limited extent an attorney has a property right in retaining pro hac vice status after it has been granted, or what level of procedural due process is required before revocation of pro hac vice admission." *Siupa v. Astra Tech, Inc.*, No. Civ.A. 10-10525-LTS, 2012 WL 6622492, at *3 (D. Mass. Dec. 18, 2012)

---

[3] The defendants' conduct may also have caused Mr. Berg to incur attorney's fees in preparing a response to the now-withdrawn summary judgment motion. However, the Court declines to issue a fee-shifting sanction for those costs.

11

(adopting the Third Circuit's approach of providing notice and an opportunity to respond to an attorney when the district court seeks to revoke pro hac vice status).

Mr. Loftus has previously disobeyed the undersigned's instructions requiring him to meet and confer with opposing counsel concerning a motion to compel discovery. Order (May 8, 2019), ECF No. 203. Other actions Mr. Loftus has taken and refused to take in connection with the defendants' ongoing failures to provide adequate discovery responses have resulted in the Court granting, in part, the plaintiff's motion for sanctions. Order (Sept. 13, 2019), ECF No. 300. And Mr. Loftus has now been involved in deliberate violations of the Protective Order discussed in this Order. The Court also notes that Mr. Loftus's communications with opposing counsel have frequently been marred by an unprofessional tone and an unwillingness to engage in any substantive discussion of the issues being raised. Mr. Loftus has also filed memoranda insisting in no uncertain terms that motions filed against his clients are baseless, only to appear later before the Court candidly admitting that the opposite is true, thereby unnecessarily multiplying these proceedings. Given this persistent misconduct, the Court has seriously considered revoking Mr. Loftus's pro hac vice admission to practice in the District of Minnesota. The Court will not, however, take such action at this time. Though the Court declines to revoke Mr. Loftus's pro hac vice admission, the Court's patience with Mr. Loftus's handling of this case is at its end. Any further failure to comply with the Court's orders will lead to such a revocation.

As an out-of-state practitioner admitted to practice before this Court pro hac vice, Mr. Loftus is required to associate with local counsel. D. Minn. LR 83.5(d). Among other things, local counsel is required to "(A) participate in the preparation and presentation of the case." D. Minn. LR 83.5(d)(2)(A). The defendants' local counsel in this case is Justin A. Bruntjen. Based upon the history of this litigation, it is apparent that Mr. Bruntjen has not participated in the preparation and presentation of the case, which has perhaps contributed to the morass now before the Court. Accordingly, Mr. Bruntjen must become engaged in the litigation to ensure compliance with Court orders and the Local Rules. The Court further requires Mr. Bruntjen to take an active role in reviewing and signing every pleading that is filed with the Court by the defendants.

## IV. Order

For the reasons stated above, **IT IS HEREBY ORDERED THAT:**

1. Mr. Berg's Motion to Intervene and for Contempt (ECF No. 311) is **GRANTED IN PART**.

2. Mr. Berg is permitted to intervene in this case for limited purposes of enforcing the Protective Order. He shall file his Intervention Pleading **within three days of the date of this Order**. The Clerk of Court is directed to add Mr. Berg as an Intervenor to this proceeding and to add Scott Moriarty as his counsel of record.

3. Mr. Berg is entitled to an award of expenses, including attorney's fees, incurred as a result of the defendants' violations of the Protective Order. **Within seven days of this Order**, Mr. Berg shall file an application for an award of expenses and attorney's fees, including any declarations or other supporting materials. The defendants shall file any response **within seven days of being served with the application**. Mr. Berg may file a reply in support of the application **within seven days of being served with any response**.

4. As local counsel for the defendants, Justin A. Bruntjen shall become engaged in the litigation to ensure compliance with Court orders and the Local Rules. Mr. Bruntjen is henceforth required to review and sign every pleading that is filed with the Court by the defendants.

Date: October 22, 2019              *s/Katherine Menendez*
                                    Katherine Menendez
                                    United States Magistrate Judge