# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Management Registry Incorporated, | Case No. 0:17-cv-05009-JRT-KMM |
| Plaintiff, | |
| v. | |
| A.W. Companies, Inc., et al., | **ORDER** |
| Defendants. | |
| and | |
| Eric Berg, | |
| Intervenor. | |

On October 22, 2019, the Court entered an Order granting Eric Berg's motion to intervene for the limited purpose of enforcing the Protective Order. [ECF No. 339.] In addition, the Court ordered the defendants, Wendy Brown and A.W. Companies, Inc., and their counsel, Alexander Loftus, to pay Mr. Berg's the expenses, including attorney's fees, caused by their intentional violations of the Protective Order. [*Id.* at 13, ¶ 3.] The Court determined that such an award was appropriate under Federal Rule of Civil Procedure 37(b)(2).

*The Application and Response*

Mr. Berg's counsel, Scott Moriarty, filed a declaration demonstrating the reasonable fees and expenses caused by the defendants' conduct and corresponding to the scope of the Court's Order. [Moriarty Decl., ECF No. 342.] Mr. Moriarty explains that his billable rate is $350.00 per hour and that he spent 32.8 hours working on matters relating to the enforcement of Mr. Berg's rights under the Protective Order, for a total of $11,480.00. [*Id.* ¶ 5.] Specifically, consistent with the Court's Order, he excluded time spent preparing a response to the defendants' summary judgment motion in related state court litigation. [*Id.* ¶ 6.] Mr. Moriarty's paralegal spent 3.5 hours, at a rate of $190.00 per hour, working on matters relating to the enforcement of the Protective Order, for a total of $665.00. [*Id.* ¶ 7.] The defendants' and their attorneys' conduct also caused Mr. Moriarty to order, at an increased cost, an expedited transcript of Ms. Brown's

1

deposition, where the defendants' violation of the Protective Order first came to light.[1] [*Id.* ¶ 8.] In sum, Mr. Berg seeks recovery of $12,567.00 in fees and costs. [*Id.* ¶ 10.]

In response to the fee petition, the defendants argue:

> Should fees or costs be awarded[,] the amount sought by Berg should be reduced significantly, to less than $3,000, both because the time incurred in relation to this briefing is excessive and much of the time spent on communications with counsel would have been incurred had the parties addressed the issue prior to the use of the protected information which the Hennepin County Court has since ordered be produced.

[Defs.' Mem. at 1, ECF No. 351.] Although the defendants do not contend that Mr. Moriarty's or his paralegal's hourly rates are unreasonable, they take issue with several specific entries in his billing records. [*Id.* at 1–3.] Further, the defendants rely on an October 30, 2019 Order in the related state court litigation that requires Mr. Berg to produce consulting agreements he entered between October 1, 2015 and the present, even though the defendants failed to pursue discovery in a timely manner. [Ex. A to Defs.' Mem., ECF No. 352.] They suggest that this Order "cur[es] the issue which initiated this whole unfortunate series of events." [Defs.' Mem. at 3.]

### *Legal Standards*

The relevant Rule of Civil Procedure provides that "the Court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure [to obey a discovery order] unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Courts determine the amount of an award of a reasonable attorney's fee award under Rule 37 by applying the lodestar method. *See, e.g., Envirosource, Inc. v. Horsehead Resource Development Co., Inc.*, 981 F. Supp. 876, 881–82 (S.D.N.Y. 1998); *Porter v. Johnson*, 2008 WL 2566749, at *1 (D.D.C. June 25, 2008). This familiar method multiplies the number of reasonably expended by a reasonable hourly rate. *In re RFC*, __ F. Supp. 3d __, 2019 WL 2567566 (D. Minn. June 21, 2019). "[I]n determining the lodestar, courts 'need not, and indeed should not become green-eyeshade accountants. The essential goal in shifting fees … is to do rough justice, not to achieve auditing perfection." *Id.* (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

---

[1]     Mr. Berg does not seek to recover any other costs associated with ordering Ms. Brown's transcript. [Moriarty Decl. ¶ 9.]

*Discussion*

There is no dispute that Mr. Moriarty's hourly rate for his own services and for his paralegal are reasonable. Based on the absence of such a dispute, the support Mr. Moriarty provided regarding the reasonableness of these rates, and the Court's own knowledge of the prevailing rates in the relevant legal community, the Court finds that a reasonable hourly rate for Mr. Moriarty is $350.00 per hour. The $190.00 per hour rate for his paralegal is also reasonable. There is also no dispute that the $422.00 associated with ordering the expedited transcript of Ms. Brown's deposition is likewise a reasonable expense caused by the defendants' and Mr. Loftus's failure to comply with the Protective Order.

The defendants challenge the reasonableness of the time Mr. Moriarty spent litigating the violations of the Protective Order. They assert that "several … items [in the submitted billing records] stand out as plainly excessive," followed by a list of certain time entries from Mr. Moriarty's billing records. [Defs.' Mem. at 1–2.] They take issue with 4 hours Mr. Moriarty spent preparing for the hearing on the motion; 20.6 hours he and his paralegal spent preparing, revising, and filing Mr. Berg's briefing in federal court; and 6.2 hours spent drafting letters to opposing counsel and to the state court. [*Id.*] Defendants argue that "[a] client wouldn't pay a bill for 20 hours of time drafting what the Court concluded was a straight forward motion nor would four hours of preparation for a thirty minute hearing survive in a competitive marketplace." [*Id.* at 2–3.]

The Court is not persuaded by the defendants' argument that Mr. Berg seeks to recover fees for excessive time spent litigating their violations of the Protective Order. Before Mr. Berg filed his motion to intervene and for sanctions, Mr. Moriarty attempted to resolve the matter with opposing counsel through well-reasoned and thorough letters that pointed out the violations of the Protective Order. Rather than engage him in a discussion of the issues or take action to remedy the blatant violations, defense counsel offered only silence. Unable to make any headway with opposing counsel, Mr. Moriarty was forced to research, draft, and file a motion to intervene and for sanctions. The motion was supported by a persuasive 19-page memorandum.

After Mr. Berg's motion was filed, the defendants and Mr. Loftus chose not to take any action that would have eliminated the need for Mr. Moriarty to further litigate their violations of the Protective Order. Instead, they argued that their actions were completely justified, that Mr. Berg had suffered no harm, and that he had no business intervening for the limited purpose of enforcing his rights under the Protective Order. Staking out such a position justified

Mr. Moriarty's preparation for the hearing, which required him to address even the most specious of the defendants' arguments.

Under these circumstances, spending slightly more than 30 hours to attempt to resolve the issues prior to making the motion, prepare the motion papers, and get ready for the hearing does not strike the Court as excessive at all. The defendants provide the conclusory statements that the time entries are excessive and that a client in a competitive marketplace would not pay for the work Mr. Moriarty performed,[2] but they offer no support for these positions. In fact, Mr. Moriarty's approach was measured, appropriate, and necessary to bring to light the defendants' and Mr. Loftus's failure to obey the Protective Order. Accordingly, the Court finds that the 32.8 hours that Mr. Moriarty spent litigating this matter and the 3.5 hours spent by his paralegal are reasonable.

Finally, the Court rejects the defendants' argument that the subsequent state court Order requiring Mr. Berg to produce consulting agreements has "cured" anything of consequence. The defendants appear to suggest that the Court should reduce any fee award or decline to award expenses altogether because they have now obtained access to the very same information in the state litigation that they previously used in violation of this Court's Protective Order. However, the only thing that the state court Order "cures" is the defendants' own lack of diligence in pursuing discovery from Mr. Berg in the state proceeding—despite their untimely discovery requests, the state court allowed them to receive a limited subset of discovery. The state court Order does not negate the conduct of the defendants and Mr. Loftus that caused additional and unnecessary expenses and attorney's fees. Nor does it make an award of expenses unjust or substantially justify the defendants' failure to comply with the Protective Order. Fed. R. Civ. P. 37(b)(2)(C). Imposing a sanction under these circumstances is consistent with the purpose behind the Rule. *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 763–64 (1980) ("Rule 37 sanctions must be applied diligently both to penalize those whose conduct may be deemed to warrant such

---

[2] To the extent the defendants imply that an attorney-fee sanction is inappropriate because Mr. Berg has a contingent-fee arrangement with Mr. Moriarty, the Court disagrees. *Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 679 (10th Cir. 2012) ("[C]ourts construe the term *attorney fees* to mean, not the amount actually paid or owed by the party to its attorney, but the value of attorney services provided to the party.") (emphasis in original); *id.* at 680 ("The purpose of Rule 37 attorney-fee sanctions would be thwarted if a party could escape the sanction whenever opposing counsel's compensation is unaffected by the abuse, as when the fee arrangement is a contingency fee or, as here, a flat rate.").

a sanction, and to deter those who might be tempted to such conduct in the absence of such a deterrent.") (cleaned up).

*Order*

Based on the foregoing, **IT IS HEREBY ORDERED THAT**

1. Intervenor Eric Berg's application for an award of expenses and attorney's fees **[ECF No. 342]** is **GRANTED**; and

2. Pursuant to Fed. R. Civ. P. 37(b)(2), Wendy Brown, A.W. Companies, and Alex Loftus shall pay Mr. Berg $12,567.00 in reasonable expenses, including attorney's fees, within 30 days of the date of this Order.

Date: November 11, 2019         *s/Katherine Menendez*
                                Katherine Menendez
                                United States Magistrate Judge