UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Management Registry, Inc.                    Case No. 0:17-cv-5009-JRT-KMM

        Plaintiff,

v.                                                **ORDER**

A.W. Companies, Inc., et al.

        Defendants.

      This matter is before the Court concerning case-management and discovery issues raised informally by the Plaintiff, Management Registry, Inc. ("MRI"). The Court held a recorded telephone conference on January 24, 2020, made certain rulings on the record, and advised the parties that a brief Order would be issued. This Order concerns the matters discussed during the conference.

**I.    Defendants' Response to Second Amended Complaint**

      First, MRI sought "guidance as to Defendants' lack of filing any Answer or Counterclaim…." [Letter from Jim Morris to Menendez, M.J. (Jan. 22, 2020) (on file with the Court) (hereafter "Pl.'s Letter").] As previously noted by the Court, the Defendants have suggested that they would be filing a new counterclaim in response to an indemnification claim that MRI added for the first time to its Second Amended Complaint ("SAC"). However, the Defendants moved to dismiss all claims in the SAC for failure to state a claim and did not file a responsive pleading. The parties are awaiting a ruling on the Defendants' objections to this Court's recommendation that the motion to dismiss the SAC be denied.

      Relying on *General Mills, Inc. v. Kraft Foods Global, Inc.*, 487 F.3d 1368 (Fed. Cir. 2007), MRI argues that the time for the Defendants to file a counterclaim in response to the SAC has expired because their motion to dismiss did not toll the time for filing a responsive pleading. As explained during the January 24th phone conference, the Court

1

finds that the Defendants' deadline for filing a responsive pleading, including any proposed counterclaim has not passed.

Interpreting Federal Rule of Procedure 12(a)(4), the *General Mills* court concluded that the filing of a motion to dismiss in response to an amended complaint does not toll the time for filing and serving a responsive pleading, "at least in the circumstances … where the time for responding to the original complaint has already run." 487 F.3d at 1376–77. However, the Federal Circuit reached this decision in unique circumstances:

> General Mills brought an action against Kraft alleging infringement of its patent relating to rolled food products. Kraft filed an answer and counterclaim, alleging that General Mills breached a settlement agreement by bringing suit. General Mills replied to Kraft's counterclaim and Kraft moved for summary judgment. General Mills then filed an amended complaint in which it reasserted the patent infringement claim from the original complaint and asserted a new breach of contract claim on the ground that Kraft breached the settlement agreement. Kraft moved to dismiss both counts of the amended complaint. Kraft never answered the amended complaint or reasserted its counterclaim. The district court granted Kraft's motion to dismiss and dismissed General Mills' patent infringement claim. Exercising its discretion under 28 U.S.C. § 1367(c)(3), the district court then declined to exercise jurisdiction over General Mills' state-law contract claim and entered judgment for Kraft. After entry of judgment, Kraft sought guidance by letter to the district court as to how to proceed with its counterclaim. The district court treated Kraft's letter as a motion to alter or amend the judgment and denied the deemed motion, ruling that because Kraft did not reassert its counterclaim in response to the amended complaint, no counterclaim was pending when the district court entered judgment.

*Jimena v. UBS AG Bank*, No. CV-F-07-367 OWW/SKO, 2010 WL 2353531, at *2 (E.D. Cal. June 9, 2010). On these facts, the appellate court found that the district court did not abuse its discretion in concluding that Kraft had abandoned its counterclaim. *General Mills*, 487 F.3d at 1377.

Other courts have disagreed with the Federal Circuit's reasoning, finding that cases interpreting Rule 12(a)(4) differently are "more persuasive." *Direct Enterprises, Inc. v. Sensient Colors LLC*, No. 1:15-cv-01333-JMS-TAB, 2017 WL 2985623, at *3 n.2

2

(S.D. Ind. July 13, 2017) (citing contrary cases). This Court agrees with the *Direct Enterprises* court that "the same reasoning for tolling the time to file an answer applies when an amended complaint has been filed. Requiring an answer to an amended pleading when a motion to dismiss pends potentially results in duplicative pleadings, confusion regarding the proper scope of discovery, unnecessary expenses, and wasted time." *Id.* In addition, the Court notes that the Federal Circuit issued an order clarifying its ruling in *General Mills*, which recognized the district court's authority to set a different time for filing a responsive pleading pursuant to Rule 15(a)(3). *General Mills Inc. v. Kraft Foods Global, Inc.*, 495 F.3d 1378, 1380 (Fed. Cir. 2007); Fed. R. Civ. P. 15(a)(3) ("*Unless the court orders otherwise*, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later.") (emphasis added). And even if *General Mills* were more persuasive authority, it is based upon a very different, and indeed unique, set of facts.

The Court explained its reasoning and its determination that the Defendants' deadline had not passed during the January 24th phone conference. Based on that oral ruling and the discussion above, **IT IS HEREBY ORDERED THAT** the Defendants shall file a responsive pleading to the Second Amended Complaint **within seven days** after the District Court issues a ruling on the Defendants' objections to the undersigned's September 12, 2019 Report and Recommendation [ECF No. 298], unless a different time is set by the District Court. Further, the Court clarified that in the event the Defendants pursue an additional counterclaim or third-party claim as part of a responsive pleading to the SAC, nothing in the Court's ruling on the issue addressed in this Order is intended to foreclose MRI from raising any challenge to such a claim at the appropriate time.

Even beyond timing, the Court discussed several practical aspects of Defendants' proposed additional counterclaim with the parties during the January 24th conference. Counsel for the Defendants confirmed that the basis for adding any new counterclaim or third-party claim hinged on MRI's indemnification claim. Defense counsel acknowledged that if the indemnification claim were not part of the case there would be no basis for introducing a new counterclaim at this stage of the proceedings. The Court discussed with MRI's counsel the possibility of withdrawing or voluntarily dismissing the

indemnification claim to avoid potential additional litigation around this issue. The Court encourages MRI's counsel to seriously consider abandoning the indemnification claim and the defendants to hold to their representations that no additional counterclaim is contemplated independent of such a claim. The parties should promptly meet and confer regarding this issue to avoid any further litigation.

## II. Discovery Issues

The Court also addressed several discovery issues with the parties' counsel during the January 24th phone conference. The Court issued several oral rulings on the record and otherwise advised counsel of its expectations for bringing this litigation to a conclusion.

Before turning to the specific issues addressed on the call, the Court notes that it has once again Ordered the parties' counsel to engage in a meet and confer process. In MRI's pre-hearing letter, plaintiff's counsel, Jim Morris, indicates that defense counsel, Alex Loftus, has refused to meaningfully meet and confer on the issues that were raised. [Pl.'s Letter at 3.] Mr. Loftus indicated that he spoke with Mr. Morris on the morning of January 23, 2020, and "there was no refusal to meet and confer regarding this [issue] I just wasn't available earlier." [E-mail from Alex Loftus to Menendez, M.J. (Jan. 23, 2020, 08:09:39 AM) (on file with the Court).] During the call, Mr. Loftus also discussed his busy schedule. The Court understands that lawyers and business clients with whom they must interact are often busy and it makes scheduling difficult. However, the time for lenience in recognition of those realities has long since passed. Given the late stage of these proceedings, the multiple instances in which the Court has been forced to intervene to get Mr. Loftus to discuss discovery matters with the other side, and the fact that the Court is addressing in this Order basic discovery that should have been provided by the Defendants many months ago, the Court has little remaining patience for delays in completing the meet and confer process regarding the issues addressed in this Order. Mr. Loftus is hereby advised that the Court expects him to engage in the meet and confer process with an eye toward addressing Mr. Morris's concerns about the state of discovery, reaching compromises where they can be attained, and avoiding the snarky and irreverent tone that has pervaded his communications throughout this matter.

4

### A. Production of Entire March 2018 Data Capture

MRI raised an issue regarding the Defendants' agreement in November to produce the entire database of information captured in March 2018. The parties represented that this database consisted of approximately 160,000 documents of which approximately 140,000 have been produced. After discussing this issue during the call, the Court instructed the Defendants to choose between two options: (1) if it is efficient to do so, produce everything in the original March 2018 data capture that has not been previously produced to the plaintiff; or (2) reproduce the entire database captured in March 2018. Either path will resolve several concerns raised by MRI regarding whether relevant records contained in this data set have been disclosed. The Defendants shall comply with this portion of the Order **no later than February 11, 2020**.

### B. Adequacy of Defendants' Searches

MRI expressed concern that the Defendants have conducted inadequate searches in their efforts to comply with the Court's November 15, 2019 Order compelling the Defendants to provide discovery beyond that covered by the data capture. First, MRI argues that it was improper for Wendy Brown, on her own, to conduct the searches of the Defendants' electronic data for responsive information and to determine relevancy. While the Court does not agree with MRI's assertion that "an actual computer expert" was required to conduct searches for information responsive to the categories of documents that were required to be produced in the November 15th Order, the Court finds that it is not appropriate for an interested party such as Ms. Brown, who is not bound by the ethical rules governing attorneys, to have primary responsibility for determining responsiveness and relevance. In short, Mr. Loftus must oversee the discovery process and ensure that the searches of his clients' information are compliant with the Court's Orders, that the information searched is reviewed for relevance and responsiveness to MRI's discovery requests and the November 15th Order compelling discovery, and that the defendants' production of documents is compliant with their discovery responsibilities. During the call, Mr. Loftus indicated that he reviewed and stands by all the decisions his client, Ms. Brown, has made concerning relevance.

Accordingly, **IT IS HEREBY ORDERED THAT** Mr. Loftus must provide an affidavit or declaration concerning his involvement in the process of complying with the Court's November 15th Order compelling the Defendants to provide discovery. At a minimum, this affidavit must set forth the following information: (1) a detailed itemization of any potentially responsive information that no longer exists (Mr. Loftus discussed a gap in Ms. Brown's communications from March through June 2018); (2) a complete list of search terms used to review the Defendants' data; (3) a detailed description of the methods used to ensure full compliance with the Court's November 15th Order; (4) a full list of the email accounts and other locations for electronically stored information that have been searched for information responsive to the November 15th Order; and (5) a description of any documents withheld from production and the basis for withholding them. This affidavit applies to all information gathered by the defense other than the data captured in March of 2018.

In addition, **IT IS HEREBY ORDERED THAT** Ms. Brown shall provide an affidavit or declaration that: (1) details what search terms she used when she performed her own searches of the Defendants' information in response to the November 15th Order; (2) provides a full list of the email accounts and other locations for electronically stored information that have been searched for information responsive to the November 15th Order; and (3) explains how she conducted the searches she performed.

The affidavits or declarations required by this Order must be provided to counsel for the plaintiff **on or before February 11, 2020**.

### C. Employee Personal Emails

In the November 15, 2019 Order, the Court required the Defendants to "conduct full searches of the personal e-mail accounts of Al Brown, Wendy Brown, and Tyler Brown used to discuss business matters during the late 2017 and early 2018 timeframe, and [to] provide all relevant communications to opposing counsel." [ECF No. 359 at 2 ¶ 3.] The Court also required disclosure of "relevant communications found in the personal email accounts of other employees of the defendants" if they were captured in the early 2018 data collection the Defendants performed. [*Id.*] In addition, the Court stated the following regarding other personal email communications:

> Counsel disagree regarding the discoverability of relevant communications which might be found in the personal email accounts of employees other than the Browns and Mr. Batinich. (See ¶¶ 12–13, below.) Specifically, the Defendants assert that such personal emails are not within their custody or control. Counsel are ordered to attempt to reach a compromise on this issue. If those sincere efforts fail, the Plaintiff should bring a motion to compel by no later than December 15, 2019, if MRI intends to seek e-mails beyond those ordered here.

[*Id.* at 3 ¶ 3.] MRI did not bring a motion to compel concerning this issue by December 15, 2019.

During the January 24th phone conference, Mr. Morris indicated some confusion regarding these requirements and whether it was appropriate to bring certain issues to the Court by the December 15, 2019 deadline given the state of the parties' efforts to meet and confer. Mr. Morris requested a new opportunity to raise this issue with the Court if necessary. Consistent with the Court's ruling on Mr. Morris's request during the phone conference, **IT IS HEREBY ORDERED THAT** counsel for the parties shall meet and confer regarding the production of personal emails of Defendants' employees **on or before February 7, 2020** in an effort to resolve any disputes. If the parties are unable to reach agreement, MRI shall make a motion to compel this information **no later than February 14, 2020**. Any response to such a motion shall be filed **on or before February 21, 2020**. The Court will not hold a hearing on any such motion and will issue a ruling based on the written submissions alone.

### D. Redactions of Text Messages

MRI also raised an issue with the Defendants' substantial redactions of text messages that were produced. Mr. Morris indicated that it appeared the Defendants redacted every text message that was produced unless it contained a search term that the parties agreed upon. Mr. Loftus confirmed during the call that this is, indeed, how the Defendants redacted irrelevant information, and Mr. Loftus stated that he stood by the propriety of these redactions, which were apparently made in the first instance by Ms. Brown. In an effort to resolve this issue without the need for the Court's further involvement, Mr. Loftus offered to produce 10 text messages on either side of the message containing a search term.

The Court notes that the practice of redacting documents based on claims that portions of it are not relevant is "fraught with the potential for abuse." *Burris v. Versa Prod., Inc.*, No. CIV. 07-3938 JRT/JJK, 2013 WL 608742, at *3 (D. Minn. Feb. 19, 2013). The *Burris* court required a defendant to remove relevance redactions it placed in a number of documents based on the following reasoning:

> The practice of redacting for nonresponsiveness or irrelevance finds no explicit support in the Federal Rules of Civil Procedure, and the only bases for prohibiting a party from seeing a portion of a document in the Rules are claims of privilege or work-product protection. Fed. R. Civ. P. 26(b)(5); *see* Steven J. Purcell, Document Production in Federal Litigation: Can You Redact for Nonresponsiveness?, 59–Dec. Fed. Law. 22 (Dec.2012) (discussing lack of support for nonresponsiveness redactions in the Federal Rules of Civil Procedure). In addition, redacting allegedly nonresponsive or irrelevant portions of discoverable documents "breed[s] suspicions." *In re State Street Bank and Trust Co. Fixed Income Funds Inv. Litig.*, Nos. 08–md–1945 (RJH)(DFE), 08–Civ.–0333 (RJH)(DFE), 2009 WL 1026013, at *1 (S.D.N.Y. Apr. 8, 2009). Parties making such redactions unilaterally decide that information within a discoverable document need not be disclosed to their opponents, thereby depriving their opponents of the opportunity to see information in its full context and fueling mistrust about the redactions' propriety. And if the Court were to allow such a practice it would improperly incentivize parties to hide as much as they dare. That is a result at odds with the liberal discovery policies, the adversary process, and the Court's obligation to read the Rules "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

*Id.* During the January 24th conference, the Court explained that its review of the case law suggested redactions for relevance are generally not permitted, but the Court noted that the realities of communicating by text message may justify other solutions. Neither side has briefed the issue of redacting portions of text message communications based on claims of irrelevance.

The Court strongly encouraged the Defendants to remove the redactions and produce text messages in their entirety, noting that the Protective Order in this case would resolve any concerns they may have regarding privacy, and doing so could help avoid further litigation around the issue. Consistent with the Court's instructions on the record, **IT IS HEREBY ORDERED THAT on or before February 11, 2020**, the

Defendants shall either provide MRI with (1) a complete, unredacted, production of their text messages; or (2) a production of 10 text messages on either side of each message containing a search term. If the Defendants elect not to provide a complete, unredacted production of their text messages, the parties must meet and confer regarding any remaining disputes on this issue **on or before February 18, 2020** and, if they are unable to resolve their differences, any motion to compel or for a protective order preventing further disclosure must be filed **on or before February 25, 2020**.

### E. Financial Records

Finally, in the November 15, 2019 Order compelling the Defendants to provide discovery, the Court required the Defendants to "produce financial reports, tax returns, monthly bank account statements, earning records, invoices, and any other documents which reflect AW [Companies, Inc.'s] income and earnings. This includes, but is not limited to, documentation showing accounts receivable and accounts payable, and documents from the three separate banks used by A.W. companies, as discussed at the hearing." [ECF No. 359 at 3–4 ¶ 6.] MRI raised concerns regarding the Defendants' production of financial records, including Ms. Brown's assertion that providing QuickBooks statements (which were allegedly not identified in the records produced) was sufficient to comply with the Order. MRI also took issue with the Defendants' assertion that because of the non-traditional way in which Ms. Brown handles AW's financial matters, "[a]nything [she] would turn over would be unorganized and incomplete." [Pl.'s Letter at 2 (quoting Dec. 21, 2019 Decl. of Wendy Brown ¶ 4).]

During the call, the Court instructed the parties that it was not appropriate for the Defendants to withhold production of responsive documents that the Court required them to produce in the November 15th Order because they are poorly organized or are kept in a manner not traditionally used by businesses. Instead, the Defendants must produce all financial documents set forth in the order, regardless of the ease of producing them or their orderliness. This includes producing documents that are not kept electronically, but are stored only in paper. Accordingly, **IT IS HEREBY ORDERED THAT** the Defendants must comply with the November 15th Order regarding production of financial documents [ECF No. 359 at 3–4 ¶ 6] **on or before February 11, 2020**. Failure

9

to comply with this deadline and with the scope of the November 15th Order may warrant sanctions.

    **IT IS SO ORDERED**.

Date: January 29, 2020

    *s/Katherine Menendez*
    Katherine Menendez
    United States Magistrate Judge