UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

MANAGEMENT REGISTRY, INC,

Plaintiff,

Civil No. 17-5009 (JRT/KMM)

v.

A.W. COMPANIES, INC.; ALLAN K. BROWN; WENDY BROWN; and MILAN BATINICH

Defendants.

**MEMORANDUM OPINION AND ORDER**

V. John Ella, Nicholas N. Sperling, and Anna M. Koch, **TREPANIER MACGILLIS BATTINA P.A.**, 310 Fourth Avenue South, Minneapolis, MN 55415 and James M. Morris, **MORRIS & MORRIS, P.S.C.**, 217 North Upper Street, Lexington, KY 40507, for plaintiffs.

Alexander Loftus, **STOLTMANN LAW OFFICES**, 161 N. Clark St. Suite 1600, Chicago, Illinois, 60603 and Justin Bruntjen, **DECERTO LAW LLC**, 501 Carlson Parkway #529, Hopkins, MN 55305, for defendants.

Defendants A.W. Companies, Inc. ("AW"), Allan K. Brown, Wendy Brown, and Milan Batinich brought two motions regarding Plaintiff Management Registry, Inc.'s ("MRI's") Second Amended Complaint ("SAC"). Defendants sought to dismiss the entire SAC for failure to state a claim, and also moved to strike punitive damages from the SAC. The Magistrate Judge issued a Report and Recommendation ("R&R") on September 12, 2019, recommending that the Court deny Defendants' motions. Because the Court concludes that MRI adequately pleaded its claims, the Court will overrule Defendants' objections, adopt the R&R in part, and deny Defendants' motions.

1

## BACKGROUND

**I. Factual Background**

MRI is a company which provides temporary staffing services. (SAC ¶ 1, July 12, 2019, Docket No. 251.) MRI is made up of small staffing agencies which MRI has acquired over the years. (*See Id.* ¶ 2.) In 2017, MRI began to negotiate the purchase of certain additional companies, (the "Allstaff Acquisition") of which Defendant Allen Brown ("Mr. Brown") was an owner and president. (*Id.* ¶¶ 12–13, 24.)

During the course of negotiations, MRI and Mr. Brown agreed that Mr. Brown would continue on as president for the majority of the acquired businesses. (*Id.* ¶¶ 25–26.) Mr. Brown and MRI entered into an employment agreement to that effect on August 31, 2017. (*Id.* ¶ 23.) Mr. Brown's employment agreement contains provisions related to confidentiality and competitive activity. (*Id.* ¶ 26.)

MRI and Mr. Brown also discussed the potential sale of certain of the acquired businesses to Defendant Wendy Brown ("Ms. Brown"). (*Id.* ¶¶ 34–35.) Specifically, MRI and Mr. Brown discussed selling AllStaff Recruiting, Inc. ("ARI"), which consisted of several companies located in Minneapolis. (*Id.*) Despite these negotiations, the Browns did not reach a deal. (*Id.* ¶ 36.) However, shortly after the Acquisition closed in September 2017, Ms. Brown directed an employee of one of ARI's companies to email that company's staff, agents, and clients, informing them that Ms. Brown and her partner Eric Berg had repurchased the company and were re-branding it. (*Id.* ¶¶ 37–38.) Ms. Brown continued to represent to employees and clients that she was the owner of ARI. (*Id.* ¶ 39.)

MRI alleges that Mr. Brown misrepresented ARI's financials, and also whether Mr. Brown had received a commission from the Allstaff Acquisition. (*Id.* ¶¶ 24–25, 41–42, 44.) In October 2017, Mr. Brown resigned from MRI. (*Id.* ¶ 50.) Shortly afterward, the Browns formed AW. (*Id.* ¶ 55.) AW and the Browns represented to MRI employees that MRI was merely a payroll service for AW, that AW was the valid successor in interest to ARI, and that these employees now worked for AW. (*Id.* ¶¶ 56.) Because MRI employees wrongly believed AW to be their new employer, MRI employees took MRI equipment and confidential information to AW. (*Id.* ¶¶ 58–61) AW also allegedly misled MRI clients into believing that AW was the successor entity resulting from the Acquisition. (*Id.* ¶¶ 75-82.)

MRI alleges that AW was aided in their actions by Defendant Milan Batinich, who was an employee of one of the acquired companies. (*Id.* ¶¶ 28, 86, 91.) Batinich's employment agreement contained confidentiality and non-compete provisions; this employment agreement was assigned to MRI as part of the Acquisition. (*Id.* ¶¶ 30–32.)

II. **Procedural Background**

MRI brought an initial complaint against AW, the Browns, and Eric Berg[1], a former employee of one of the acquired companies. (Complaint at 1, Nov. 3, 2017, Docket No. 1.) MRI filed its First Amended Complaint ("FAC") shortly thereafter. (FAC, Nov. 21, 2017, Docket No. 59.) On May 17, 2019, Defendants moved for judgment on the pleadings as to several of the counts in the FAC. (Mot. for Judgment on Pleadings, Docket No. 204.)

---

[1] Eric Berg is no longer a defendant in the case.

On May 22, 2019, MRI moved to amend its pleadings (Mot. to Amend, Docket No. 206.) Among other things, MRI sought to add punitive damages to its complaint. (Mem. Supp. Mot. to Amend at 1, May 22, 2019, Docket No. 207.) MRI accompanied its motion with affidavits, per Minn. Stat. § 549.191, to allow the Magistrate Judge to review for prima facie evidence in support of the punitive damages claims. (*See* Docket Nos. 209–212.)

At oral argument, the parties and the Magistrate Judge agreed that MRI would be allowed to amend the FAC and that Defendants could move to dismiss. (Order, July 8, 2019, Docket No. 250.) As a result, the Magistrate Judge denied both MRI's motion to amend and Defendants' motion for judgment on the pleadings as moot. (*Id.*)

On July 12, 2019, MRI filed its Second Amended Complaint ("SAC") which includes claims for punitive damages. (SAC, Docket No. 251.) Defendants filed a motion to dismiss the SAC on July 24, 2019. (Mot. to Dismiss SAC, Docket No. 255.) Defendants also filed a motion to strike MRI's addition of punitive damages. (Mot. to Strike, July 24, 2019, Docket No. 256.) The Magistrate Judge issued an R&R on September 12, 2019, recommending that the Court deny Defendants' motions. (R&R at 34, Docket No. 298.) Defendants objected to the R&R, and MRI responded in support of the R&R. (Objections, Sept. 19, 2019, Docket No. 309; Response, October 3, 2019, Docket No. 332.)

## DISCUSSION

### I. Standard of Review

Upon the filing of an R&R by a magistrate judge, "a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ.

P. 72(b)(2); *accord* D. Minn. LR 72.2(b)(1). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3). "Objections which are not specific but merely repeat arguments presented to and considered by a magistrate judge are not entitled to de novo review, but rather are reviewed for clear error." *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015).

## II. Motion to Dismiss R&R Findings Not Specifically Objected To

In the R&R, Magistrate Judge found that Defendants had shown no basis for dismissal as to the following counts, and parties have not objected:

- Conversion (Count I)
- Malicious Injury (Count III)
- Business Defamation (Count IV)
- Unjust Enrichment (Count VII)
- Breach of the Duty of Loyalty (Count IX)
- Indemnification (Count X),
- Misappropriation of Trade Secrets (Count XI)
- Civil Conspiracy (Count XII)
- Civil Theft Claim (Count XIII)

5

The Magistrate Judge also determined no basis for Defendants' arguments about speculative damages. Finding no clear error in the Magistrate Judge's findings on these issues, the Court will adopt these findings and will deny Defendants' Motion to Dismiss as to these claims.

### III. Motion to Strike R&R Findings Not Specifically Objected To

MRI added punitive damages claims in the SAC without renewing its motion to amend or refiling affidavits, and Defendants filed a motion to strike, arguing that MRI did not comply with Minnesota's statutory procedure for adding punitive damages. The Magistrate Judge found that recent caselaw has called into question whether Minn. Stat. § 549.191 is compatible with the Federal Rules of Civil Procedure. The Magistrate Judge determined that, instead of the procedure set out in Minn. § 549.191, the correct standard for federal review of a Minnesota punitive damages claim was through the plausibility requirement of Fed. R. Civ. P 15. *See, e.g.*, *Shank v. Carleton College*, No. 16-cv-1154 (PJS/HB), 2018 WL 4961472, at *4 (D. Minn. Oct. 15, 2018).

The Magistrate Judge then considered allegations and found that MRI's punitive damages claims were plausible. Because neither party objected to the Magistrate Judge's findings, and because the Magistrate Judge adopted a reasonable interpretation of Minn. Stat. § 549.191, the Court finds no clear error. The Court will adopt the R&R and will dismiss Defendants' Motion to Strike.

### IV. Remaining Claims Generally

Defendants object that the R&R "missed an opportunity here to trim the fat" prior to summary judgment, because MRI has pleaded numerous claims in the SAC. Defendants

6

repeat the arguments they previously made before the Magistrate Judge – that the SAC is a "shotgun pleading" and that there are too many causes of action. The Magistrate Judge found that each count was properly pleaded, and that while the SAC was complicated, that was not a legal basis for dismissal. Because each of the remaining claims in the SAC meets the pleading standards set out in *Iqbal* and *Twombly*, the Court denies Defendants' motion to dismiss the entire Second Amended Complaint pursuant to Fed. R. Civ. P. 8. Summary judgment would be the proper vehicle to "trim the fat" if there is insufficient factual support for the claims.

V. **Common Law Fraud (Count II)**

Defendants object to the R&R's finding that MRI adequately pleaded detrimental reliance. Under Minnesota law, detrimental reliance is an essential element of common law fraud, and "failure to establish detrimental reliance dooms a claim for common law fraud." *Popp Telecom, Inc. v. Am. Sharecom, Inc.,* 361 F.3d 482, 491 (8th Cir. 2004)

In their Objections, Defendants repeat the arguments they previously made before the Magistrate Judge. First, Defendants argue that while the SAC alleges misrepresentations to MRI employees, it does not allege misrepresentations to MRI as a corporate entity. Defendants suggest that the Court should construe MRI's employees as third parties, instead of corporate agents, but cite no law or facts that support this argument.

Defendants also repeat their argument that MRI may not rely on extra-contractual promises that conflict with a written contract. However, as the R&R explained, the SAC alleges that MRI relied on the contract, which precluded Mr. Brown from receiving commissions. MRI alleges that Mr. Brown, despite this contractual language, did receive

7

commissions and concealed them from MRI. As such, MRI is not relying on an extra-contractual promise, but rather the language of the contract itself. Defendants have not shown that MRI's common law fraud claims fail as a matter of law. The Court therefore denies Defendants' request to dismiss Count II of the SAC.

## VI. Deceptive Trade Practices Act (Count V)

Defendants object to the R&R's finding that MRI adequately pleaded ongoing harm.

### A. Pleading Standard

First, Defendants argue that the Magistrate Judge improperly reviewed this claim under the pleading standards contained in Rule 8, rather than Rule 9(b). Claims under the Minnesota Deceptive Trade Practices Act (Minn. Stat. § 325D.44) fall under the heightened pleading standards of Fed. R. Civ. P. 9(b). *See, e.g., E-Shops Corp. v. U.S. Bank Nat. Ass'n*, 678 F.3d 659, 665 (8th Cir. 2012). It appears that the R&R considered only whether the Deceptive Trade Practices Act allegations "[met] the pleading standards governing Rule 8." (R&R at 10.) The Court will sustain Defendants' objections as to the correct pleading standard for MRI's Deceptive Trade Practices Act claims and will review the claim under Rule 9(b).

### B. Future Harm Under Rule 9(b)

Defendants then argue that that the Magistrate Judge erroneously relied on ¶ 125 in the SAC in finding whether MRI adequately pleaded future harm. Defendants argue that the bad acts "were committed years ago and MRI is not going to be harmed by Defendants again." (Objs. at 7.) However, MRI has demonstrated otherwise in its pleadings.

"A plaintiff asserting a claim under the MDTPA must allege an irreparable injury or threat of future harm in order to withstand a motion to dismiss." *Knotts v. Nissan N. Am., Inc.*, 346 F. Supp. 3d 1310, 1328 (D. Minn. 2018) (citing *Johnson v. Bobcat Co.*, 175 F.Supp.3d 1130, 1141 (D. Minn. 2016)). Courts have found complaints lacking where there is a prior injury that will not continue. *See, e.g., Johnson,* 175 F. Supp. 3d at 1141 (noting a prior harm does not necessarily indicate a future harm and in fact may indicate a reduced risk of harm, since a wary plaintiff is unlikely to do repeat business with a deceptive defendant.) Instead, courts look to see whether there are allegations of ongoing or future harm. *See Knotts*, 346 F. Supp. 3d at 1328 (finding allegations of an ongoing violation of the MDTPA, continued advertising, and ongoing safety risks sufficient to survive a motion to dismiss).

In this case, MRI has made a sufficient showing even under the heightened pleading standards of Rule 9(b). First, MRI made several allegations in ¶ 123 of the SAC, including that Defendants: falsely stated that Ms. Brown purchased a portion of MRI's business and rebranded; falsely informed MRI customers that they were released from their contracts; falsely substituted AW's name on the bills and contracts for MRI's clients; and palmed off MRI's products and services under AW's name and receiving compensation for these services.

Furthermore, as the Magistrate Judge noted, this paragraph does not stand alone and must be read in context with the rest of the SAC. MRI has detailed the ongoing nature of Defendants' actions elsewhere in the SAC. For example:

9

- ¶ 73: A.W. made . . . communications to mislead each and every ARI high-level, managerial, administrative, operational, and hourly employee and to siphon MRI's temporary workforce in its **ongoing effort** to palm off MRI's customers, employees, databases, proprietary materials and data as A.W.'s property.

- ¶ 74: As a result of these, and other, illegal actions, A.W. **currently employs**, or has employed, the vast majority of these workers at one point or another since November 2017, including approximately 30 high-level, managerial, administrative and operational employees of MRI as of the Closing Date, and an even larger number of temporary and staffing employees who worked with the Minnesota Companies.

- ¶ 89: At the direction of A.W., on November 11, 2017, former MRI employees illegally accessed and downloaded approximately 375 MRI-owned proprietary, confidential, and trade secret protected documents, including offer letters, policies, operations documents related to specific clients, training files, and HR documents, and, on November 13, 2017, former MRI employees illegally accessed and downloaded all of MRI's 360° reviews and Standard Operating Procedures. A.W. has subsequently palmed off those documents as its own, and has obtained detailed confidential spreadsheets, data, documentation, and information regarding all of MRI's customers, prospective customers, and employees and **is using this information to unfairly compete with MRI, and to further A.W.'s theft of MRI's customers, clients, employees, and databases**.

- ¶ 90: From November 10 through 14, 2017, MRI representatives conducted a thorough inspection of every Minnesota and Wisconsin facility in order to determine the status of computerized equipment that MRI had purchased via the Purchase Agreement. At least 78 internal computers and all of the "in-home" computers utilized by the temporary staff (at least 200 computer terminals, 400 monitors, and 200 headsets) had been misappropriated by A.W. and **are being used to carry out A.W.'s scheme or "ownership," and to improperly compete with MRI utilizing MRI's own equipment and facilities**.

- ¶ 91: Commencing on or about October 30, 2017, while still employed with MRI, **and continuing through to the present**, Mr. Batinich and Mr. Brown, and other yet-to-be-identified A.W. agents, stole MRI's computers, Confidential Information, Electronic Data, Client/Customer Lists, Employee Databases, computer monitors, and other computerized equipment, as well as MRI's clients, customers,

and employees and/or assisted other third parties to engage in such theft of MRI's property, clients, customers, and employees. A.W. took improper possession of computers and databases upon which confidential and proprietary information is housed, which has, **and will continue to, cause MRI to be unable to meet its contractual obligations to many of its customers.**

(SAC) (emphasis added). Despite Defendants' attempt to characterize any harm as a one-time occurrence, MRI has made a sufficient showing of ongoing harm under Rule 9(b). As a result, the Court will deny Defendants' objections and adopt the R&R.

## VII. Tortious Interference (Count VI)

Defendants object to the Magistrate Judge's finding that MRI adequately alleged that AW could be liable for tortious interference with contract. Defendants repeat the arguments they presented to the Magistrate Judge on this issue—namely that because AW was incorporated sometime after Mr. Brown resigned from MRI, AW could not interfere with Mr. Brown's contract.

This Court previously noted that MRI would face difficulties demonstrating that AW intentionally procured breaches of contract prior to AW's legal existence. (*See* Order Vacating TRO and Denying Preliminary Injunction at 11, Jan. 16, 2018, Docket No. 98.) However, in the SAC MRI makes no such claims. Indeed, Defendants concede as much in their Objections: "MRI speciously claims with conclusory allegations for the first time that the **alleged interference did not occur until after AW came into existence**." (Objections at 10.)

The SAC differs from earlier iterations of the complaint, but that is the nature of an amended complaint. Defendants stipulated that MRI could file the SAC. It appears that

MRI used the amendment to remedy issues previously raised by Defendants. That MRI has cured a flaw in their prior allegations is not a reason to dismiss a claim.

Furthermore, as the Magistrate Judge found, MRI has alleged that AW engaged in "ongoing and continuing breaches" of Mr. Brown's agreements. While Mr. Brown may have resigned prior to AW's existence, his agreement with MRI contained ongoing non-compete and non-solicitation provisions. MRI adequately alleges that AW was aware of these ongoing requirements, but knowingly interfered. The Court will deny Defendants' objections and adopt the R&R as to Count VI.

## VIII. Breach of Contract Claim Against Mr. Batinich (Count VIII)

Defendants object to the Magistrate Judge's denial of their Motion to Dismiss the Breach of Contract Claim (Count VIII) against Mr. Batinich.

First, Defendants make a one-sentence assertion that, contrary to MRI's allegations, Batinich was not employed by an entity referenced in the assigned agreement. For the purposes of a motion to dismiss, the Court assumes the truth of MRI's allegations, and Defendants' argument fails.

Next, Defendants argue that the Magistrate Judge erred in her choice of law analysis. There is no dispute that the relevant contact is governed by Illinois law. Defendants appear to argue that the Court should apply Minnesota law because there is no case from the Illinois Supreme Court directly addressing this issue.

Federal courts exercising diversity jurisdiction are bound by decisions of the state's highest court. *Foy v. Kapmeier*, 992 F.2d 774, 780 (8th Cir. 1993). When state law is unsettled, "it is the duty of a federal court to apply the rule it believes the state supreme

court would follow." *Gearhart v. Uniden Corp. of Am.*, 781 F.2d 147, 149 (8th Cir. 1986). In making this determination, federal courts cannot disregard a state's intermediate appellate court decision which is a "datum for ascertaining state law." *Meyer v. Tenvoorde Motor Co.*, 714 F. Supp. 991, 995 (D. Minn. 1989); *see also Foy*, 992 F.2d at 780 (looking to case law from the Minnesota Court of Appeals to rule on a legal question not yet addressed by the Minnesota Supreme Court). The Court is not free to ignore the terms of the contract, which specifies Illinois law, and instead rely on Minnesota law merely because there is no Illinois Supreme Court case on point.

Furthermore, there is no real doubt that Illinois law supports MRI's breach of contract claim. In Illinois, a restrictive covenant may be assigned to a purchaser, even in the absence of explicit language regarding successors. *AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 923–24 (N.D. Ill. 2001) (relying on Illinois Appellate Court case law). Parties may freely assign rights and duties under a contract. *Patrick Media Grp., Inc., v. Dupage Water Comm'n*, 630 N.E.2d 958, 965 (Ill. App. Ct. 1994); *see also First Illinois Nat'l Bank v. Knapp*, 615 N.E.2d 75, 79 (Ill. App. Ct. 1993) ("We know of no case which holds that a contract must specifically provide for the assignability of an otherwise assignable contract right."). Illinois Appellate Courts have upheld the assignment of restrictive covenants even in the absence of explicit language regarding successors. Although the Illinois Supreme Court has not addressed this issue, it is likely that it would adopt the holdings of the Illinois Court of Appeals. Defendants have failed to present any relevant Illinois case law to the contrary. The Court will overrule Defendants' objections and adopt the R&R as to Count VIII.

## CONCLUSION

The Court will overrule Defendants' objections in part and grant them in part, adopt the Magistrate Judge's R&R to the extent that it is consistent with this order, deny Defendants' Motion to Strike, and deny Defendants Motion to Dismiss.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Objections to the Report and Recommendation [Docket No. 309] are **OVERRULED in part and GRANTED in part,** and the Magistrate Judge's Report and Recommendation [Docket No. 298] is **ADOPTED in part** consistent with this order;

2. Defendants' Motion for Dismissal [Docket No. 255] is **DENIED**; and

3. Defendants' Motion to Strike [Docket No. 256] is **DENIED**.


DATED: January 30, 2020　　　　　　　　_____/s/ John R. Tunheim_____
at Minneapolis, Minnesota.　　　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　　　　Chief Judge
　　　　　　　　　　　　　　　　　　　　　United States District Court