# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Management Registry, Inc.                         Case No. 0:17-cv-5009-JRT-KMM

          Plaintiff,

v.                                                          **ORDER AND**
                                                            **REPORT AND**
A.W. Companies, Inc., et al.                      **RECOMMENDATION**

          Defendants.

     This matter is before the Court on Management Registry, Inc.'s ("MRI"), allegations of numerous instances of discovery misconduct on the part of the defendants and their counsel, Alexander Loftus. [MRI Pet., ECF No. 327.] Also before the Court is an earlier request for fees concerning the plaintiff's motion to compel the defendants' document production. [*See* Pl.'s Mot. to Compel, ECF No. 219; Order (June 24, 2019), ECF No. 239; Morris Decl., ECF No. 240; Defs.' Resp., ECF No. 248.] And finally, the Court had previously taken under advisement MRI's request that terminable sanctions be entered against the defendants based on their conduct and that of their counsel during the discovery period, and the Court addresses that request now. [Pl.'s Renewed Mot., ECF No. 344; Order (Nov. 15, 2019), ECF No. 359.]

     For the reasons that follow, the Court recommends that MRI's requests for dispositive sanctions be denied. The Court also orders that MRI's requests for attorneys' fees and costs be granted in part pursuant to Rules 37(a)(5) and 37(b)(2). Further, the Court recommends that defense counsel, Alexander Loftus, be sanctioned pursuant to 28 U.S.C. § 1927 and the Court's inherent power for conduct that has vexatiously multiplied these proceedings. And finally, the Court recommends that pursuant to its inherent powers the District Court instruct the jury in this case regarding the defendants' conduct during the discovery stage of this litigation.

## I.     Background

This case was filed on November 3, 2017. Since the beginning, the Court has made persistent and often frustrating attempts to manage the litigation to a point where a resolution on the merits can occur. Unfortunately, due to the conduct of the defendants and their counsel, MRI has been unable to obtain relevant information during the discovery period and was forced to incur otherwise unnecessary legal fees and discovery expenses. First, it took significant and preventable efforts for MRI to obtain a usable production of the defendants' electronically stored information. When the Court repeatedly instructed the defendants and their current counsel to take steps to remedy the flaws in the initial attempted production, they failed to comply. This deprived MRI of meaningful discovery in the case for many months. Second, when the defendants finally gave MRI a production it could use, MRI learned that the defendants had taken an unreasonably narrow view of what information was discoverable without disclosing any of those omissions to opposing counsel. Simply put, after promising for months that all requested information would be found in the besieged production once it could be used, the truth was that substantial relevant and responsive information had not been included at all. Third, after MRI successfully moved to compel additional discovery, the defendants and their counsel have continued to obstruct the discovery process, demonstrating an unwillingness to comply with the Court's Orders and otherwise fulfill their obligations to participate in discovery in good faith. Because the Court recommends significant sanctions against the defendants in this matter, the Court discusses the unfortunate history of this litigation in significant detail.

### *Early Stages*

On January 23, 2018, now-retired Magistrate Judge Franklin L. Noel entered a Scheduling Order, which set a November 1, 2018 deadline for completion of discovery and a trial-ready date of July 19, 2019. [ECF No. 105.] On May 7, 2018, the case was reassigned to the undersigned Magistrate Judge as a result of Judge Noel's retirement. [ECF No. 128.] Not long after the reassignment, MRI brought a motion for a protective order concerning the acceptable format for the production of electronically stored information ("ESI"), and Defendant Wendy Brown brought a cross-motion to compel.

[ECF Nos. 129, 131, 136, 140.] Generally, the defendants took the position that documents needed to be produced in an organized, readily searchable format, with Bates labeling and an indication of which documents were responsive to which requests. [*See* ECF No. 145.] However, due to a conflict of interest that arose after these motions were briefed, the defendants' counsel, attorneys at Sapentia Law Group, moved to withdraw. [ECF Nos. 148, 151.] The Court stayed discovery for a short period until the motion to withdraw was resolved. [ECF No. 156.] In July 2018, attorneys with the Stinson Leonard Street law firm, including Richard Pins, entered appearances on behalf of the defendants. [ECF Nos. 160–62.] The Court granted Sapentia Law Group's motion to withdraw on September 5, 2018. [ECF No. 164.]

### *ESI Production*

On September 24, 2018, the Court held a telephonic conference concerning MRI's motion for a protective order and Ms. Brown's motion to compel discovery. [ECF No. 167.] In relevant part, the Court denied MRI's motion for a protective order and required Plaintiff to produce documents according to the following parameters:

> (a)   The production from Plaintiff must explain (through Bates stamps, indexing, or otherwise) which documents being produced are responsive to which requests.
> (b)   The production from the Plaintiff must be in a searchable format.
> (c)   The Plaintiff must review its responsive documents to determine which documents are subject to confidentiality designations.

[Order (Sept. 26, 2018) ("9/26/28 Order"), ECF No. 168 at 1–2.] In October 2018, the Court modified the scheduling order, setting an April 15, 2019 deadline for completion of discovery and an October 1, 2019 trial-ready date. [ECF No. 171.]

The issue of how ESI should be produced came up again in December of 2018. Mr. Pins and James Morris, counsel for MRI, had exchanged increasingly contentious communications about the reciprocal discovery obligations of both sides and compliance by MRI with the September 26th Order. The September 26th Order had discussed only MRI's obligation to produce its documents in a particular manner, but because no motion related to the defendants' production was pending, it did not explicitly say that this requirement applied to both sides. [Morris Decl. (June 3, 2019) ("6/3/19 Morris Decl.")

¶ 16, ECF No. 225.] Mr. Pins assured Mr. Morris that the defendants intended to produce documents in the same way that they had requested MRI make its ESI production. [*Id.* ¶ 18.] Subsequently, however, Mr. Pins indicated that he expected a one-sided production from MRI in December 2018 based on the September 26th Order. [*Id.* ¶ 20.]

On December 18, 2018, the parties emailed letters to the Court in advance of a December 19th telephone conference. Mr. Morris's letter indicated that after the September 26th Order was issued, he contacted Mr. Pins to explain "we will definitely be seeking the same level of production from the Defendants, inasmuch as we have only gotten flat PDFs so far, and certainly need all of the metadata, computer documents, e-mail communications, etc. so that we can conduct similar analyses related to Defendants herein." [Letter from J. Morris to Menendez, M.J. (Dec. 18, 2018), ECF No. 225-1.] During the December 19, 2018 telephone conference, the Court ordered the defendants to produce ESI in the same manner as the Court had required of MRI, advising that the defendants could not fairly have demanded a level of organization from MRI while refusing to abide by similar expectations in their own. [*See* Mins. (Dec. 19, 2019), ECF No. 173;[1] *see also* 6/3/19 Morris Decl. ¶ 26.]

### *Difficulties Using ESI*

On January 11, 2019, Mr. Morris sent Mr. Pins a lengthy letter identifying the areas of defendants' document production that MRI believed to be deficient. [Letter from J. Morris to R. Pins (Jan. 11, 2019), ECF No. 225-2.] By February 2019, it became clear that MRI was having difficulty using or even opening the ESI production it had received from the defendants. [6/3/19 Morris Decl. ¶¶ 34–37.] On February 8, 2019, Mr. Pins acknowledged that the ESI production was a "corrupt file, and re-issued the production."

---

[1] The relatively brief minute entry for the December 19th telephone conference, which was conducted pursuant to the Court's informal discovery dispute process, does not reflect the Court's Order regarding the format required for the defendants' production. Nevertheless, that obligation was plainly communicated to all counsel during the call. Not only does Mr. Morris describe his recollection of the Courts Order in a declaration [ECF No. 225 ¶ 26], but the Court itself recalls issuing the Order during the call. Moreover, the defendants have not seriously contested that the Court ordered them to produce discovery in an organized and searchable form that corresponded to the format required for MRI's production.

[*Id.* ¶ 35.] The parties contacted the Court and a telephone conference was set for March 6, 2019. However, it quickly became clear during the call that the parties had not engaged in sufficient efforts to resolve the discovery issues before bringing them before the undersigned for resolution of any specific dispute. [ECF No. 175.]

The Court held a follow-up conference on March 13, 2019. [ECF No. 177.] During that call, it appeared that "significant progress [had been made] in resolving [the parties'] outstanding disagreements related to discovery." [ECF No. 178.] In particular, in a March 13, 2019 letter, Mr. Morris represented that the parties had reached the following agreement:

> Defendants will supplement Plaintiff's discovery responses consistent with the manner in which the Court required indexing and identification in Paragraph I.(a) of the Court's September 26, 2018 Order. In particular, relative to the [Requests for Production], Defendants will either identify that the items have been produced or restate our objection and the reason therefore. Defendants will also provide a matrix, akin to that produced by MRI, that identifies which documents are responsive to which requests. Deadline: April 5, 2019.

[Letter from James Morris to Menendez, M.J. (Mar. 13, 2019) (on file with the Court).] Essentially, the defendants agreed to do what the Court had required during the December 19, 2018 telephone conference. The Scheduling Order was modified yet again, with a new discovery deadline of August 16, 2019, and a trial-ready date of February 3, 2020. [ECF No. 180.] However, the Court's optimism that discovery would finally get on track proved to be misplaced.

On April 4, 2019, a notice of substitution of counsel was filed for the defendants. Out of the case were Mr. Pins and the other Stinson Leonard Street lawyers. Alexander Loftus and Ryan Moore, attorneys at the Stoltmann Law Offices in Chicago, entered notices of appearance for the defendants. [ECF No. 184.] Unfortunately, shortly after Mr. Loftus and Mr. Moore became involved, the contentiousness that marked earlier

periods in the litigation returned and, indeed, intensified.[2] [*See* Order (May 8, 2019) at 2 ("5/8/2019 Order"), ECF No. 203.]

Although prior to his withdrawal from the case, Mr. Pins had agreed the defendants would make a supplemental or corrected production on April 15, 2019, when Mr. Morris and his co-counsel reviewed the defendants' production of ESI, it became apparent that it remained unusable. [6/3/19 Morris Decl. ¶¶ 46–48.] Significant portions of the defendants' ESI would not "render" at all, making it impossible for MRI's counsel to review the information. [*Id.* ¶ 49.] Microsoft Excel spreadsheets had to be removed from the discovery production set and reviewed one-by-one on a computer, thereby eliminating metadata and erasing any indication of whether they were associated with emails or other documents. [*Id.* ¶ 50.] Some documents had no Bates numbers at all and other documents bore duplicative Bates labeling, such that multiple entirely unrelated documents shared the same numbers. [*Id.* ¶ 51; *see* Order (June 24, 2019) at 1 n.1 ("6/24/19 Order"), ECF No. 239.] In other words, the production of ESI was substantially useless and otherwise a mess. Mr. Loftus acknowledged that he too was having difficulties with the production and originally indicated that he would take steps to remedy the issues. [6/3/19 Morris Decl. ¶¶ 53, 55.] That promise was hollow.

MRI's counsel attempted to resolve the issues regarding the workability of the defendants' production without involving the Court, but those communications quickly broke down. [6/3/19 Morris Decl. ¶¶ 56–66.] Given the enormity of the problems with the production of the defendants' ESI, Mr. Morris suggested that the defendants overhaul it, but Mr. Moore indicated that this was a "nonstarter." Instead, Mr. Moore suggested that the parties "draft stipulations around the issues [MRI] raised." [*Id.* ¶ 67.] Mr. Moore asked MRI's counsel to particularly describe the issues they were having even though Mr. Loftus had already acknowledged the problems that existed with the defendants'

---

[2] Mr. Loftus introduced himself to this litigation by filing an overbroad motion to compel without first adequately meeting and conferring with opposing counsel or even completing a review of the information that MRI had already produced. When instructed by the Court to engage in a meaningful meet and confer, he flatly refused to comply with that Order. [5/8/2019 Order at 5.] Though, at that point, the Court found Mr. Loftus's noncompliance "astonishing" [*id.*], given the history of his conduct in the litigation, little that he does remains surprising today.

production. [*Id.* ¶¶ 69–70.] Though defense counsel indicated that they were looking for a third-party discovery vendor to address the issues on May 13, 2019, MRI had heard nothing about the issue by May 24, 2019. [*Id.* ¶ 74.]

### *MRI's Motion to Compel*

Eventually, on June 3, 2019, MRI brought a motion asking the Court to compel the defendants: to produce documents in compliance with the September 26, 2018 and December 19, 2018 Orders; to provide supplemental discovery responses as Mr. Pins had agreed to prior to his withdrawal; and to issue appropriate sanctions. [ECF No. 219; ECF No. 220 at 10.] The defendants responded, characterizing MRI's motion to compel as "tantamount to kicking and screaming," accusing MRI's counsel of "huffing and puffing," and asserting that the defendants had complied with all prior Court Orders. [ECF No. 228 at 1.] Ignoring the fact that the Court had ordered the defendants to make the same type of organized production required of MRI during the December 18, 2018 phone conference, defense counsel asserted that "there is no Order specifying the formatting of production…." [*Id.* at 2.]

On June 18, 2019, the Court held a hearing on MRI's motion to compel and for sanctions. [Mins. (June 18, 2019), ECF No. 237.] Despite the strident and dismissive character of the defendants' written response, at the hearing, Mr. Loftus struck a conciliatory tone. He "conceded that the production received by MRI from the defendants was flawed in many ways," candidly referring to several aspects of the production as "stupid." [6/24/19 Order at 1; *see* Tr. of Mot. Hr'g at 26, 29, 30, ECF No. 246.]

Based on the showing made by MRI and Mr. Loftus's concessions, the Court granted MRI's motion to compel and issued a written Order on June 24, 2019. First, defendants were required to "regenerate the entire production through their recently retained third-party vendor." [6/24/2019 Order at 2, ¶ 1(a).] Second, the Court permitted MRI to take four follow-up depositions that had been frustrated by the unworkable state of the defendants' original production. [*Id.* ¶ 1(b).] Third, MRI was instructed to inquire with its third-party vendor to determine "whether it is possible to merge the defendants' re-production with MRI's own efforts to organize the original data received from the defendants." The Court directed MRI to provide it with information regarding the costs of

merging the productions, and the Court indicated it would consider requiring the defendants to pay for MRI's vendor to complete that process.[3] [*Id.* ¶ 1(c).] Finally, the Court set a schedule for MRI to submit an affidavit stating the expenses, including attorney's fees, incurred in bringing the motion to compel. However, the Court directed MRI to exclude the expenses and fees it incurred because of the defendants' unusable original production, declining to award those substantial costs at that time. [*Id.* at 2–3, ¶ 1(d).]

### *Additional Problems*

Unfortunately, the Court's June 24th Order granting MRI's motion to compel did not end the difficulties that MRI experienced in obtaining a useful production from the defendants. On July 8, 2019, MRI filed a Status Update Regarding Defendants' Production Issues. [ECF No. 249.] Counsel for the parties, along with representatives from Logikcull and Bluestar CS, the parties' respective discovery experts, had held a conference on June 28, 2019 in an attempt to address the ESI issues. [*Id.* at 1.] On July 1, 2019, the defendants provided an "overlay" that was intended to allow MRI's counsel to merge the first production with the newer production so that all the work Mr. Morris and his team had done would not be lost. Unfortunately, Mr. Morris received an error message when he attempted to upload the overlay and Excel documents and other attachments would still not render. [*Id.* at 2.] As troubling, the documents that were visible suggested that the defendants' additional production included only documents responsive MRI's original Request for Production No. 2; there was no indication that any documents had been produced in response to many of the other document requests. [*Id.* at 3–4.]

On July 18, 2019, MRI filed a Second Status Update Regarding Court Order Compelling Discovery. [ECF No. 254.] Mr. Loftus had suggested "that images would be

---

[3] This portion of the Order was intended to address the fact that MRI had already engaged in significant work to review and make sense of the defendants' original flawed production. If possible, the Court's aim was to ensure that the defendants' re-production would not require MRI to re-review and re-organize everything MRI had previously received, potentially doubling portions of its litigation costs because of problems that the defendants created.

provided for all files with images, which would require a new Bates Number extension; and, exporting the production, with metadata fields with prior Bates Numbers and apparently another 'new' Bates Number." [*Id.* at 1.] Mr. Morris asked Mr. Loftus to explain how this would work with the original Bates numbers that had been produced and, characteristic of much of his approach to the meet-and-confer process in this case, Mr. Loftus suggested "it's up to you to tell us what you need." [*Id.* at 1–2.] Mr. Morris insisted that the proverbial ball was in the defendants' court to take the steps necessary to resolve the issues caused by the production. [*Id.* at 2.]

In a follow-up letter to Mr. Loftus, Mr. Morris provided a list of the specific requirements that would need to be met for the "overlay" to work properly and noted that during the June 28, 2019 conference call with the Court, the defendants' discovery expert from Relativity indicated an understanding of what would be needed to achieve those ends. [ECF No. 258.] Mr. Loftus suggested that the problems MRI was experiencing with the overlay occurred because MRI's counsel never uploaded a particular volume of the ESI production. [ECF No. 260.] He also asserted that it appeared MRI was requesting an entirely new production rather than a workable overlay of the original production. [*Id.*] Mr. Morris reiterated that, in fact, the additional pages from the volume Mr. Loftus referenced had never been received by MRI and that MRI never asked for an entirely new production. [ECF No. 261.] Mr. Loftus again insisted that MRI had already received everything it needed as evidenced in a "Sharefile Report," but again MRI informed him that this was a corrupt file. [ECF Nos. 262, 267.]

### July 31st Order and First Sanctions Motion

In the face of the seemingly endless problems with the defendants' production, the Court held yet another phone conference on June 24, 2019. In relevant part, the Court "addressed ongoing and serious problems with the defendants' production of documents." [7/31/2019 Order at 1, ECF No. 269.] During the call and in its follow-up Order, the Court echoed Mr. Morris's frustration that the defendants had still not complied with the Court's June 24, 2019 discovery Order. [*Id.* at 1.] Mr. Morris was instructed to file a letter specifically describing the problem that rendered the production unusable and describing any technical solution MRI requested. Mr. Loftus and

Mr. Moore were then ordered to file a letter two days after Mr. Morris's letter was filed, explaining how the defendants would comply with MRI's requests and when that compliance would occur. Alternatively, if the defendants were unable to comply, they would be required to offer a specific proposal for resolving the issue. [*Id.* at 2.] Unfortunately, when the parties filed their letters, the Court was provided no assurance that the defendants had complied with the June 24th Order. [*Id.*]

The Court's July 31, 2019 Order included the following instructions based on the failure of the defendants to demonstrate compliance with the June 24, 2019 Order:

> On or before August 2, 2019, the defendants are required to ensure that the third-party discovery vendors for both sides have direct communication concerning the ongoing technological issues with the defendants' document production. On or before August 12, 2019, the defendants shall verify that they have fully complied with the Court's June 24, 2019 Order regarding their document production. If technical issues remain or the defendants are otherwise unable to truthfully verify that all technical issues with their document production have been remedied by the deadline established herein, plaintiff has until August 19, 2019, to file a formal motion to compel and for any other relief if believes is appropriate under the circumstances.

[*Id.*] The Order placed the onus squarely on the defendants to arrange for the discovery vendors to have direct discussions on how to resolve the remaining technical issues and for the defendants to follow that up by informing the Court of the status of their efforts to solve the problems. They did neither.

On August 13, 2019, MRI filed a motion seeking sanctions, including dispositive sanctions, against the defendants pursuant to Rule 37 for violating multiple discovery Orders. [ECF No. 280; ECF No. 281 at 2–3.] Though they had been ordered to ensure that the parties' third-party discovery vendors had direct communication regarding the issues with defendants' production of ESI, neither defendants nor their counsel had reached out to MRI's vendor, LogikCull. [ECF No. 281-1.] Defendants also ignored the August 12, 2019 deadline to notify the Court of the defendants' efforts to fix the ongoing production issues, submitting nothing to the Court to verify either that they had solved the problems or that technical issues prevented them from finding a fix.

On August 19, 2019, the Court held a status conference to discuss the timing of the hearing on the plaintiff's sanctions motion. [ECF No. 287.] Because it appeared that the defendants had finally provided a usable replacement document production to the plaintiffs in the days after the motion was filed, the Court encouraged counsel for MRI to narrow the relief requested "or update the record after evaluating the document production which has finally occurred." [*Id.*] On August 30, 2019, MRI filed a document modifying the request for relief sought in its motion for sanctions. [ECF No. 291.] Although Mr. Morris acknowledged that a somewhat workable document set had at long last been produced, MRI detailed additional difficulties its LogikCull vendors had with the three separate load files defense counsel had provided. As has been typical of defense counsel's approach to the technical issues throughout this litigation, Mr. Loftus attempted to place the burden on MRI to solve the problem. [*See id.* at 4–6.] Nonetheless, MRI withdrew its request for the most serious dispositive sanctions against the defendants because it had at last received a somewhat usable set of discovery.

Now that Mr. Morris was at last able to review the long-awaited production, at least in large part, a new problem emerged. Although the defendants had long asserted that *all* responsive documents were contained in the data set, in fact, entire categories of documents were missing. In modifying the motion for sanctions' earlier request for relief, Plaintiff's counsel sought to compel additional discovery. [*Id.* at 6.] MRI asked for the following: (1) a detailed response to Mr. Morris's January 11, 2019 letter regarding discovery issues; (2) a full production of documentation, including financial records, information from Defendant Milan Batinich, and compliance with the September 26, 2018 Order regarding the indexing of the ESI production; (3) a one-sided extension of the discovery deadline so that the plaintiff could complete its discovery efforts; (4) permission to take four additional depositions as permitted in the June 24, 2019 Order; (5) an award of attorney's fees and costs incurred in connection with the discovery issues caused by the defendants and their counsel; (6) an appropriate limiting instruction and similar sanctions regarding the evidence that defendants would be allowed to offer to rebut the plaintiff's expert report regarding damages; and (7) any other appropriate relief. [*Id.* at 9–10.] Incredibly, despite the fact that the Court had encouraged MRI to modify its

request for relief, the defendants filed a motion to strike this submission from the record, which the Court denied. [ECF No. 292; Text Only Order (Sept. 4, 2019), ECF No. 295.]

The Court held a hearing on MRI's modified motion for sanctions on September 10, 2019. Mr. Moore attended the hearing on behalf of the defendants, but unfortunately Mr. Loftus did not. [ECF No. 297.] The Court made several rulings from the bench and issued a written Order on September 13, 2019. [9/13/2019 Order, ECF No. 300.] The Court declined to issue any limiting instructions regarding the defendants' counterclaim because the issue had not been sufficiently briefed. [*Id.* ¶ 3.] Although MRI's modified request sought to compel additional discovery, Mr. Moore stated that he was not prepared to discuss the adequacy of the defendants' production, their ability to produce additional information, or whether various documents had been produced. He even stated that he was unaware of the contents of the production that had been at issue for so long because he had not reviewed it. He believed only the issue of sanctions was before the Court.[4] As a result, the Court instructed MRI to provide the defendants with a letter describing the alleged deficiencies with the defendants' production; defendants' counsel were required to respond to that letter; and a follow-up phone conference was scheduled. [*Id.* at 2–3, ¶¶ 4(a)–(c).] Further, the Court required MRI to file a petition supporting its request for the attorneys' fees and costs sought as sanctions, set a response deadline for the defendants, and permitted a reply. [*Id.* at 3, ¶ 5.] The Court noted that MRI's earlier request for attorney's fees in connection with the plaintiff's motion to compel that led to the June 24, 2019 Order remained pending. [*Id.*]

In its September 27, 2019 Petition for Attorneys' Fees and Costs, MRI sought an award of over $460,000 in fees and costs "related to Defendants' recalcitrance." [ECF No. 327.] The Petition is supported by Declarations from Mr. Morris and from Sharon K. Morris, another attorney at Mr. Morris's firm. The Petition is also supported by a declaration from MRI's damages expert, Robert P. Gray. Mr. Gray's declaration addresses increased expert fees incurred as a result of receiving so few financial records from the defendants. [ECF Nos. 324–26.] In addition, Mr. Morris submitted a Declaration

---

[4] On October 3, 2019, Mr. Moore withdrew from representation of the defendants, and is apparently no longer with the Stoltmann law firm. [ECF No. 339 at 1 n.1.]

dated June 23, 2019 setting forth the fees MRI incurred in connection with the June 3, 2019 motion to compel. [ECF No. 240.] Mr. Morris's June 23, 2019 Declaration indicates a total of $48,900 in attorney's fees and an additional $1,018.93 in costs was incurred in connection with the motion to compel. However, Mr. Morris broke this total down into separate categories based on a lack of certainty regarding the particular fees the Court would consider awarding in connection with the June 3, 2019 motion to compel. [ECF No. 240 ¶¶ 21, 28–30, 33.] These two fee petitions remain pending and are addressed in this decision.

### *MRI's Second Motion for Dispositive Sanctions*

On September 23, 2019, the Court again held a telephonic discovery dispute conference. [ECF No. 320.] The Court informed the parties that future discovery disagreements should be raised through formal motion practice.[5] MRI's counsel withdrew a motion for protective order based on defense counsel's agreement not to seek certain discovery; and the Court extended the deadline for filing nondispositive motions, admonishing defense counsel of the "importance of completing their discovery obligations thoroughly and as quickly as possible." [*Id.* at 1–2.]

Through most of October 2019, the Court's attention to this litigation shifted briefly from the defendants' failure to comply with their discovery obligations to Mr. Loftus's and Wendy Brown's brazen violations of the Protective Order entered in the early days of this case. [*See* ECF Nos. 311–16, 321–23; Order (Oct. 22, 2019), ECF No 339.] Mr. Loftus and Ms. Brown violated the Protective Order by mishandling information designated confidential and attorneys'-eyes-only by non-party Peter Berg. [ECF No. 339.] Eventually, the Court required Mr. Loftus, Ms. Brown, or both, to pay $12,567 for the fees and expenses their violations caused Mr. Berg to incur. [Order (Nov. 11, 2019), ECF No. 357.]

On October 24, 2019, MRI filed another motion seeking to compel discovery, dispositive sanctions, and an order of contempt. [ECF No. 344.] This request for

---

[5] Despite this admonition, the Court has since attempted once again to resolve some discovery matters informally in a seemingly futile attempt to bring this case to a conclusion.

sanctions also remains pending and is addressed in this decision. MRI asserted that despite prior instructions from the Court to fully comply with their discovery obligations, the defendants still had not produced documents post-dating December 31, 2017; defendants had failed to provide bank records, tax returns, profit and loss statements, financial statements, revenue or expense reports, and defendants had failed to disclose communications exchanged with MRI's former customers or with Defendant A.W. Companies' employees. [ECF No. 345 at 2–3.] MRI's memorandum listed a total of 14 separate categories of documents that MRI sought to compel. [*Id.* at 5–6.]

The Court held a hearing on MRI's motion on November 14, 2019. [ECF No. 358.] The following day, the Court entered an Order granting MRI's motion to compel and taking the issues related to sanctions under advisement. [Order (Nov. 15, 2019) ("11/15/19 Order"), ECF No. 359.] In the Order compelling discovery, the Court provided specific rulings in seventeen numbered paragraphs. [11/15/19 Order at 2–6.] These included the following instructions:

- The defendants were required to conduct complete searches of A.W. Companies, Inc.'s employees' emails regarding discussions of MRI and MRI's customers and to produce responsive documents;

- The defendants were required to conduct full searches of four personal e-mail accounts used to discuss business matters between late 2017 and early 2018 and produce responsive documents;

- The defendants were required to produce communications between the defendants and any former or current MRI customer from September 1, 2017 through March 2018;

- The defendants were required to produce employee-related documentation, including employee lists, employee databases, agreements, employee reviews, employment files, salary and commission information, relevant correspondence with employees, manuals, handbooks, letters, contracts and other communications related to terms and conditions of employment;

- The defendants were required to produce financial reports, tax returns, monthly bank account statements, earning records, invoices, and any other documents reflecting AW's income and earnings;

- The defendants were required to produce communications between Al Brown or Wendy Brown sent or received from September 1, 2017, to the present regarding MRI, including text messages, and emails from any account;

- The defendants were required to produce all communications between the defendants and any former or current employee of MRI from September 1, 2017 through March 2018;

- The defendants were required to produce Wendy Brown's and Al Brown's federal and state income tax returns, including W-2 forms, any and all schedules and attachment for 2016 to the present, and any related amendments;

- The defendants were required to produce copies of records that were filed and produced in connection with a related state court case in Hennepin County District Court;

- The defendants were required to produce documents showing all compensation Milan Batinich received from A.W. Companies from 2017 to the present;

- The defendants were required to produce Mr. Batinich's communications sent or received from September 1, 2017 to the present regarding MRI;

- The defendants were required to produce Mr. Batinich's communications sent to or received from Wendy Brown, Eric Berg, Allan Brown, or any former or current customer or employee of MRI between September 1, 2017 and the present;

- The defendants were required to provide sworn affidavits to support any claim that the documents compelled were not in their possession, custody, or control;

- The parties were required to meet and confer immediately, in person or by telephone, to reach an agreement as to search terms to facilitate the location of responsive records in the defendants' electronically stored information;

- The defendants' request for reciprocal use of search terms by MRI was rejected because the defendants' opportunity to take discovery had come and gone;[6]

- The defendants were required to make the document production required by the Order by January 6, 2020; and

- The defendants were required to make the document production in a manner that complies with the Fed. R. Civ. P. and with prior Court Orders.

[11/15/19 Order ¶¶ 2–18.] Unfortunately, this detailed Order did not end the issues with the defendants' discovery responses.

### More Recent Events

On January 24, 2020, the Court held a telephonic status conference regarding additional issues with the defendants' production of documents following the November 15, 2019 Order. [ECF No. 378.] Following that call, the Court issued an Order again noting that the discovery issues being raised involved "basic discovery that should have been provided by the Defendants many months ago." [Order (Jan. 29, 2020) (1/29/20 Order) at 4, ECF No. 380.] Mr. Loftus was also "advised that the Court expects him to engage in the meet and confer process with an eye toward addressing Mr. Morris's concerns about the state of discovery, reaching compromises where they can be attained, and avoiding the snarky and irreverent tone that has pervaded his communications throughout this matter." [*Id.*] The Court found that it was inappropriate for Ms. Brown herself to have conducted searches for responsive documents without adequate supervision by Mr. Loftus. [*Id.* at 5.] Mr. Loftus was required to provide an affidavit or declaration regarding his involvement in the process of complying with the November 15, 2019 Order compelling the defendants to provide discovery, and the Court listed five items that the affidavit was required to address. [*Id.* at 6.] Ms. Brown was also required to provide a similar affidavit describing her role in search for documents. [*Id.*] The Court

---

[6] In Paragraph 16, the Court noted "[t]he unilateral discovery obligations imposed by this Order are warranted by extraordinary difficulties experienced by the plaintiffs in obtaining essential and plainly relevant information from the Defendants. Past orders of the Court, as well as forthcoming ones, have addressed this pattern of discovery misconduct, and it need not be repeated here." [11/15/19 Order ¶ 16.]

required further meeting and conferring by counsel concerning the defendants' redactions of text messages based on responsiveness objections. [*Id.* at 7–9.] And the Court found that it was inappropriate for the defendants to have withheld financial information solely because those documents are poorly organized or stored in a non-traditional manner. [*Id.* at 9–10.] The Court required the defendants to fully comply with Paragraph 6 of the November 15th Order (regarding production of financial documents) by February 11, 2020, noting that failure to do so may yet again warrant sanctions. [*Id.*]

On February 13, 2020, the Court held another telephonic discovery conference. [ECF No. 386.] Mr. Loftus had failed to comply with the Court's requirement in the January 29, 2020 Order that he provide an affidavit or declaration describing his involvement in the search for and review of the defendants' documents. [Order (Feb. 13, 2020) ("2/13/20 Order") ¶ 1, ECF No. 387.] He suggested during the phone conference that he did not do so because he believed it was unnecessary. Ms. Brown's own affidavit or declaration was also non-compliant. [*Id.* ¶ 2.] The Court was even required to issue an Order mandating that the defendants affix Bates labels to documents they provided through the Dropbox website. [*Id.* ¶ 4.] The Court scheduled a follow-up telephone conference "to discuss the progress toward eliminating the ongoing discovery problems in this case." [*Id.* ¶ 6.]

The next conference was held on February 21, 2020. [ECF No. 390.] Prior to that call, Mr. Morris communicated that, although the defendants had produced additional financial documents following the February 13th Order requiring them to do so, Mr. Loftus marked each with a Bates number preceded by the following tag: "Irrelevant Non-Responsive Misc. Invoices." [Order (Fen. 24, 2020) ("2/24/20 Order") at 1–2, ECF No. 391.] In the Order that followed the call, the Court repeated the history of the defendants' failure to provide basic financial information relevant to MRI's damages claims. [*Id.*] During the call and in the Order that followed, the Court again admonished Mr. Loftus for his shockingly unprofessional conduct. [*Id.*] The Court noted its authority to issue sanctions under 28 U.S.C. § 1927 and its repeated consideration of revoking Mr. Loftus's *pro hac vice* admission to practice before this Court. [*Id.* at 2–3.]

## II.      Discussion

Though the Court's efforts to manage this litigation toward a decision on the merits have seemed Sisyphean, unlike the Greek myth, nothing supernatural has created the difficulty in achieving that goal. Instead, nearly every attempt MRI's counsel and the Court have made to obtain necessary discovery and bring the pretrial stage of this case to a close has been thwarted by the obstinance and lack of cooperation of defendants and their counsel. For their repeated, almost perpetual failures to comply with the Court's discovery orders and in light other unjustified conduct in this case, the Court concludes that significant sanctions are warranted. However, the Court does not recommend that dispositive sanctions be entered.

Federal courts' power to sanction parties or their counsel is derived from several sources, including the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the courts' inherent power to manage the cases that appear before them. The Court first examines the propriety of sanctions against the defendants and their counsel pursuant to Federal Rule of Civil Procedure 37 and then turns to the other bases for sanctions. The Court concludes that significant monetary consequences against the defendants and their counsel are justified in this case, although the total sanction imposed is a fraction of the dollar value sought by the plaintiff.

### A.  Sanctions for Violations of Discovery Orders

Federal Rule of Civil Procedure 37 provides the district courts authority to enter a variety of sanctions for discovery misconduct. In relevant part, the Rule provides:

   (A) *For Not Obeying a Discovery Order*. If a party … fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

      (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

      (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

….

(C) *Payment of Expenses*. Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(A), (b)(2)(C).

The application of Rule 37(b) is left to the district court's discretion, including "the decision to impose a sanction, the nature of the sanction imposed, and the factual basis for the court's decision." *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1019 (8th Cir. 1999). However, "the district court's discretion narrows as the severity of the sanction or remedy it elects increases." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). To impose an "extreme sanction," such as entering default against a defendant or dismissing a party's claim, the "strong policy in favor of deciding a case on its merits" demands a showing of egregiousness that justifies depriving the litigant of its chance to be heard. *See Chrysler Corp.*, 186 F.3d at 1020–21. "To justify [such a sanction], Rule 37 requires: '(1) an order compelling discovery, (2) a willful violation of that order, and (3) prejudice to the other party.'" *Sentis Gr., Inc. v. Shell Oil Co.*, 559 F.3d 888, 899 (8th Cir. 2009) (quoting *Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir. 2000)). The court is not required to impose "the least onerous sanction available, but may exercise its discretion to choose the most appropriate sanction under the circumstances." *Chrysler Corp.*, 186 F.3d at 1022.

A finding of willfulness is not required to impose sanctions less severe than dismissal, default judgment, or striking of pleadings. *See Card Tech. Corp. v. DataCard, Inc.*, 249 F.R.D. 567, 570–71 (D. Minn. 2008) (explaining that for lesser sanctions "it is

not a requirement that the party 'willfully' refuse to obey the Court's discovery order"). In determining an appropriate sanction, a court "must balance the goals of enforcing the process of discovery and ensuring adherence to policy aims of discovery with the right of a party to have its case heard on the merits." *Id.* at 571. The court's "'discretion is bounded by the requirement of Rule 37(b)(2) that the sanction be 'just' and relate to the claim at issue;'" in the court's order. *Hairston v. Alert Safety Light Prods., Inc.*, 307 f.3d 717, 719 (8th Cir. 2002) (quoting *Avionic Co. v. General Dynamics Corp.*, 957 F.2d 555, 558 (8th Cir. 1992)).

An award of reasonable expenses, including attorney's fees, "to reimburse the opposing party for expenses caused by the failure to cooperate" is the least severe of all the sanctions authorized by Rule 37(b). *Ofoedu v. St. Francis Hosp.*, 234 F.R.D. 26, 33 (D. Conn. 2006). Such sanctions are appropriate where the offending parties' conduct required their opponents to spend their time "'hounding' [them] for discovery instead of preparing the case." *A.O.A. v. Rennert*, Case No. 4:11 CV 44 CDP, 2018 WL 1251827, at *3 (E.D. Mo. Mar. 12, 2018) (quoting *Schoffstall v. Henderson*, 223 F.3d 818, 824 (8th Cir. 2000)). A party or attorney against whom an award of expenses including attorney's fees is sought can avoid sanctions where the conduct was "substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

After careful review, the Court finds that there were several violations of its discovery Orders and concludes that monetary sanctions should be imposed to Fed. R. Civ. P. 37(a)(5) and 37(b)(2)(C). However, the Court first briefly explains why it declines to recommend terminable sanctions.

### 1. Dispositive Sanctions

The record of the defendants' and Mr. Loftus's discovery misconduct is disturbing, pervasive, and cannot be excused as mere accident. They have unreasonably delayed production of documents, conducted inadequate searches, failed to produce information required by the Court for spurious reasons, and flouted the Court's instructions on several occasions. Though this record may support the entry of a dispositive sanction pursuant to Rule 37(b)(2)(A)(vi), the Court declines to make such a recommendation at this time. As the Court has repeatedly recognized in its

communications with counsel in this case, there is a preference in federal court for resolution of cases on their merits. *Chrysler Corp.*, 186 F.3d at 1020–21. Despite the misconduct marring the record before the Court, that policy can still be served in this litigation.

### 2.   Attorney's Fees

Though the Court declines to recommend terminable sanctions under Rule 37(b)(2)(A), it concludes that the defendants and Mr. Loftus must pay MRI's reasonable expenses, including attorney's fees, caused by the failures to comply with the undersigned's discovery orders. Fed. R. Civ. P. 37(b)(2)(C). In addition, the Court concludes that MRI is entitled, under Fed. R. Civ. P. 37(a)(5), to an award of the expenses and fees incurred in bringing its June 3, 2019 and October 24, 2019 motions to compel. In determining whether to impose an attorney's fee sanction against the defendants and their counsel, the Court must consider whether the noncompliance discussed above is substantially justified and whether the circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(b)(2)(C).

A party's failure to obey a discovery order is substantially justified when it is "justified to a degree that could satisfy a reasonable person." *Smith v. Bradley Pizza, Inc.*, File No. 17-cv-02032 (ECT/KMM), 2019 WL 2448575, at *10 (D. Minn. June 12, 2019) (Order overruling plaintiff's objections to Rule 37(b)(2)(C) order denying in part motion for sanctions) (quotations omitted). This requires a party's position to have a "reasonable basis in law and fact." *Id.* (quotations omitted). The party resisting sanctions bears the burden of showing that its position was substantially justified. *Bah v. Cangemi*, 548 F.3d 680, 684 (8th Cir. 2008).

### *General Absence of Substantial Justification*

The Court finds that the defendants have not shown that their repeated failures to comply with multiple discovery orders in this case has been substantially justified. In their October 31, 2019 memorandum opposing MRI's fee request, the defendants argued that "voluminous correspondence" shows that Mr. Morris failed to meet and confer with Mr. Loftus before requesting sanctions. They also asserted that the motion was moot to

the extent it sought to compel production of additional documents. [ECF No. 349 at 1–2; ECF No. 349, Ex. A.] These arguments do not provide substantial justification for the defendants' and Mr. Loftus's failure to comply with the Court's discovery orders discussed below, and they are frankly belied by the record.

First, the communications between Mr. Loftus and Mr. Morris referenced in the defendants' response took place between October 22, 2019 and October 29, 2019. Though those communications show that Mr. Loftus finally became somewhat more serious about addressing the technical issues Mr. Morris raised months earlier, such belated engagement does not begin to explain why the defendants and their counsel failed to comply with discovery orders that had been issued long before. Second, events after October 29, 2019, including the Court's November 15, 2019 Order granting MRI's motion to compel and other subsequent discovery orders demonstrate that the production that the defendants finally made did nothing to moot the substantive issues that Mr. Morris identified. Indeed, the defendants' production was woefully inadequate, prompting the Court to note several times that it was incredible to be addressing the defendants' failure to provide basic information to MRI so long after the discovery period began.

The defendants' response could be read to imply that neither they nor their counsel bear any responsibility for any of the technical issues that plagued their document production for several months.[7] To the extent the defendants argue that this substantially justifies non-compliance with the Court's Orders requiring the defendants and their counsel to take steps to remedy the technical problem, they are mistaken. Specifically, in the July 31, 2019 Order, the Court unambiguously placed the responsibility for resolving the technical issues with the defendants' ESI production on the defendants and their counsel. That obligation was not only not fulfilled in a timely manner, but it was not even taken seriously until weeks later. The Court acknowledges that civil litigators are not expected to be computer or data-storage experts. But, by the terms of the July 31st Order, the Court did not require the defendants and their counsel to do something unreasonable

---

[7] *See* ECF No. 349 at 5 ("The technical issues were eventually all resolved and unfortunately the parties have yet to discuss any substantive concerns.").

or personally solve hyper-technical problems. It required them to facilitate direct communication between the parties' e-discovery experts and verify that the necessary steps were taken to resolve the issues or that technical issues prevented a resolution of the issues. Instead of fulfilling those very reasonable obligations, defense counsel shifted the burden to Mr. Morris and neither verified that technical issues were resolved, nor informed the Court that the issue could not be fixed. This again delayed the plaintiff's access to the defendants' documents and prevented MRI's counsel from learning just how unreasonably narrow that production was, further causing MRI to incur unnecessary expenses and attorney's fees in the litigation.

The defendants also cite *Ramirez-Cruz v. Chipotle* in support of their suggestion that no sanctions should be issued at all. Case No. 15-cv-4514-ADM-KMM, 2017 WL 8947191 (D. Minn. May 11, 2017). This Court is particularly familiar with the *Ramirez-Cruz* decision, having authored the report and recommendation on which the defendants rely. This case is not comparable. There, the Court found that counsel for Chipotle violated Rule 34 by failing to identify that it was withholding a specific document from Ms. Ramirez-Cruz while telling her counsel that the document did not exist. Essentially, because Chipotle believed that its timekeeping software did not provide an accurate record of when Ms. Ramirez-Cruz was or was not scheduled to work during the relevant timeframe, defense counsel determined that no records existed. But they did not explain this in their written discovery responses and only provided the previously undisclosed documentation after the issue came to a head during a deposition. Though defense counsel's conduct was unreasonable in interpreting the records that they did not believe to be reliable as functionally nonexistent, the Court found that no attorney's fees should be imposed. It reached this conclusion because plaintiff's counsel engaged in a quixotic effort to investigate unrelated cases without first conferring with defense counsel about the undisclosed records, refused to accept Chipotle's offer to remedy the situation at its own cost, brought unsupported motions for spoliation sanctions, and attempted to leverage a sanctions motion against counsel to obtain a more favorable settlement offer. *See id.*, 2017 WL 8947191, at *15-16 (describing plaintiff's improper handling of the defendant's discovery violations).

Here, although Mr. Morris has been unrelenting in his efforts to obtain broad discovery from the defendants, there is no indication that he, or anyone else at his firm, have engaged in disproportionate or unreasonable acts comparable to plaintiff's counsel in *Ramirez-Cruz*. Indeed, Mr. Morris's actions in this case have been necessary to force the defendants and Mr. Loftus to participate meaningfully in the discovery process. Mr. Morris has had to repeatedly bring discovery disputes to the Court's attention to obtain even the most basic discovery for a case of this nature. Despite those efforts, there is still a serious question even today whether the defendants have conducted reasonable searches of their electronically stored information for documents responsive to MRI's discovery requests. No comparison of this case to *Ramirez-Cruz* justifies the defendants' or their attorneys' failure to comply with discovery orders.

### *December 19, 2018 – June 24, 2019*

Following the Court's December 19, 2018 Order regarding the format of the defendants' production, the defendants and Mr. Pins failed to produce documents in compliance with that Order. In particular, Mr. Pins acknowledged that the defendants' original ESI production was sent with a corrupt file, and he promised to re-issue the production. By March 13, 2019, it appeared that Mr. Pins and Mr. Morris were on their way to resolving the problem of defendants' non-compliance, but then Mr. Pins withdrew from representation; it later became clear that the issues had not been resolved.

As noted above, in response to MRI's June 3, 2019 motion to compel, the defendants argued that there was no court order specifying the form of production.[8] [ECF No. 228 at 2.] However, "[o]ral proceedings compelling discovery that 'unequivocally give a litigant notice' of the discovery required are a sufficient basis for Rule 37(b)(2) sanctions." *Avionic Co. v. Gen. Dynamics Corp.*, 957 F.2d 555, 558 (8th Cir. 1992) (citing *Henry v. Sneiders*, 490 F.2d 315, 318 (9th Cir. 1991)). Here, the Court acknowledges that terms of the December 19, 2018 Order specifying the form of production for the defendants are not clearly reflected a written order or in the Court's

---

[8] The Court notes that Mr. Morris's June 3, 2019 declaration accurately set forth the substance of the December 19, 2018 Order. [ECF No. 228 at 2; 6/3/2019 Morris Decl. ¶ 26.] The defendants provided no evidence to contradict Mr. Morris's affidavit.

minute entry. [ECF No. 173.] However, Mr. Pins certainly had notice of the December 2018 Order regarding the form of defendants' production and must be presumed to have communicated those obligations to his clients.

On the other hand, the Court notes that Mr. Pins withdrew from representation a few months after that Order was entered and during a period when it appeared the technical issues with the production were being addressed. Mr. Loftus was not counsel of record at the time of the December 19, 2018 phone conference, and so he did not participate in the call. Moreover, given the difficulties Mr. Loftus admitted to experiencing in reviewing the initial document discovery his own clients provided to MRI, the record suggests the transition of the responsibility for the litigation from Mr. Pins to Mr. Loftus was less than ideal and contributed to the discovery problems at the outset of Mr. Loftus's involvement in this case.

Ultimately, the Court need not decide whether these facts show substantial justification for the initial period of non-compliance with the December 19, 2018 Order regarding the form of defendants' production. At least until the Court's June 24, 2019 Order, the Court concludes that the unique circumstances of this case would make an award of expenses caused by the failure to comply unjust. Fed. R. Civ. P. 37(b)(2)(C). The Court appreciates MRI's concerns that it incurred significant expense during this period. However, prior to the Court's June 24, 2010 Order, the absence of a clear reflection of the December 19, 2018 Order in the record and the messy, but largely unexplained, transition of the case from Mr. Pins to Mr. Loftus make an expenses and attorney's fees sanction pursuant to Rule 37(b)(2)(C) inappropriate. *Cf. Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, Civil No. 09-1091 (JNE/JSM), 2013 WL 3833065, at *4 (D. Minn. July 23, 2013) (declining to hold a party's subsequent counsel responsible for client's disobedience of discovery orders before subsequent counsel entered the litigation). For these reasons, the Court declines to award MRI the expenses and fees incurred between December 2018 and June 24, 2019 that could be attributed to the failure of the defendants to produce ESI in compliance with the December 18, 2018 Order.

### June 24, 2019 Order

Whatever latitude the Court affords the defendants' discovery conduct in the Spring of 2019, there can be no dispute that such patience was at its end by the summer. When the Court issued its June 24, 2019 Order granting MRI's first motion to compel, the Court instructed MRI to submit an application for the expenses, including attorney's fees, incurred in making the motion pursuant to Rule 37(a)(5). This Order specifically stated that the Court was not going to award the excess expenses and fees that MRI believed it incurred due to six-month discovery morass that preceded the Order, but that fees for the motion to compel were recoverable by MRI. MRI seeks to recover $48,900 in attorney's fees and an additional $1,018.93 in costs for this motion. [ECF No. 240.] The Court concludes that an award of expenses, including attorney's fees, that MRI incurred in making the motion to compel is warranted, but concludes that the amount requested should be reduced substantially.

First the Court addresses the defendants' opposition to the award of any fees incurred in the June motion and finds their arguments to be unpersuasive. The defendants assert that MRI's motion raised "vague, extremely technical, complaints about the form of documents produced." [ECF No. 248 at 2.] The Court disagrees. Prior to filing the motion, Mr. Morris informed the defendants and Mr. Loftus that the format of production was non-compliant with the Court's December 19th Order because, among other things, the documents were not indexed or otherwise linked to the discovery requests. Mr. Morris also informed the defense that their ESI production was almost entirely unusable due to documents failing to render, containing unexplained blank spaces and unreadable text, bearing inaccurate and duplicate Bates labeling, among other issues. Mr. Loftus acknowledged the existence of such problems during email exchanges as early as May 2, 2019. [ECF No. 225-4 at 1.] Mr. Morris was painstakingly specific about what the technical issues were and made numerous attempts to meet and confer with defense counsel prior to filing the motion. [ECF Nos. 225-6, 225-7, 225-8, 225-9.] However, defendants and their counsel did not work promptly to solve the issues, ultimately requiring MRI to bring its motion to compel. Indeed, even in its response to the motion, defendants remained belligerent, arguing to the Court that the production was

fine. These facts do not support a finding of substantial justification for the defendants'
actions.

Additionally, the Court disagrees with the defendants' claim that their financial
condition precludes an award of fees. In a declaration submitted in opposition to MRI's
request for fees in connection with the June 3, 2019 motion to compel, Ms. Brown asserts
that expenses and attorney's fees should not be awarded because the expense of this
litigation and her own monthly income make such an award unjust. [ECF No. 248-2.]
Though the Court recognizes that a party's financial considerations may make an award
of expenses unjust in some cases, the Court finds that Ms. Brown's declaration fails to
provide a sufficient basis for declining to issue such an award in this case. Ms. Brown is
not the only defendant in this action, and hers is not the only conduct that is relevant to
the Court's Orders applying to all defendants. The defendants have cited no evidence that
A.W. Companies or any other defendant lacks the means to pay a reasonable fee-shifting
award.

Although the Court finds that requiring the defendants and Mr. Loftus to
compensate MRI for the fees and costs associated with its June 3rd motion to compel is
appropriate, the Court concludes that MRI's request for nearly $50,000 is excessive.
Admittedly, Mr. Morris arrived at the $50,000 figure based on a lack of certainty
regarding the scope of the Court's Order regarding the type of fees that the Court
considered compensable. However, having carefully reviewed the time records and the
hourly rates claimed in connection with MRI's June 3, 2019 motion to compel, the Court
concludes that MRI is entitled to a reasonable award of attorney's fees in the amount of
$15,000 for: researching, preparing, and drafting the motion to compel and supporting
documents; attending the hearing and arguing the issues; and submitting MRI's fee
application. The Court specifically finds that the hourly rate Mr. Morris has claimed
($500 per hour) is reasonable given his experience, the nature of this litigation, and
prevailing market rates. In addition, the Court's June 24, 2019 Order was intended to
limit an award of expenses and fees to those reasonably incurred in researching,
preparing, and drafting the motion to compel and the fee application. Further, the Court
concludes that the $1,018.93 in expenses incurred in connection with the motion to
compel is reasonable. Accordingly, the Court orders the defendants and their counsel to

pay $16,018.93 in the reasonable expenses, including attorney's fees, MRI incurred in making its June 3rd motion to compel.

### *MRI's September 27, 2019 Fee Petition*

MRI's broader request for attorney's fees and expenses caused by the problems with the defendants' production of ESI and other discovery conduct is embodied in the September 27, 2019 fee petition. There, MRI requests over $460,000 in attorney's fees, discovery-related costs, and expert expenses. [ECF No. 327.] The Court notes that a substantial portion of the attorney's fees sought by MRI concern actions taken by the defendants and their counsel during the period between December 19, 2018 and June 24, 2019, and the Court has already declined to award fees and expenses from this timeframe. [ECF No. 326 at 3–12 (chart of time entries dated 9/25/2018 through 6/11/2019).] Entries corresponding to this period total more than $171,000 in attorney's fees and paralegal time. Although very sympathetic to MRI's frustration with the defendants' conduct that necessitated these expensive efforts, the Court does not Order the defendants to pay these fees and expenses pursuant to Rule 37(b).

However, the Court finds that the defendants and Mr. Loftus caused MRI to incur fees unnecessarily by continuing to fail to cooperate in providing discovery and disobeying several discovery orders even after the June 24th Order shifting fees. On July 31, 2019, the Court issued an Order explaining that the parties' letters regarding the persistent technical issues did not reassure the Court that the defendants had complied with the June 24, 2019 Order. [7/31/2019 Order at 2.] Accordingly, on July 31, 2019, "the defendants [were] required to ensure that the third-party discovery vendors for both sides have direct communication concerning the ongoing technological issues with the defendants' document production." [*Id.*] The defendants were also required, no later than August 12, 2019, to verify that they fully complied with the Court's June 24, 2019 Order regarding their document production. [*Id.*] The defendants neither verified full compliance by the August 12th deadline, nor indicated that they were unable to truthfully verify that they had fully complied with the June 24, 2019 Order. As discussed above, there is no basis in the record to justify or excuse the defendants' non-compliance with the June 24, 2019 or July 31, 2019 Orders. Instead, the record demonstrates a troubling

continuation of discovery misconduct and flouting of the Court's efforts to get this litigation back on track.

The fees in MRI's September 27, 2019 time spent between June 24 and September 26, 2019, total more than $65,000. [ECF No. 32.] Having reviewed these entries and the overall record carefully, the Court finds that the hourly rates at issue for Mr. Morris ($500/hour), Ms. Morris ($500/hour), paralegals ($100/hour), and law clerks ($150/hour) are reasonable, a fact which has not been disputed by the defendants. However, the time entries include some tasks the Court concludes are non-compensable under Rule 37(b)(2), including: certain communications concerning depositions; review of some correspondence not clearly related to this Court's discovery orders; ordinary communication with opposing counsel regarding the scope of discovery; and work in connection with the defendants' motion to dismiss.[9] Pursuant to Rule 37(b)(2)(C), MRI's fee petition [ECF No. 327] is granted to the extent that the defendants and their counsel should be required to pay a $50,000 sanction for the attorney's fees caused by their failure to comply with the Court's discovery Orders dated June 24, 2019, and July 31, 2019. *Fox v. Vice*, 563 U.S. 826, 838 (2011) ("The essential goal in shifting fees … is to do rough justice, not to achieve auditing perfection.").

MRI also seeks over $80,000 in discovery-related expenses it has incurred from its e-discovery vendor, LogikCull, and reimbursement of $22,000 in expert-related costs associated with the work of Robert P. Gray, its damages expert. In addition, MRI seeks to recover $74,500 in additional expert-related costs that it anticipates it will incur in this case. [ECF No. 327.] Though the Court appreciates that the costs associated with MRI's e-discovery vendor and its damages expert have likely been increased as a result of the defendants' delays in producing documents and failures to provide usable information earlier in the litigation, it is not clear from the plaintiffs' showing that these expenses are

---

[9] Such tasks were part of the same time entries that involved other matters that were connected to the defendants' discovery order violations, so it was not inappropriate for plaintiff's counsel to submit them as part of their fee petition. Nevertheless, the Court clarifies here that further reduction of the appropriate sanction is necessary because the Court finds such matters are not a part of the sanctionable conduct in this case.

caused by violations of the Court's discovery orders. Accordingly, the Court declines to order the defendants or their counsel to pay such expenses based on the record before it.

### *October 24, 2019 Motion for Sanctions*

MRI's October 24, 2019 motion seeks several types of relief. First, MRI asked for dispositive sanctions, which the Court declines to recommend for the reasons stated above. MRI also asked the Court to hold defendants and their counsel in contempt of court. Though the Court has considered making a finding of contempt on more than one occasion in this case, it also declines to recommend any party or counsel be held in contempt at this time.

The Court does, however, grant monetary sanctions as requested in MRI's October 24th motion, seeking an award of the fees and expenses incurred in making its motion. MRI prevailed on that motion to compel, obtaining a broad Order on November 15th, requiring the defendants to conduct searches for and otherwise produce many categories of documents that should have been provided much earlier in the case. As a result, the Court concludes that MRI is entitled to the reasonable fees and expenses incurred in bringing the October 24, 2019 motion pursuant to Rule 37(a)(5).

MRI has not submitted a fee petition concerning the October 24, 2019 motion to compel and for sanctions. Although "[t]he determination of fees should not result in a second major litigation," *Fox*, 563 U.S. at 838, that ship has long since sailed. Accordingly, within seven days of this decision, MRI shall submit an application for the reasonable expenses and attorney's fees incurred in bringing the October 24, 2019 motion.

### B.    Section 1927 Sanctions

Congress has statutorily provided courts with the power to issue sanctions against attorneys who multiply the proceedings.

> Any attorney or other person admitted to conduct cases in any court of the
> United States … who so multiplies the proceedings in any case
> unreasonably and vexatiously may be required by the court to satisfy

personally the excess costs, expenses, and attorneys' fees reasonably
incurred because of such conduct.

28 U.S.C. § 1927. Sanctions under this provision are designed to "'limit[] the abuse of
court processes.'" *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 749 (8th Cir. 2018). "'The
decision as to whether to award attorneys' fees and costs under Section 1927 is within
this Court's discretion.'" *Bernstein v. Extendicare Health Servs., Inc.*, 653 F. Supp. 2d
949, 954 (D. Minn. 2009) (quoting *Gundacker v. Unisys Corp.*, 151 F.3d 842, 849 (8th
Cir. 1998)).

Sanctions are warranted under § 1927 "when, viewed objectively, an attorney's
conduct manifests either intentional or reckless disregard of the attorney's duties to the
court." *Stenilage v. Mayo Clinic Rochester*, 235 F.R.D. 668, 672-73 (D. Minn. 2006)
(internal quotation marks omitted). "'Behavior is 'vexatious' when it is harassing or
annoying, regardless of whether it is intended to be so. Thus, if an attorney's conduct in
multiplying proceedings is unreasonable and harassing or annoying, sanctions may be
imposed under section 1927.'" *Sherman v. Sunsong Am., Inc.*, No. 804-cv-300, 2007 WL
1310057, at*1 (D. Neb. Mar. 27, 2007) (quoting *Cruz v. Savage*, 896 F.2d 626, 632 (1st
Cir. 1990)). Sanctions are not appropriate under § 1927 where the issues raised "are
subject to reasonable dispute." *Misischia v. St. John's Mercy Health Sys.*, 457 F.3d 800,
806 (8th Cir. 2006).

### *Mr. Loftus's Vexatious Conduct*

The Court finds that Mr. Loftus has engaged in behavior that has vexatiously
multiplied these proceedings and caused MRI to incur attorney's fees unnecessarily.
Indeed, it is difficult to come up with a word that better describes Mr. Loftus's handling
of this case. The list of Mr. Loftus's conduct warranting sanctions in this matter is long,
but a discussion of the most egregious examples follows.[10]

---

[10] This list does not include the substantial ESI-related conduct detailed above, but this is
not intended to suggest that Mr. Loftus himself bears no responsibility for delaying the
production of usable ESI to the plaintiff. Instead, because the Court has already
determined that Mr. Loftus and his clients are responsible for that unnecessary expense

First, on April 26, 2019, before even reviewing the extent of the information that MRI had provided in response to the defendants' discovery requests, Mr. Loftus filed a sweeping motion to compel. When the Court instructed Mr. Loftus to meet and confer with opposing counsel to attempt to narrow the requests for relief in the motion to compel, he simply refused. His subsequent meet and confer statement misrepresented the substance of his communications with opposing counsel and the Court has already found that he failed to meet and confer with Mr. Morris in good faith. [ECF No. 203.]

Second, on June 14, 2019, Mr. Loftus filed another motion to compel on behalf of the defendants despite having failed to review the information that MRI had produced. [ECF No. 231; ECF No. 235.] The meet-and-confer statement accompanying the motion accused Mr. Morris of refusing to meet and confer. However, defense counsel had failed to timely raise issues with MRI's discovery responses during the fourteen-day timeline that had been previously established by the Court. Nor did defense counsel ask the Court for additional time to complete the meet-and-confer process. [ECF No. 233; ECF No. 235.] Mr. Loftus withdrew the motion to compel four days later during a June 18, 2019 hearing on MRI's motion to compel, only after MRI had objected to the defendants' meet-and-confer statement. [ECF No. 246.] Though Mr. Loftus did not himself sign the meet-and-confer statement, he was the direct supervisor of the associate who did, and he failed to take prompt remedial action to correct its misrepresentations regarding Mr. Morris's conduct.[11]

Third, on September 3, 2019, Mr. Loftus filed a motion to strike MRI's modified request for sanctions after MRI had been specifically invited by the court to narrow the request for sanctions in a previously filed motion. [ECF No. 292.] MRI was forced to respond to this wholly unnecessary and unreasonable submission, incurring additional

---

under Rule 37(b)(2), the Court does not recommend additional sanctions for that conduct under its inherent power or 28 U.S.C. § 1927.

[11] *See* D. Minn. LR 83.6(a) (adopting the Minnesota Rules of Professional Conduct); Minn. R. Prof. Conduct 5.1(c) ("A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if … the lawyer … has direct supervisory authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.").

attorney's fees. It is difficult to fathom what purpose Mr. Loftus thought such a motion would serve other than to annoy the Court, harass plaintiff's counsel, or to force MRI to incur further expense.

Fourth, Mr. Loftus failed to comply with the January 29, 2020 Order's requirement that he provide an affidavit or declaration describing his involvement in the search for and review of the defendants' documents pursuant to the November 15, 2019 Order. [2/13/20 Order ¶ 1.] His only explanation during the February 13, 2020 phone conference for this failure was that he unilaterally determined that preparing the affidavit or declaration was unnecessary. This too was an intentional or reckless disregard of Mr. Loftus's duties as an officer of the Court and caused MRI to incur additional attorney's fees preparing for and participating in yet another phone conference on February 13, 2020.

Fifth, the Court finds that Mr. Loftus engaged in vexatious conduct that multiplied these proceedings when he unreasonably added a tag line to several documents produced by his clients. Specifically, his Bates labeling included the phrase "Irrelevant Non-Responsive Misc. Invoices" before Bates numbers attached to the documents. This act followed a lengthy battle by MRI to gain access to the defendants' financial records and the defendants attempts, at every turn, to prevent this basic discovery. In the November 15, 2019 Order, the Court, in no uncertain terms, had found that discovery of such documentation was appropriate. [11/15/19 Order ¶ 6.] Mr. Loftus explained that he added this tag line to identify the financial documents and keep them separate from other documents. The Court found this explanation was disingenuous and "an astonishing demonstration of arrogant petulance … to express his frustration at having to produce clearly relevant documents and comply with discovery obligations." [2/24/20 Order at 2.]

The Court concludes that Mr. Loftus should be sanctioned under § 1927 for these acts. The impropriety of this conduct is not subject to reasonable dispute and Mr. Loftus's behavior has veered far afield from zealous advocacy on behalf of clients. He has demonstrated a persistent disrespect for the undersigned's authority over discovery matters and intentionally multiplied these proceedings for no legitimate purpose. An assessment of attorney's fees against Mr. Loftus personally is an appropriate sanction that

will, hopefully, discourage further conduct of a similar character in this proceeding. Therefore, the Court will recommend that Mr. Loftus be sanctioned pursuant to 28 U.S.C. § 1927

There is no petition before the Court for the specific attorney's fees attributable to the vexatious conduct the undersigned has determined is sanctionable under § 1927. Accordingly, the Court requires MRI's counsel to submit a fee petition within seven days of this decision for the fees MRI has reasonably incurred as a result of the vexatious conduct identified above. MRI shall also include in its application the fees reasonably incurred in preparing and filing that fee petition. Mr. Loftus shall have seven days to respond to that fee petition. Upon receipt of the fee petition and Mr. Loftus's response, the Court will issue a supplemental report and recommendation setting forth the amount of fees it determines represent an appropriate sanction.

Finally, the Court previously required that local counsel for the defendants, Justin A. Bruntjen, to "become engaged in the litigation and to ensure compliance with Court orders and the Local Rules." [Order (Oct. 22, 2019) at 13 ¶ 4, ECF No. 339.] The Court also required Mr. Bruntjen "to review and sign every pleading that is filed with the Court by the defendants." [*Id.*] As noted, the Court has also previously considered revoking the *pro hac vice* admission that allows Mr. Loftus to practice before this Court. [*Id.* at 11-12.] However, the Court concludes that doing so would only further delay resolution of this case and again declines taking such action here. Instead, the Court concludes that it is necessary for Mr. Bruntjen to become even more involved in the litigation to ensure that similar issues to those discussed here do not continue to plague the proceedings. The Court hopes that his active participation in this litigation might curb future misconduct by Mr. Loftus. Therefore, in addition to the requirement that he review and sign every written submission filed on behalf of the defendants in this case, Mr. Bruntjen must be copied on all correspondence between the parties' counsel, and he must attend all hearings, telephonic or otherwise.

## C.    Inherent Power: Nonmonetary Sanctions

Federal courts have the inherent power to "'fashion an appropriate sanction for conduct which abuses the judicial process.'" *Aviva Sports, Inc. v. Fingerhut Direct Mktg.,*

*Inc.*, 2013 WL 449775, at *17 (D. Minn. Jan. 8, 2013) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)). This includes the power to enter a sanction with dispositive effect, including the entry of default judgment. *Chrysler Corp.*, 186 F.3d at 1022. In exercising their inherent power, courts may impose sanctions ranging from the most severe—dismissal—to less severe "assessment[s] of attorney's fees." *Chambers*, 501 U.S. at 44–45. Other available sanctions include exclusion of evidence or testimony and imposition of an adverse inference instruction to the jury. *See Dillon v. Nissan Motor Co.*, 986 F.2d 263, 266–69 (8th Cir. 1993); *Stevenson v. Union P. R.R. Co.*, 354 F.3d 739, 746–50 (8th Cir. 2004). Courts are required to exercise their inherent powers "with restraint and discretion." *Chambers*, 501 U.S. at 44. Sanctions imposed pursuant to the court's inherent power are permitted where "a litigant act[ed] in 'bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Aviva Sports*, 2013 WL 449775, at *17 (quoting *Chambers*, 501 U.S. at 44–45).

The Court finds that the defendants' and their counsel's approach to providing discovery in this case has frequently been unreasonable and has not been conducted in good faith. They have unreasonably interpreted the proper scope of discovery, delayed production of plainly relevant documents, repeatedly failed to engage in meaningful discussions with MRI regarding its discovery requests, and disobeyed several court orders.

MRI had to go to extraordinary lengths to obtain even the most basic discovery in this case. Though the defendants provided ESI in response to MRI's initial discovery requests, they did so based on an indefensibly narrow view of the scope of relevant discovery. And although discovery commenced shortly after the entry of the original Scheduling Order in January 2018, the fact the defendants unilaterally took such a narrow view did not even come to light until August 2019, when the massive technical problems with the defendants' document production were at last overcome and its contents could be examined. That delay was overwhelmingly caused by the defendants' failure to address MRI's concerns about the state of the defendants' ESI production and MRI's counsel was forced to hound the defendants and seek the Court's intervention on numerous occasions. Though MRI had specifically identified the omissions in the defendants' discovery prior to a hearing on September 10, 2019, the defendants were

completely and inexplicably unprepared to discuss the specifics of any discovery-related matters during that hearing.

Even after the Court issued a broad Order on November 15, 2019 compelling the defendants to provide basic discovery that should have been produced months before, the defendants dragged their feet, chose not to produce financial records because they were poorly organized, and conducted searches of their ESI for responsive information without adequate oversight or supervision from their counsel. Because the defendants' production remains inadequate to this day, MRI was forced to bring discovery issues to the Court's attention on several occasions after that Order was issued.

In short, the history of this litigation reveals that the defendants have abused the judicial process by disobeying court orders, failing to comply with discovery obligations, and delaying production of relevant information. Even today, neither MRI nor the Court has any confidence that the defendants have provided all or even most of the discovery to which MRI is entitled. Because the defendants have not participated in discovery in good faith, the undersigned recommends that the District Court enter an Order pursuant to its inherent power sanctioning the defendants for such vexatious discovery behavior. Specifically, the Court recommends that the jury be instructed that the defendants failed to cooperate in discovery during this litigation, a fact from which they may infer that the defendants attempted to conceal information that would not have been helpful to their position.

## III.    Time for Objections

Because this decision both: (1) orders the payment of certain sanctions and recommends nonmonetary sanctions; and (2) determines that two fee petitions must be submitted for the Court to issue additional orders and recommendations concerning monetary sanctions, the timing of objections to the Court's conclusions will be adjusted. *See* D. Minn. LR 72.2(a)(1), (b)(1) (providing that the Court may set a different deadline or a party to file and serve objections to a nondispositive order or a recommended disposition of a dispositive matter). After MRI submits the additional fee petitions discussed herein and the defendants and Mr. Loftus have filed their responses, the Court will promptly issue a supplemental Order and Report and Recommendation to address

those matters. Accordingly, any objection to this decision, the supplemental decision, or both shall be filed within 14 days after the Court files its supplemental Order and Report and Recommendation, rather than 14 days from today's date.

## IV.    Order

Based on the foregoing, **IT IS HEREBY ORDERED THAT:**

1. Plaintiff MRI's fee application **[ECF No. 240]** is **GRANTED IN PART** to the extent that the defendants and their counsel are required, pursuant to Fed. R. Civ. P. 37(a)(5), to pay **$16,018.93** in the reasonable expenses, including attorney's fees, that MRI incurred in making its June 3, 2019 motion to compel.

2. Plaintiff MRI's fee petition **[ECF No. 327]** is **GRANTED IN PART** to the extent that the defendants and their counsel are required, pursuant to Fed. R. Civ. P. 37(b)(2)(C), to pay **$50,000** in the reasonable attorney's fees caused by their failures to comply with the Court's discovery orders dated June 24, 2019 and July 31, 2019.

3. Plaintiff MRI's October 24, 2019 motion **[ECF No. 344]** is **GRANTED IN PART** to the extent it seeks an award of the reasonable expenses, including attorney's fees, incurred in making the motion. Within seven days of this decision, MRI shall submit a petition for its reasonable expenses, including attorney's fees, incurred in making the October 24, 2019 motion. Within seven days after such a petition is filed, the defendants and Mr. Loftus may file a response to that fee petition. Unless the parties are notified otherwise, the Court will issue a supplemental Order regarding the reasonable expenses, including attorney's fees, that will be imposed pursuant to Rule 37(a)(5) without further briefing or oral argument.

4. Within seven days of this decision, plaintiff MRI shall submit a petition for the reasonable attorney's fees caused by Mr. Loftus's vexatious conduct discussed in Part II.B.1 of this Order and Report and Recommendation. Within seven days after such a petition is filed, Mr. Loftus may file a response to that fee petition. The Court will issue a supplemental Report and Recommendation regarding the

appropriate attorney's-fees sanction it recommends be imposed pursuant to 28 U.S.C. § 1927.

5. Local counsel for the defendants, Justin A. Bruntjen must be copied on all correspondence between the parties' counsel, and he must attend all hearings, telephonic or otherwise.

## V.   Recommendation

Based on the discussion above, **IT IS HEREBY RECOMMENDED THAT:**

1. MRI's October 24, 2019 motion **[ECF No. 344]** should be **DENIED IN PART** to the extent it seeks dispositive sanctions.

2. The District Court should issue an Order, pursuant to 28 U.S.C. § 1927 sanctioning counsel for the defendants, Alexander Loftus. Mr. Loftus should be required to pay MRI's reasonable attorney's fees caused by the conduct discussed in Part II.B.1 of this Order and Report and Recommendation. The Court will issue a supplemental Report and Recommendation regarding the amount of such a sanction upon receipt of the fee petition and response required by Paragraph 4 of the Order in Part IV above.

3. The District Court should issue an Order, pursuant to its inherent powers, sanctioning the defendants as follows: the jury should be instructed that the defendants failed to cooperate in discovery during this litigation, a fact from which they may infer that the defendants attempted to conceal information that would not have been helpful to their position.

Date: April 20, 2020

 *s/Katherine Menendez*
Katherine Menendez
United States Magistrate Judge