UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Management Registry, Inc., | Case No. 0:17-cv-5009-JRT-KMM |
| Plaintiff, | |
| v. | **DECLARATION OF WENDY L. BROWN** |
| A.W. Companies, Inc., et al., | |
| Defendants. | |

Pursuant to 28 U.S.C. 146, I, Wendy L. Brown, declare as follows:

1. I am a defendant in the above-entitled action.

2. I have submitted a prior declaration on my ability to pay; however, the question was raised as to all of the defendants. I am submitting this declaration on behalf of myself and A.W. Companies.

3. My husband and my combined income for 2018 was $86,346 and 2019 was $28,342.

4. Prior to owning A.W. Companies, I had not worked since 2013. Beginning in 2011, I was the varsity cheerleading coach for Chanhassen Minnesota High School. I made approximately $20,000 a year that I donated back to the school.

5. Since owning A.W. Companies, I have taken a salary of $12 to $16.10 per hour. I moved my salary to $16.10/hour to be allowed a salaried position. I have recently tried to pay myself back $10,000 a month from the original investment as my husband and I have been living off our credit cards and home equity line and those have been maxed.

6. I have a 401(k) that is valued at approximately $35,000. I have not contributed to this fund since the sale of AllStaff Recruiting Inc. My husband has listed our home and car in his declaration.

7. A.W. Companies has one vehicle with a loan of $50,797 and a current value of $60,227. The only other assets are in computers that are used by the entire workforce.

8. We have paid a total of almost $900,000 in attorneys' fees in litigation with MRI and owe prior counsel over $240,000.

9. Our debts for attorneys' fees include $140,000 to Sonia Miller-Van Ort/Sapientia. and $100,000 to Rick Pins/Stinson Leonard Street. Both of these law firms have allowed us to defer payment until we have the cash available.

10. Because the legal costs were exorbitant up to the point of our first answers to written discovery, I requested Mr. Pins to prepare an estimate for expected legal costs. In March of 2019, he estimated over $600,000. None of us have this kind of money and had no other option but to seek out an attorney that would take on this case at a discounted rate.

11. Our current counsel represents us at a discounted flat fee in all of our litigation related to MRI that has decreased in order to accommodate local counsel. Fees paid to Mr. Loftus' firms now total less than one quarter of what we paid all predecessor counsel in this matter alone and we are unable to locate other counsel who will represent us in all these matters at this low rate.

12.     A.W. Companies is also paying the cost of our third party IT vendor, Blue Star, used in this discovery. We have recently been able to move our IT to Nile and Johnson and now back-owe $18,000 to Blue Star. Blue Star was also allowing us to make payments as we were able to. A.W. Companies paid over $160,000 to IT vendors for this litigation.

13.     Every additional round of production sought by MRI costs us thousands more in IT vendor fees. Our only reason to objecting to any production in this matter is to avoid these fees. We have waived numerous privileges and valid objections in favor of being an open book

14.     Fortunately, A. W. Companies received a PPP loan. Without this loan and the flexibility of these vendors this litigation could have put us out of business. We have borrowed money from family and taken as little money as possible to stay in business. The last thing we have ever done was try and delay this litigation. We are looking forward to our day in court.

15.     I would like to be on the record stating that at no time did I, or any of the defendants, delay or withhold any evidence. We turned over everything to third parties. We even went above and beyond to move the discovery along by not arguing relevance. I even provided personal text messages that had absolutely nothing to do with this litigation dating back years to prove that I was not withholding evidence. I additionally even provided attorney-client privileged documents to again prove what I was saying was true and correct.

16. I believe it is also important to state again that I personally witnessed Mr. Morris refuse to meet and confer with my attorney Ryan Moore. This was also done in front of John Ella and a court reporter. I could additionally provide a list of actions I believe are completely unethical to the legal profession and one day will.

17. What has happened to myself and my family throughout this litigation is a travesty. This is a miscarriage of justice, to say the least. I have been 100 percent transparent and have gone above and beyond to speak on behalf of myself and the other defendants.

18. I swear and affirm this production is complete and all responsive documents have been produced.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 10th day of June, 2020 in Cook County, Illinois.

                               s/ *Wendy L. Brown*
                               Wendy L. Brown