## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Management Registry, Inc.

        Plaintiff,

v.

A.W. Companies, Inc., et al.

        Defendants.

Case No. 0:17-cv-5009-JRT-KMM

**REPORT AND
RECOMMENDATION**

---

This matter is before the Court on Plaintiff Management Registry Inc.'s ("MRI")

motions to dismiss the Defendants' counterclaims. [ECF Nos. 360, 394.] The Court held

a remote hearing on MRI's motions on June 10, 2020. For the reasons that follow, the

Court recommends that MRI's motions be granted in part and denied in part.

## BACKGROUND

### I.  The Original Counterclaims

MRI filed its original Complaint in this case on November 3, 2017, and its First

Amended Complaint ("FAC") on November 21, 2017.[1] In response to the FAC, on

---

[1]  The FAC included fifteen separate counts: (1) Count 1 – Tortious Interference with
MRI's Contracts with its Employees against A.W. Companies, Inc. ("AWI"); (2) Count 2 –
Tortious Interference with MRI's Contracts with its Customers against AWI and Eric Berg;
(3) Count 3 – Tortious Interference with Prospective Business Advantage against AWI;
(4) Count 4 - Civil Conspiracy against AWI, Wendy Brown, and Eric Berg; (5) Count 5 -  Unjust
Enrichment against AWI, Wendy Brown, and Eric Berg; (6) Count 6 – Breach of Contract (Allan
Brown's Purchase Agreement); (7) Count 7 – Breach of Contract (Eric Berg's Employment
Agreement); (8) Count 8 – Breach of the Duty of Loyalty against Eric Berg; (9) Count 9 – Unfair
Competition against AWI; (10) Count 10 – Computer Fraud and Abuse Act against Eric Berg
and AWI; (11) Count 11 – Common law fraud against all defendants; (12) Count 12 –
Conversion against all defendants; (13) Count 13 – Replevin against all defendants;

*(footnote continued on following page)*

December 5, 2017, the Defendants filed an Answer, Affirmative Defenses and Counterclaims to First Amended Complaint (the "Original Counterclaims").[2] [ECF No. 72.]

The Court has previously discussed MRI's allegations in detail and will not fully restate them here. Predictably, the Defendants' Original Counterclaims tell a different story about the events precipitating this lawsuit. The Defendants allege that MRI and its principals, the Malones, purchased twelve staffing/outsourcing agencies from Mr. Brown and Mel and Mary Zwirn ("the Zwirns") for approximately $21 million. Mr. Brown was expected to become an executive-level employee of MRI and run the acquired businesses after the purchase was completed. Among the businesses MRI purchased was AllStaff Recruiting, Inc. ("ARI"), which had been owned by Mr. Brown (20%) and Ms. Zwirn (80%). During negotiations, the Browns assert that MRI agreed to sell the ARI business back to Ms. Brown for $50,000.

---

(14) Count 14 – Indemnification claim against Mr. Brown under Sections 6.5 and 8.2 of the Stock Purchase Agreement; (15) Count 15 – Misappropriation of Trade Secrets in violation of Defend Trade Secrets Act and Minnesota Uniform Trade Secrets Act and Minnesota Common law against AWI, Wendy Brown, and Eric Berg. [ECF No. 59.]

[2]      At the time the Original Counterclaims were filed, the Defendants included AWI, Allan K. Brown ("Mr. Brown"), Wendy Brown ("Ms. Brown"), and Eric Berg ("Mr. Berg"). MRI later dismissed its claims against Mr. Berg and he filed a lawsuit against AWI and the Browns in Hennepin County District Court. *Eric Berg and Eric Berg Consulting, LLC v. Wendy Brown, Allan Brown, and A.W. Companies, Inc.*, 27-CV-18-19715 (Henn. Cty. Dist. Ct.) (hereafter "the Berg Litigation"). As explained below, Milan Batinich ("Mr. Batinich") was eventually added to the list of Defendants in this proceeding after the United States District Court for the Northern District of Illinois transferred a case MRI filed against him to the District of Minnesota, and that case was consolidated with this one.

The parties have referred to this alleged agreement as "the Wendy Deal" or the "buy-back agreement," though they disagree whether an enforceable contract was ever formed. The Defendants further alleged that MRI and the Malones agreed that the Wendy Deal would be completed within 30 days of the September 11, 2017 closing date for MRI's broader purchase of business assets and stocks.

The Defendants claim that the Wendy Deal was never reduced to a final written agreement, though they allege that the agreement is reflected in several written documents. MRI and the Malones agreed to have Ms. Brown run ARI for 30 days after the September 11th closing, but they later backed out of their promise to sell ARI back to her. According to the Defendants, MRI then engaged in a smear campaign against the Defendants. While MRI alleges that shortly after the Wendy Deal fell through, Ms. Brown and the other Defendants engaged in a scheme to steal ARI's property, clients, and employees away from MRI, the Defendants contend that Ms. Brown was already operating the ARI business separate from MRI. They allege that all parties had an understanding that she would complete the purchase of ARI and continue its operations along with its employees and customer base after the 30-day post-closing period concluded. They allege that Ms. Brown even sent MRI $150,000 from her private bank account shortly after the September 11th closing because she was going to pay for ARI's expenses during the 30-day window.

Despite the alleged buy-back agreement, the Defendants claim that MRI and the Malones attempted to change the terms of the Wendy Deal at the last minute. MRI allegedly told the Browns that MRI would not agree to sell ARI back to Ms. Brown

unless she would agree not to operate the business outside of Minnesota. The Browns declined this condition because it would have rendered ARI an almost worthless business—most of ARI's existing clients were based outside of Minnesota. Mr. Brown informed MRI that if it did not honor the commitment to sell ARI back to Ms. Brown without the Minnesota-only restriction, he would resign his position with MRI. Almost immediately after he gave this ultimatum, the Defendants claim that MRI terminated Mr. Brown's employment, but the parties dispute whether he was actually fired or ultimately resigned.

After Mr. Brown's alleged termination and the collapse of the Wendy Deal, Ms. Brown created AWI. She set up AWI to become MRI's competitor and planned to operate it with the help of Mr. Berg. Contrary to MRI's tortious-interference allegations, the Defendants allege that Ms. Brown never improperly solicited any of ARI's clients or employees. However, the Defendants contend that several ARI clients and employees independently decided to join AWI. Meanwhile, MRI began publicly disparaging the Browns, accusing them of stealing MRI's property and interfering with MRI's client relationships. MRI and its counsel also allegedly used a temporary restraining order issued by the District Court in this case (which has since been vacated) to convince several of AWI's prospective clients they could not do business with the Browns or AWI.

The Original Counterclaims include ten separate counts, some of which were later stayed due to an arbitration agreement between MRI and Mr. Brown. In Count One, Defendants alleged that MRI breached its oral contract with Ms. Brown to sell ARI's stock back to her (i.e., the Wendy Deal), and that Mr. Brown and Mr. Berg were intended

third-party beneficiaries of the buy-back agreement. [Original Countercl. ¶¶ 345–52.] Count Two alleged that MRI breached its employment contract with Mr. Brown by terminating him without cause. [*Id.* ¶¶ 353–58.] Count Three asserted a breach-of-contract claim on behalf of Mr. Berg. [*Id.* ¶¶ 359–64.] In Count Four, the Defendants asserted that MRI was liable for tortious interference with prospective economic advantage based on MRI's smear campaign, which prevented several clients from continuing business relationships with the Defendants. [*Id.* ¶¶ 365–71.] Count Five alleged that MRI defamed Mr. Brown, Ms. Brown, and Mr. Berg by making a series of improper statements. [*Id.* ¶¶ 372–76 (identifying defamatory statements in ¶¶ 325, 328–32, 334–35, and 337).] In Count Six, the Defendants alleged that MRI was liable for tortious interference with several contractual relationships, including those with customers, vendors, service providers, employees, and temporary staff. [*Id.* ¶¶ 377–82.]

In Count Seven the Defendants alleged that MRI fraudulently induced Mr. Brown to sell his 20% interest in ARI and to enter MRI's employment by misrepresenting that MRI would sell ARI back to Ms. Brown. Similar false statements allegedly induced Ms. Brown to become ARI's CEO and encouraged Mr. Berg to become President of a division of the ARI business. [*Id.* ¶¶ 383–91.] Count Eight is a negligent-misrepresentation claim pled in the alternative to the fraud claim in Count Seven. [*Id.* ¶¶ 392–99.]

Count Nine was asserted on behalf of Mr. Berg, alleging that MRI personnel violated the Interference and Unauthorized Access in Violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030) and the Stored Communications Act (18 U.S.C.

§ 2707), by making unauthorized incursions to his LinkedIn account. [*Id.* ¶¶ 400–09.] Finally, in Count Ten for unjust enrichment, the Defendants alleged that MRI wrongfully obtained income and financial benefits to which it was not entitled. [*Id.* ¶¶ 410–13.]

## II.     Additional Procedural History

On December 26, 2017, MRI moved to compel arbitration on several of the Original Counterclaims that were brought on Mr. Brown's behalf based on an arbitration clause in his employment contract with MRI. [ECF No. 90.] On February 27, 2018, the District Court granted MRI's motion and Ordered Mr. Brown to arbitrate his claims in Counts Two (breach of employment agreement), Seven (fraudulent inducement), and Eight (negligent misrepresentation) in the Original Counterclaims. [ECF No. 123.] These counterclaims have remained stayed since the District Court's February 27, 2018 Order.

On December 17, 2017, MRI filed a complaint in the Northern District of Illinois against Milan Batinich, an AWI employee. *Management Registry, Inc. v. Batinich*, No. 1:17-cv-08834 (N.D. Ill. Dec. 7, 2017) (Complaint). MRI alleged that Mr. Batinich acted as a business-development manager for an MRI affiliate. However, MRI eventually fired Mr. Batinich after he allegedly took MRI's customer database files, computers, trade secrets, and other property. He allegedly engaged in this conduct in consort with and on behalf of the Browns and AWI, by which he was later employed. *Id.* Several months after MRI filed that case, the Illinois Court transferred the action to the District of Minnesota. *Management Registry, Inc. v. Batinich*, No. 0:18-cv-01147 (D. Minn. May 1, 2018) (Case Transfer to District of Minnesota) (hereafter "*Batinich Docket*"). On July 11, 2018, Mr. Batinich filed an Answer to MRI's complaint, but he did not assert any

counterclaims. *Batinich Docket*, ECF No. 86. On March 21, 2019, the Batinich case was consolidated with this one. *Id.*, ECF No. 96.

On July 2, 2018, MRI and Mr. Berg stipulated to dismiss their claims against each other. [ECF No. 158.] The District Court adopted the stipulation, and the following portions of the Original Counterclaims were extinguished: (1) Mr. Berg's claim to be a third-party beneficiary of the Wendy Deal (part of Count One); (2) his claim for breach of an employment agreement (Count Three); (3) his claims for tortious interference (parts of Counts Four and Six); (4) his defamation claim (part of Count Five); (5) his fraud and negligent misrepresentation claims (parts of Counts Seven and Eight); (6) his claim for unauthorized access to his LinkedIn account (Count Nine); and (7) his claim for unjust enrichment (part of Count Ten). [*See* ECF No. 163.]

In March 2019, following consolidation with the Batinich case, the Scheduling Order was amended, extending the deadline for amending pleadings to July 12, 2019. [ECF No. 180.] On May 17, 2019, the Defendants filed a motion for judgment on the pleadings, which was later referred to the undersigned for a report and recommendation. [ECF No. 204.] MRI responded in part with a motion seeking leave to file a Second Amended Complaint on May 22, 2019. [ECF No. 206.] At a hearing on these motions, "it was determined that the most efficient use of the parties' and the Court's resources would be to deny both motions and permit expedited dismissal briefing as to a stipulated Second Amended Complaint." [ECF No. 250.]

On July 12, 2019, MRI filed the Second Amended Complaint ("SAC"), which is now MRI's operative pleading. [ECF No. 251.] On July 24, 2019, the Defendants filed a

motion to dismiss the SAC, and the undersigned concluded that motion should be denied in a report and recommendation dated September 12, 2019 (the "September 12th R&R"). [ECF No. 255 (Mot. to Dismiss SAC); ECF No. 298 (September 12th R&R).] On November 15, 2019, MRI filed a motion to dismiss the Defendants' Original Counterclaims, arguing: (1) Defendants failed to provide or identify any documents to support their damages claims during discovery; (2) several claims were barred by the doctrine of judicial estoppel based on positions Defendants took during the Berg Litigation in state court; and (3) Defendants had admitted facts that foreclosed several of their counterclaims by failing to timely respond to requests for admissions under Fed. R. Civ. P. 36. [ECF Nos. 360-61.]

The Defendants moved to strike MRI's motion to dismiss the Original Counterclaims on procedural grounds. The Defendants argued that because their objections to the September 12th R&R remained pending before the District Court when MRI's original motion to dismiss was filed, they had not yet been required to file a pleading in response to the SAC. The Defendants suggested that the Original Counterclaims were no longer in play, so MRI's original motion to dismiss was essentially a nullity. [ECF Nos. 371–72.] On January 6, 2020, this Court denied the motion to strike MRI's original motion to dismiss. The Court held any consideration of MRI's motion in abeyance until after the District Court issued its ruling regarding the September 12th R&R. [ECF No. 375.] The September 12th R&R was adopted by the District Court on January 30, 2020. [ECF No. 381.]

Before the District Court adopted the September 12th R&R, on December 9, 2019, a company associated with the Zwirns, M.B.M. Assoc., Inc. ("MBM"), filed a lawsuit against MRI and the Malones in the Northern District of Illinois. That lawsuit also arises out of the Zwirns' and Mr. Brown's sale of the staffing and outsourcing businesses to MRI that led to this lawsuit. *MBM Assoc. v. Management Registry Inc.* ("*The MBM Lawsuit*"), No. 1:19-cv-08039, Doc. No. 1 (N.D. Ill. Dec. 9, 2019) (MBM's Complaint). MBM claims that it is the administrative payee on the promissory note through which MRI financed the purchase of the staffing/outsourcing businesses. MBM alleges that MRI agreed to pay $21 million in monthly installments, and MRI made its monthly payments under the promissory note from October 2017 through May 2018. However, MRI and the Malones, who had guaranteed the installment payments, failed to make timely payments beginning in June 2018. This allegedly leaves a principal balance on the promissory note of about $4.7 million. MBM also alleges that MRI breached a consulting agreement. *See* MBM Complaint ¶¶ 1–51.

On January 30, 2020, MRI filed an Answer, Counterclaim, and Third-Party Complaint in *The MBM Lawsuit*. No. 1:19-cv-08039, Doc. No. 18 (N.D. Ill.). Among other things, MRI claimed that the Zwirns and Mr. Brown made several misrepresentations that caused MRI to enter the agreement to employ Mr. Brown. MRI also alleged that the sellers engaged in a scheme to defraud MRI with respect to the ARI business, misrepresenting its financial health. MRI also alleged that the sellers lied to MRI's customers, telling them that MRI had never purchased the ARI business. *See id.* MRI's claims in their original set of counterclaims in *The MBM Lawsuit* included a claim

9

for indemnification against Mr. Brown under Section 8.2 of the Stock Purchase Agreement. *Id.* ¶¶ 164–70. However, on February 27, 2020, MRI amended its counterclaims in *The MBM Lawsuit*. It now asserts claims against MBM and the Zwirns for breach of contract, trade secret appropriation, promissory estoppel, unjust enrichment, tortious interference, fraudulent inducement, conversion, civil conspiracy, and indemnification. *Id.*, No. 1:19-cv-08039, Doc. No. 21 (N.D. Ill.). MRI abandoned its claims against Mr. Brown, though his conduct still features heavily in MRI's amended counterclaims in *The MBM Lawsuit*.

## III.    The New Counterclaims

After the District Court adopted the September 12th R&R in this case and the SAC became, undeniably, the operative pleading, the Defendants filed an Answer, Affirmative Defenses and Counterclaims to [Second] Amended Complaint (hereafter "the New Counterclaims"). [ECF No. 388.] Many of the paragraphs setting forth the factual basis for the New Counterclaims are nearly verbatim repetitions of those in the Original Counterclaims.[3]

The New Counterclaims repeat seven of the "Counts" from the Original Counterclaims. For example, the Defendants still allege that MRI breached the Wendy Deal and that Mr. Brown was a third-party beneficiary of that agreement. [*Id.* ¶¶ 142–50 (Count I – breach of contract).] The Defendants further allege, as before, that MRI wrongfully interfered with the Defendants' business prospects and with AWI's existing

---

[3]    The allegations that formed the basis for Mr. Berg's Original Counterclaims were removed from the New Counterclaims.

contracts with its customers, vendors, and employees. [*Id.* ¶¶ 151–57 (Count II – tortious interference with prospective business advantage); *id.* ¶¶ 163–68 (Count IV – tortious interference with contractual relationships).] The Defendants repeat the claim that MRI made several defamatory statements intended to harm the Browns and Mr. Batinich, although they do not list the specific paragraphs in which the allegedly defamatory statements are referenced. [*Id.* ¶¶ 158–62 (Count III – defamation).] They assert the same alternative claims for common-law fraud and negligent misrepresentation that were included in the Original Counterclaims. [*Id.* ¶¶ 169–77 (Count VII – common law fraud); *id.* ¶¶ 178–85 (Count VIII – negligent misrepresentation).] And finally, they repeat their unjust enrichment claim. [*Id.* ¶¶ 186–89 (Count X – unjust enrichment).][4]

But the New Counterclaims are not entirely repetitive of the Old Counterclaims. The latter introduces factual allegations on behalf of Mr. Batinich, and three of the New Counterclaims are brought on his behalf for the first time in the litigation. [*See id.* at Counts II, III, and X (asserting claims for tortious interference with prospective economic advantage, defamation, and unjust enrichment on behalf of Mr. Batinich).] In addition, the Defendants have asserted a claim for promissory estoppel on behalf of the Browns. In this claim, they allege that MRI made a clear promise to sell Ms. Brown ARI's "Minnesota Business" for $50,000, which she relied on to her detriment. Both Mr. Brown and Ms. Brown allegedly gave up their interest in ARI's future earnings and their rights

---

[4]       The Court uses the Defendants' numbering of the Counts in the New Counterclaims. The New Counterclaims do not include a "Count V," "Count VI," or a "Count IX." The defamation counterclaim has moved from Count V of the Original Counterclaims to Count III of the New Counterclaims.

to the ARI business in reliance on MRI's promise to sell. The promissory-estoppel claim is essentially pled in the alternative to the breach-of-contract claim in Count I of the New Counterclaims. [*Id.* ¶¶ 190–99 (Count XI – promissory estoppel).]

Finally, the Defendants have introduced allegations tied to *The MBM Lawsuit*. In the New Counterclaims, Defendants allege that MRI: stopped making payments to the Zwirns and Mr. Brown; improperly held up funds to which the sellers of the businesses are entitled; and defaulted on the payments due under the promissory note. Further, they allege that MRI: has failed to pay Mr. Brown severance as required by his employment agreement; owes Mr. Brown over $400,000 through payments that should have been made to the Zwirns; and threatened legal action if Mr. Brown takes a job in the industry where he lives. Finally, the Defendants directly reference MRI's claims asserted in its now superseded January 31, 2020 pleading in *The MBM Lawsuit* in Illinois. [*Id.* ¶¶ 119–27.] Based on these additional allegations, the New Counterclaims include two new Counts on behalf of Mr. Brown: a right to indemnification under the Stock Purchase Agreement; and a claim for breach of the promissory note. [*Id.* ¶¶ 200–06 (Count XII – indemnification); *id.* ¶¶ 207–28 (Count XIII – breach of promissory note).]

## DISCUSSION

### I.    The Original Motion to Dismiss

MRI argues that several of the Defendants' New Counterclaims should be dismissed for three reasons cited in the motion to dismiss the Original Counterclaims: (1) during discovery the Defendants failed to provide or identify documents that form the basis for their alleged damages; (2) certain counterclaims are barred by the doctrine of

judicial estoppel based on positions the Defendants took in the Berg Litigation in state court; and (3) the Defendants' failure to respond to requests for admissions resulted in stipulated admissions that foreclose several of their counterclaims.[5]

Although MRI raised these arguments in its motion to dismiss the Original Counterclaims, the Court concludes that they are properly considered in evaluating the New Counterclaims because the two pleadings are largely duplicative. Nevertheless, the Court concludes that MRI has failed to show that the New Counterclaims should be dismissed due to the Defendants' failure to provide documentary evidence during discovery in support of their damages claims. Instead, the Court concludes that because the Defendants have failed to identify any documents on which their damages claims are based, they should be precluded under Rule 37(c)(1), from offering any documentary proof in support of their damages claims on a motion, at a hearing, or at trial. Further, the Court concludes that MRI's reliance on the doctrine of judicial estoppel and the effect of the Defendants' alleged admissions under Rule 36 are more appropriately resolved, if at all, in the context of a motion for summary judgment.

## A.    Defendants' Procedural Objections

First, the Court addresses the Defendants' argument that consideration of MRI's original motion to dismiss is procedurally improper. As they did in their previously

---

[5]    Specifically, MRI argues that the following counts in the New Counterclaims should be dismissed for one or more of these reasons: Count I (breach of contract); Count II (tortious interference with prospective business advantage); Count III (defamation); Count IV (tortious interference with contractual relationships); Count VII (common law fraud); Count VIII (negligent misrepresentation); and Count X (unjust enrichment).

denied motion to strike MRI's first dismissal motion, the Defendants contend the first motion to dismiss is a nullity. They assert that when the motion was filed there were no operative counterclaims in the case. At that time, MRI had already filed the SAC, which the Defendants moved to dismiss, and Judge Tunheim still had their objections to the September 12th R&R pending before him. The Defendants suggest that until Judge Tunheim adopted the September 12th R&R and the Defendants filed their New Counterclaims there was nothing for MRI to move to dismiss. Thus, the Defendants claim that MRI's motion to dismiss the Original Counterclaims cannot now be considered by the Court. As discussed below, the Court finds this argument unpersuasive.

It is true that the filing of an amended pleading supersedes an earlier pleading and renders the original pleading of no legal effect. *E.g.*, *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005). Motions to dismiss may also be rendered moot by the subsequent filing of an amended complaint. *E.g.*, *Onyiah v. St. Cloud State Univ.*, 655 F. Supp. 2d 948, 958 (D. Minn. 2009) ("[A]s a general proposition, if a defendant files a Motion to Dismiss, and the plaintiff later files and Amended Complaint, the amended pleading renders the defendant's Motion to Dismiss moot."). If this mootness rule were as inflexible as the Defendants' argument suggests, their position would be stronger. But the mootness rule is not quite so rigid.

District courts have clear discretion to consider whether the arguments raised in a motion to dismiss an original pleading justify dismissal of claims in a subsequently filed amended pleading. *See DeVary v. Countrywide Home Loans, Inc.*, 701 F. Supp. 2d 1096, 1100 (D. Minn. 2010) ("As a general rule, a defendant need not file a new Rule 12

motion merely because the plaintiff amended his pleading while the defendant's motion was pending."); *see also Cartier v. Wells Fargo Bank, N.A.*, 547 F. App'x 800, 803–04 (8th Cir. 2013) (noting that it is within a district court's discretion to treat a motion to dismiss the original complaint as a motion to dismiss the amended complaint). This is exactly the discretion that the Court employs in considering the merits of the arguments raised in MRI's original motion in the context of the New Counterclaims. And exercising discretion in this way makes perfect sense for those counterclaims that are essentially identical in the Defendants' two pleadings.

Next, the Defendants argue that "the Court should deny Plaintiff's motion because it is not brought pursuant to any Rule that allows dismissal and it is unclear what the standard of reviewing the motion would be." [ECF No. 424 at 8 (Heading II).] With respect to MRI's argument that the Defendants' failure to disclose documents supporting their damages claims supports dismissal, the Court mostly disagrees. In its memorandum supporting the original motion, MRI relied heavily on *U.S. Salt, Inc. v. Broken Arrow*, No. 07-cv-1988 (RHK/JSM), 2008 WL 2277602 (D. Minn. May 30, 2008). [ECF No. 361 at 16–19, 23–24, 28, 30–31, 32–33.] *U.S. Salt* plainly applies Rule 37(c)(1) in reaching the conclusion that a party's claim may be subject to dismissal based on a failure to disclose information in support of damages when that claim requires proof of damages as an essential element. 2008 WL 2277602, at *3–6. It is true that MRI included a laundry list of provisions from the Fed. R. Civ. P. and the D. Minn. Local Rules in its motion, and Rule 37(c)(1) was not among those. But MRI's clear, and indeed exclusive,

reliance on *U.S. Salt* in support of the no-proof-of-damages argument put the Defendants on notice that MRI sought dismissal of counterclaims pursuant to that Rule.

However, the Court is not similarly convinced that MRI's reliance on the doctrine of judicial estoppel and the effect of the Defendants' alleged admissions under Rule 36 are properly considered in the context of a motion to dismiss for failure to state a claim. Both arguments rely on matters outside the pleadings, and MRI has not asked the Court to apply a summary-judgment framework to either question. Specifically, MRI references: (1) requests for admissions that served in this case and others in the Allan Brown/MRI arbitration, neither of which were timely responded to by the Defendants; and (2) documents filed in the state court Berg Litigation. But MRI cited the legal standard governing dismissal of claims under Rule 12(b)(6) in its original motion to dismiss and expressly asked the Court not to convert the motion to one for summary judgment. [ECF No. 361 at 15–16; *id.* at 12 n.1.] For the following reasons, the Court concludes that neither of the matters outside of the pleadings supports MRI's motion to dismiss.

In suggesting that the Court may consider the matters at issue in resolving its original motion to dismiss, yet still apply a Rule 12(b)(6) standard, MRI relies on *McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 914 (8th Cir. 2014). [ECF No. 361 at 12 n.1.][6] The *McIvor* court noted that a judge can take "judicial notice of facts outside the

---

[6]    Under Fed. R. Civ. P. 12(d) a court may convert a motion to dismiss for failure to state a claim into a motion for summary judgment if it considers matters outside the pleadings and the opposing party has notice that such materials will be considered and a chance to respond.

record" and still apply the Rule 12(b)(6) standard in limited circumstances. *Id.* But in *McIvor*, the district court declined to consider facts that had been found by courts in other cases, but not included in the plaintiff's complaint, regarding the defendant's method for calculating credit scores. *Id.* In affirming the district court's decision not to rely on such out-of-record information, the *McIvor* court explained that "[j]udicial notice of another court's opinion takes notice of the existence of the opinion, which is not subject to reasonable dispute over its authenticity, but not of the facts summarized in the opinion." *Id.* (internal quotation marks omitted). *McIvor* does not support this Court's consideration of any Defendant's responses (or non-responses) to MRI's requests for admissions or of positions the Defendants took in the Berg Litigation as a basis for dismissal on grounds of judicial estoppel.

MRI does nothing to explain how *McIvor* allows the Court to consider alleged admissions, whether from a separate arbitration, or by operation of Rule 36 in support of its motion to dismiss for failure to state a claim. Under the express terms of Rule 56, a party may rely on materials in the record, including another party's admissions, to demonstrate that a fact cannot be or is genuinely disputed in a motion for summary judgment. Fed. R. Civ. P. 56(c)(1). Rule 12(b)(6) does not include such a reference. Here, MRI is asking the Court to consider the truth of the facts that Mr. Brown has allegedly admitted in the parties' arbitration and which AWI admitted during discovery by failing

to timely respond to Rule 36 requests in this case.[7] But MRI offers no support for the proposition that this can be done without converting a Rule 12(b)(6) motion into one for summary judgment. The Court declines to recommend such an approach here.

The same problem prevents the Court from recommending dismissal of any counterclaims under the doctrine of judicial estoppel. MRI provides no authority for the proposition the Court can look beyond the pleadings to consider the substance of documents the Defendants filed in the Berg Litigation, use those documents to resolve a judicial estoppel issue, and do so without converting the motion to one for summary judgment. In the absence of any authority in which a court has similarly relied on judicial estoppel to dismiss for failure to state a claim, the Court concludes that MRI has failed to show dismissal based on the doctrine of judicial estoppel is warranted.

Accordingly, Court finds that arguments based on the doctrine of judicial estoppel or the effect of another party's admissions would be better analyzed, if at all, in the context of a motion for summary judgment or motions in limine, and recommends that

---

[7] The Court concludes that the issue surrounding AWI's Rule 36 admissions in this proceeding has not been adequately briefed. As explained more fully in the Case Management Order issued contemporaneously with this report, the record supports MRI's assertion that AWI failed to timely respond to MRI's requests for admissions, and as a result, the matters covered by those requests are deemed admitted by operation of Rule 36. Although the Defendants argued, in their supplemental response to MRI's original motion to dismiss, that AWI's answers should be considered timely, the Court rejects that argument in the separate Case Management Order. However, whether the Defendants should be permitted to withdraw those admissions pursuant to Rule 36(b), is an issue that is not properly before the Court because the Defendants have never made a motion seeking permission to do so. In the Case Management Order, the parties are required to meet and confer to see if agreement can be reached regarding this issue, and if not, then the Defendants will be required to make a motion pursuant to Rule 36(b) if they wish to pursue this issue further.

MRI's original motion to dismiss be denied in part to the extent it seeks dismissal on these two issues.

### B.    Failure to Disclose Damages

The Court next turns to MRI's argument that some of the New Counterclaims are subject to dismissal under Rule 37(c)(1) because the Defendants failed to disclose any documents on which their damages claims are based. In the chart below, the Court lists the Original Counterclaims MRI sought to dismiss on this basis alongside the duplicative claims asserted in the New Counterclaims.[8] The Counts in the New Counterclaims listed in this chart are those the Court considers appropriately subject to MRI's Rule 37(c)(1) argument.

| Original Counterclaims | New Counterclaims |
|---|---|
| Count I – Breach of Contract | Count I – Breach of Contract |
| Counts IV and VI – Tortious Interference with Prospective Economic Advantage and Tortious Interference with Contractual Relations | Counts II and IV – Tortious Interference with Prospective Economic Advantage and Tortious Interference with Contractual Relations |
| Count V – Defamation | Count III – Defamation |
| Count VII and VIII – Common Law Fraud and Negligent Misrepresentation | Count VII and VIII – Common Law Fraud and Negligent Misrepresentation |
| Count X – Unjust Enrichment | Count X – Unjust Enrichment |

---

[8]    Because the Original Counterclaims included no claims on behalf of Mr. Batinich, it is a misnomer to call the New Counterclaims asserted on his behalf that overlap with the Original Counterclaims "duplicative." Nevertheless, as explained in greater detail below, his belated attempt to inject counterclaims into this litigation warrants dismissal of all the counerclaims raised on his behalf.

For the reasons that follow, the Court concludes that Counts I, II, III, IV, VI, VII and X from the New Counterclaims should not be dismissed. However, because the Defendants failed to disclose a single document upon which they intend to rely in support of damages,[9] and because they have not shown the failure was substantially justified or harmless, under Rule 37(c)(1), they should be prohibited from using any documentary evidence to support their damages claims on a motion, at a hearing, or at trial.

### 1.    Legal Standard

Without awaiting a discovery request, the Federal Rules of Civil Procedure require a party to disclose "a computation of each category of damages claimed by the disclosing party…." Fed. R. Civ. P. 26(a)(1)(A)(iii). A party must also disclose "documents or other evidentiary material … on which each computation is based, including materials bearing on the nature and extent of injuries suffered." *Id.* Rule 26(e) requires a party that has made Rule 26(a) disclosures or responded to discovery requests to timely supplement or correct a disclosure or response "if the party learns that in some material respect the disclosure or response is incomplete or incorrect…." Fed. R. Civ. P. 26(e)(1)(A). "If a party fails to provide information … as required by Rule 26(a) or (e), the party is not allowed to use the information … to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).[9]

---

[9]    The duty to supplement under Rule 26(e) applies not only to the disclosures required by Rule 26(a), but also to responses to interrogatories, document requests, or requests for admission.

*(footnote continued on following page)*

A party who has failed to make a disclosure may move the court for a sanction less severe than exclusion. *See Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 704–05 (8th Cir. 2018) (providing that a district court should consider lesser sanctions when exclusion of evidence would be "tantamount to dismissal," but limiting the obligation to consider lesser sanctions to instances where the party facing exclusion for nondisclosure or untimely disclosure makes a motion requesting one). Lesser sanctions may include: awarding the expenses, including attorney's fees, caused by the failure; telling the jury of the party's failure to disclose; or issuing other appropriate sanctions authorized under Rule 37(b)(2)(A)(i)–(vi). Fed. R. Civ. P. 37(c)(1)(A)–(C).[10]

Courts have "wide discretion" to provide a remedy for a party's failure to make a timely disclosure. *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). In exercising that discretion, the Court should consider "the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing information or testimony would disrupt order and efficiency of the trial, and the importance of the information or testimony." *Id.* (citing *Sellers v. Mineta*, 350 F.3d 706, 711-12 (8th Cir. 2003)). Excluding evidence "is a harsh penalty and should be used sparingly." *Id.* However, unless there is substantial justification for the failure to disclose or the nondisclosure is harmless, Rule 37(c)(1)'s exclusion remedy is "automatic." *See Vanderberg*, 906 F.3d at

---

Thus, the exclusion sanction available under Rule 37(c)(1) extends not only to failures to supplement initial disclosures, but also to failures to supplement discovery responses.

[10]     The Defendants have not made a motion asking the Court to consider imposition of a lesser sanction than exclusion. Therefore, the Court declines to consider whether lesser sanctions are appropriate.

705 (describing Rule 37(c)(1)'s text as providing for "automatic exclusion of undisclosed evidence (except where harmless or substantially justified)").

### 2. Analysis

There is no dispute that the Counts identified from the New Counterclaims in the chart above require the Defendants to prove damages. MRI argues that the Defendants' claims should be dismissed because they have failed to identify a single document on which they base their damages claims in either their initial disclosures or their responses to relevant document requests. As a result, MRI argues that the Defendants have no evidence of damages and Counts I, II, III, IV, VI, VII and X of the New Counterclaims should be dismissed. The Defendants do not seriously contest that they failed to identify any documents on which they would rely to support their damages claims. Such a disclosure of documentary support is not found in any initial or supplementary response to a document request, interrogatory answer, or other response to MRI's discovery that is in the record before the Court. [*See* ECF No. 424, *passim* (including no argument that documentary support for a damages claim was provided through initial disclosures or during discovery).]

### *U.S. Salt v. Broken Arrow, Inc.*

In support of the position that dismissal is required in these circumstances, MRI relies exclusively on *U.S. Salt v. Broken Arrow, Inc.*, 2008 WL 2277602. However, for the reasons explained below, *U.S. Salt* is distinguishable from this case and the Court declines to recommend dismissal. In *U.S. Salt*, the court addressed the consequences for a party's failure to identify the information on which it would rely in support of its

damages, when proof of damages was an essential element of a claim. 2008 WL 2277602. Though the court granted summary judgment for U.S. Salt on the defendant's liability for breach of contract, under Federal Rule of Evidence 702, the court excluded U.S. Salt's expert report, which supported U.S. Salt's claim for lost profits. *Id.* at *1–2. Because its evidentiary rulings "left U.S. Salt with little or no evidence of damages[,] [the Court] asked if there were any remaining damages for trial…." *Id.* at *2.

Instead of pointing to other evidence of lost profits that U.S. Salt had claimed from the beginning of the case, the plaintiff offered a summary of other categories of damages that it had not previously disclosed. *Id.* at *3. The defendant moved to exclude this newly disclosed damages information and argued that without evidence of damages, the breach-of-contract claim would have to be dismissed. *Id.* The court agreed, concluding that under Rule 37(c)(1), U.S. Salt's failure to identify its claimed damages during discovery required that the undisclosed evidence be excluded at trial, unless the failure was substantially justified or harmless. *Id.* at *4. Because U.S. Salt did not show substantial justification or harmlessness, the newly disclosed evidence had to be excluded. Without any evidence of damages, which are required to support a claim for breach of contract, the Court concluded that U.S. Salt could not prevail on its claim as a matter of law. *Id.* at *4–5.

Here, by contrast, the Defendants are not switching their theory of damages at the last moment to request recovery of previously undisclosed categories of damages. In fact, the record shows that the Defendants provided some information during the discovery process about their alleged damages, although what they provided appears somewhat

speculative and generalized. In February 2018, AWI responded to MRI's first set of

interrogatory requests, which included a question about the basis for AWI's damages

claims. [O'Malley Decl. Ex. C, ECF No. 425.]

AWI gave the following answer to the damages interrogatory:

Defendants seek the following categories of damages: lost revenue
and profit from customers and potential customers; losses due to increased
expenses for, among other things, funding and unemployment from setting
up a new business; and losses due to increased expense for vendors. In
addition, Defendants have had to incur attorneys' fees and costs related to
MRI's tortious conduct. These losses are ongoing and growing and, thus,
Defendants are unable to identify the total about of damages suffered, but
estimate these damages to be several million dollars in the first few months
following September 11, 2017, alone.

While Defendants attempted to fully mitigate their damages, it has
been continually thwarted as MRI failed to complete the sellback and then
misrepresented the situation to customers, potential customers and
employees in order to prevent A.W. from succeeding.

Defendant estimates that MRI has caused lost profits totaling
approximately $5,640,000 over three years. Because A.W. was a new
business, rather than the sold-back business, its cost for unemployment
insurance has increased by approximately $120,000 for three year[s].
Similarly, because A.W. is a new, not sold-off business, its financing costs
are expected to increase by $100,000 per year.

Defendant seeks its expenses incurred, including costs and attorneys'
fees, in an amount not yet determined, but currently exceeding $225,000.

Wendy Brown, Allan Brown, and Eric Berg have knowledge related
to most of these categories of damages. Individual A.W. employees have
knowledge of the losses A.W. has suffered and continues to suffer. MRI, its
owners, and its management team also have knowledge of the losses to
Defendants and their business. See also the filed declarations of Wendy
Brown, Allan Brown, and Eric Berg, as well as in Defendants' Answer,
Affirmative Defenses and Counterclaims to the First Amended Complaint.
Investigation and discovery are ongoing.

> Damages are continuing and cannot be fully determined at this time. Defendant will supplement at an appropriate time. Discovery is continuing and Defendant will seasonably supplement its responses.

[*Id.*, Ex. C at 25–26 (AWI Ans. to Interrog. No. 15).]

Unlike in *U.S. Salt*, the information in AWI's answer to this interrogatory has not been deemed inadmissible. Presumably, AWI and its witnesses could offer testimony regarding the nature of these alleged damages, though evidentiary rulings are ultimately left to the trial Court's discretion and far beyond the scope of the Court's consideration of MRI's motions to dismiss. But the interrogatory response demonstrates this is not a case in which Defendants gave notice of one form of damages, had their only evidence of those damages excluded, and then sought to bring up entirely new and undisclosed damages claims on the eve of trial. MRI did not address the effect of AWI's response to the damages interrogatory in its supplemental reply memorandum. [ECF No. 426, *passim*.] Accordingly, the Court concludes that *U.S. Salt* does not support dismissal of the Defendants' New Counterclaims under the circumstances of this case.

### *Exclusion under Rule 37(c)(1)*

The Court's conclusion that dismissal is not warranted does not fully resolve the issues raised by MRI's assertion that the Defendants failed to disclose documentary support for any damages claim.[11] As noted, there is no real dispute that the Defendants

---

[11]    Defendants' argument that MRI's original motion to dismiss did not cite any rule that would provide for dismissal could be read to suggest that the Court should not consider whether exclusion is appropriate under Rule 37(c)(1). Just as the Court rejected the Defendants' argument that they had no notice of the basis on which MRI sought dismissal, the Court finds that MRI's

*(footnote continued on following page)*

failed to identify or disclose any documents during discovery relating to their damages

claims. The Defendants had an obligation, under Rule 26(a)(1)(A)(iii), to provide a

computation of each category of damages they seek and to make the documents on which

each computation is based available for inspection, as would be required under Rule 34.

They have made no showing that such a disclosure was provided at any time during this

litigation. Nor have Defendants shown that they supplemented their initial disclosures or

their responses to document requests as required by Rule 26(e). Fed. R. Civ. P.

26(e)(1)(A) (requiring timely supplementation of disclosures as well as responses to

interrogatories and document requests).[12]

Under Rule 37(c)(1), the consequence for a party's failure to provide such

information is that the party may not use undisclosed materials as evidence on a motion,

at a hearing, or at trial, unless the failure to disclose is substantially justified or harmless.

In assessing whether to exclude evidence under this Rule, the Court must examine the

reason for the Defendants' noncompliance, the surprise and prejudice to MRI, the extent

to which allowing the Defendants to offer documentary evidence in support of their

damages claims would disrupt the order and efficiency of the trial or other proceeding,

---

exclusive reliance on *U.S. Salt* adequately notified Defendants that exclusion of documentary
evidence under Rule 37(c)(1) was contemplated by the motion.

[12]    The Defendants have also not suggested that through some other means or in writing they
provided "additional or corrective information" to MRI that would obviate the need to provide
supplementation. Fed. R. Civ. P. 26(e)(1)(A). The Court also notes that it was the Defendants
who requested that document production be accompanied by an identification of which
documents were responsive to each document request. The Court required both parties to comply
with that method, and the Defendants do not now claim that they ever provided the required
identification of documents supporting their damages claims.

and the importance of the information to the Defendants. Considering these factors, the Court concludes that the Defendants should not be allowed to use any documentary evidence on a motion, at a hearing, or at trial to demonstrate damages related to their counterclaims. Fed. R. Civ. P. 27(c)(1)(A).

First, in reviewing the Defendants' briefing on the motion, they offer no explanation whatsoever for why they failed to identify a single document supporting their claims for damages. The Court gave the Defendants an opportunity to respond to the merits of MRI's arguments after they originally raised only a procedural objection the Court had already rejected in denying the motion to strike. Still, the Defendants have not asserted that they properly identified documents supporting their damages claims. Nor have they given a reasonable (or any) explanation for their failure to identify such documents. Like so much of Defendants' conduct during discovery, they have behaved as though the obligations imposed by the Rules of Civil Procedure are options they can choose to honor or disregard, consequence free, on their way to a trial. But that is not how litigation works. The Defendants' failure to provide any explanation for the failure to identify documents on which they base their damages claims prevents the Court from concluding that the failure was substantially justified. Put simply, it was not.

Second, having documentary evidence to substantiate their damages would admittedly be helpful and even necessary to the Defendants' ability to prove they are entitled to recovery on their counterclaims. But the importance of the information to Defendants is outweighed by the fact that allowing them to identify documentary support for damages now would be prejudicial to MRI. Although it would be possible to grant a

continuance to allow MRI to explore such an untimely disclosure, and thereby mitigate some of the prejudice to MRI, the Court finds the additional delay and expense to MRI caused by such a continuance would also be prejudicial. The reality here is that throughout the course of the litigation, the Defendants' mismanagement of discovery and their blasé attitude toward their obligations have already caused unreasonable delay and considerable expense. This litigation has gone on long enough, it needs to come to a conclusion, and a continuance so that the Defendants could take steps they should have taken many, many months ago is unjustifiable.

Third, the Defendants' suggestions that they may rely on MRI's documents and use MRI's expert's report to prove their damages does not support a finding that their failure to disclose information is somehow excused. [ECF No. 424 at 13–14.] For one thing, these belated justifications have been offered for the first time in the Defendants' supplemental response to the original motion to dismiss. Despite having had the opportunity to supplement the relevant discovery responses and disclosures, and being asked to do so by MRI's counsel, the Defendants never notified MRI through supplementation or otherwise, that they would be relying on MRI's own documents to show the damages they allegedly sustained. MRI was also deprived of any opportunity to depose the Defendants about how any specific MRI documents helped prove Defendants' alleged damages. Although it is at least conceivable that MRI's documents may contain information relevant to Defendants' claim that they lost revenue or profits they would have received if certain customers had decided to do business with AWI instead of MRI, it would likely shock MRI to learn for the first time, at this late stage, that Defendants

believed they would have earned revenue and generated profits identical to MRI's own income stream from those customers. Moreover, even if the Defendants could somehow reverse-engineer MRI's expert's report to make predictions about their alleged lost revenue and profits, such a task would be unworkably disruptive to the order and efficiency of the trial. Indeed, MRI's expert was not consulted to offer any opinion about what revenue or profits the Defendants allegedly lost.

And finally, for many categories of damages identified in AWI's response to the damages interrogatory, it is unlikely the Defendants could use any of MRI's own materials to show their alleged losses. For example, Defendants' alleged "increased expenses for … funding and  unemployment from setting up a new business; [their] losses due to increased expense for vendors"; and their costs and attorneys' fees incurred are unlikely to be reflected in any of MRI's own business records. [O'Malley Decl., Ex. C at 25–26 (AWI Ans. to Interrog. No. 15).]

Under these circumstances, the Court finds that exclusion of any documentary evidence supporting Defendants' alleged damages is appropriate under Rule 37(c)(1)(A). *See Edmonds v. Minneapolis Public Schools Special School District 1*, 368 F. Supp. 3d 1329, 1338 (D. Minn. 2018) (excluding documents under Rule 37(c)(1) from the summary judgment record submitted by the plaintiff that were not produced during discovery); *Underpinning & Foundation Skanska, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 726 F. Supp. 2d 339, 349 (S.D.N.Y. 2010) (concluding that where a party had originally presented only an itemization of its damages based on estimates, but identified no supporting documentation for the calculation and later redid its damages calculation

relying on previously undisclosed documents, it could not use those documents to create a material fact dispute to avoid summary judgment); *Design Strategies, Inc. v. Davis*, 367 F. Supp. 2d 630, 633–36 (S.D.N.Y. 2005) (preventing the plaintiff under Rule 37(c)(1) from presenting any evidence of lost profits where it failed to provide a specific computation of its alleged lost profits in initial disclosures and produced no documents or other evidence showing the basis for the computation); *Stallworth v. E-Z Serve Convenience Stores*, 199 F.R.D. 366, 368–69 (M.D. Ala. 2001) (excluding personnel files attached for the first time to defendant's reply in support of summary judgment motion under Rule 37(c)(1) because the documents were not timely disclosed in response to document requests).

Accordingly, the Court recommends that MRI's original motion to dismiss be granted to the extent that Defendants should not be allowed to use any documentary evidence to support a damages claim on a motion, at a hearing, or at trial.

## II.     The Second Motion to Dismiss

In its second motion to dismiss counterclaims, MRI argues that some of the New Counterclaims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), because the facts alleged fail to establish the elements of the claims as a matter of law. MRI further argues that other counterclaims raised for the first time by the Defendants should be dismissed because they have been introduced too late in the litigation. For the reasons that follow, the Court recommends that the motion be granted in part and denied in part. The District Court should decline to consider MRI's newly minted arguments under Rule 12(b)(6) because they could and should have been raised in MRI's original motion to dismiss.

30

Similarly, the Court recommends that the counterclaims brought on behalf of

Mr. Batinich and the Defendants' counterclaims for promissory estoppel,

indemnification, and breach of the Stock Purchase Agreement should be dismissed

because the Defendants could have asserted them earlier, and it is now too late to add

such claims to the litigation.

### A.    Rule 12(b)(6) Arguments

MRI argues that the Defendants failed to state a claim for which relief can be

given for several of the New Counterclaims. MRI suggests that the breach-of-contract

claim (Count I) is barred by application of the statute of frauds, by judicial estoppel,[13]

and by the terms of the underlying Asset Purchase Agreement and Stock Purchase

Agreement. And MRI argued that the Defendants failed to plead fact establishing the

elements of tortious interference claims (Counts II and IV), defamation (Count III),

common-law fraud (Count VII), negligent misrepresentation (Count VIII), and unjust

enrichment (Count X). [ECF No. 395.]

Each of the foregoing claims was set forth in Defendants' Original Counterclaims

and the facts supporting them did not change in any meaningful way when the

Defendants filed their New Counterclaims. However, in its first motion to dismiss, MRI

did not argue that Defendants failed to state a claim because the allegations in the

Original Counterclaims were legally insufficient. Instead, MRI raised these arguments for

---

[13]    For the same reasons discussed above, the Court concludes that MRI's reliance on judicial estoppel in its second motion to dismiss would be more fairly addressed, if at all, in the context of a motion for summary judgment or in motions in limine.

the first time in its second motion to dismiss without offering an explanation as to why they were not presented earlier. Under these circumstances, the new arguments are little more than a second bite at the apple. Consideration of such belated arguments would subject parties to seriatim attacks on the sufficiency of their pleadings, a result that is neither authorized by the Federal Rules of Civil Procedure nor advisable as a case-management device.

During the hearing, the Court inquired of MRI why it should consider any arguments raised for the first time in the second motion to dismiss when they could have been raised in the first. MRI argued that it could not have raised a statute-of-frauds argument earlier with respect to the breach-of-contract claim regarding the Wendy Deal because it only became clear that Defendants were relying on an alleged oral contract when they filed the New Counterclaims. MRI pointed to the Defendants' assertion in the New Counterclaims that although the Wendy Deal "was never memorialized in a written document signed by all parties, this is not necessary. Oral contracts are just as binding and enforceable as written contracts." [New Counterclaims ¶ 143.] The problem with this argument is that this same wording appears, verbatim, in the Original Counterclaims. [Original Counterclaims ¶ 346.] Under these circumstances, the statute-of-frauds defense raised for the first time in MRI's second motion to dismiss counterclaims could and should have been raised in its original motion.[14]

---

[14]     MRI did not identify substantive changes to the other claims in the New Counterclaims that it moved to dismiss for failure to state a claim. As a result the Court will not discuss each of these claims in greater detail here.

Other courts have declined to address new arguments in a second motion to dismiss under similar circumstances. *E.g.*, *Hernandez v. City of San Jose*, 241 F. Supp. 3d 959, 984–85 (N.D. Cal. 2017) (finding that the defendants could not raise an immunity defense for the first time in a second motion to dismiss when the objection was reasonably available at the time of the first motion to dismiss); *Ojmar US, LLC v. Security People, Inc.*, No. 16-cv-2017 WL 5495912, at *4 (N.D. Cal. Nov. 16, 2017) (noting that Rule 12(g)(2) prohibits a party from making a second motion under Rule 12 that raises a defense or objection that was available to the party but omitted from the earlier motion and declining to consider arguments for dismissal of several claims). Accordingly, as a matter of judicial economy, a value that this case repeatedly demonstrates is an aspiration, not a guarantee, the Court recommends that the District Court decline to address these arguments, and that the second motion to dismiss be denied in part on this basis.

### B.    Defendants' Newly Introduced Claims

MRI seeks dismissal of some of the New Counterclaims because they are brought too late in the day. MRI asserts that the New Counterclaims on behalf of Mr. Batinich, the promissory estoppel claim (Count XI), Mr. Brown's claim for indemnification (Count XII), and Mr. Brown's claim for breach of the Stock Purchase Agreement (Count XIII) are untimely because they were brought well after the Second Amended Scheduling Order's July 12, 2019 deadline. In response, the Defendants assert: "The instant counterclaim is a long time coming. Plaintiff oddly argues the counterclaims are untimely when, as a result of a series of amended complaints and motions to dismiss, it was not

possible to file them earlier." [ECF No. 401 at 3.] For the reasons that follow, but for

slightly different reasons than those cited by MRI,[15] the Court concludes that some of the

New Counterclaims should, indeed, be dismissed as untimely.

"There is dissension among the federal courts regarding the permissible scope of a

response to an amended pleading without leave of the court." *Buffalo Wild Wings, Inc. v.*

*Buffalo Wings & Rings, LLC*, No. 09-cv-1426 (JRT/SER), 2011 WL 2261298, at *3 (D.

Minn. Mar. 21, 2011). This dissension has been distilled to three different approaches:

"permissive, moderate, and narrow." *Id.* In the absence of controlling authority, several

district courts in the Eighth Circuit have adopted the moderate approach. *Id.*; *see also*

*CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, No. 16-cv-33-LRR, 2017 WL 9440803, at *5

(N.D. Iowa June 8, 2017); *Intermedics, Inc. v. Cardiac Pacemakers, Inc.*, No. 4-95-716,

1998 WL 35253496 (D. Minn. July 7, 1998); *Tralon Corp. v. Cedarapids, Inc.*, 966 F.

Supp. 812, 832 (N.D. Iowa 1997). "Under the moderate approach, courts limit the

breadth of the changes allowed in an amended response to the breadth of the changes

made in the amended complaint." *Buffalo Wild Wings*, 2011 WL 2261298, at *4. The

court asks whether a defendant's response to an amendment "affects the scope of the

---

[15]     MRI' second motion to dismiss asserted that claims raised for the first time should be
precluded because they were filed will after the applicable deadline in the Second Amended
Scheduling Order. [ECF No. 395 at 4–6.] MRI relies on the undersigned's decision in
*Cardiovascular Sys., Inc. v. Cardio Flow, Inc.*, 0:18-cv-1253-SRN-KMM, 2020 WL 949117 (D.
Minn. Feb. 27, 2020). But that case did not involve a situation in which a party attempted to
interject new counterclaims as a matter of right in response to an amended pleading. Such a
scenario is more appropriately addressed by the caselaw cited in the following discussion.

litigation in a manner proportional with the amended complaint." *Id.* The Court finds this approach the best of the three and adopts it here.

If a party makes "major changes" to its complaint, "then major changes may be made to the response." *Elite Entm't, Inc. v. Khela Bros. Ent'mt*, 227 F.R.D. 444, 446 (E.D. Va. 2005). However, "the obvious corollary is that if an amended complaint does not change the theory or scope of the case, a defendant must seek leave of court pursuant to Rule 15(a) before it can amend its answer to assert a counterclaim." *Buffalo Wild Wings*, 2011 WL 2251298, at *4 (cleaned up). "The rationale for this rule is an equitable consideration that if one party expands its case by adding new theories and claims, the other party may do likewise." *Id.* "If every amendment, no matter how minor or substantive, allowed defendants to assert counterclaims or defenses as of right, claims that would otherwise be barred or precluded could be revived without cause. This would deprive the Court of its ability to effectively manage the litigation." *E.E.O.C. v. Morgan Stanley & Co., Inc.*, 211 F.R.D. 225, 227 (S.D.N.Y. 2002).

The history of this case reveals that since the latter part of 2017, the Defendants have been faced with essentially the same factual allegations for which MRI seeks to hold them liable. The introduction of the SAC did not significantly change the scope or theory of MRI's case, and should not create a new opportunity for the Defendants to inject counterclaims they could have, but failed to raise earlier.[16] As the relevant procedural

---

[16]     As noted, the FAC included certain claims against Mr. Berg that are no longer part of this suit. But the FAC, SAC, and the original Batinich complaint are broadly made up of overlapping claims, including: tortious interference with various relationships and prospective business

*(footnote continued on following page)*

history set forth above reflects, the process of pleading amendment and related litigation in this case has often been grueling. But no matter how it is examined, the Defendants had nearly 17 full months to seek leave to introduce any claims on behalf of Mr. Batinich as well as their newly asserted claims for promissory estoppel, indemnification, and breach of the Stock Purchase Agreement. The did not try to add these counterclaims at any point during that lengthy period: neither after MRI filed the case against Mr. Batinich in December 2017; nor when his case was transferred to the District of Minnesota in July 2018; nor when his case was consolidated with this one in March 2019. Rather than seeking to introduce those counterclaims at any earlier point, they asserted them for the first time in response to the SAC. Applying the "moderate" approach discussed above, the Court finds that the Defendants should not be permitted to add such claims without first obtaining leave of court.

Even if the Defendants' briefing in this matter were construed as a motion for leave to amend under Rule 15(a), the Court would deny such a request due to undue delay and because granting leave to amend would be unfairly prejudicial to MRI. *See, e.g.*, *Reuter v. Jax Ltd., Inc.*, 711 F.3d 918, 922 (8th Cir. 2013) (providing that although leave to amend should be freely given under Rule 15(a), leave may be denied "if there are

---

opportunities; unjust enrichment; conversion; misappropriation of trade secrets; breach of the stock purchase agreement; indemnification; breach of a duty of loyalty regarding Mr. Batinich's employment; and common law fraud. The SAC adds claims of malicious injury, business defamation, and civil theft, but the conduct forming the basis of these additional claims is no different from the conduct that has been consistent throughout the various iterations of MRI's pleadings. Defense counsel has conceded that the addition of these claims did not form the basis for asserting any counterclaim that had not already been pled.

compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment"); *see also IBEW Local 98 Pension Fund v. Best Buy Co., Inc.*, 326 F.R.D. 513, 527 (D. Minn. 2018) (noting that denial of leave to amend based on undue delay must also be accompanied by a finding of unfair prejudice). Defendants suggest that they have not delayed in bringing any of their truly new counterclaims, but rather brought them at the first available opportunity given the time during which their motion to dismiss the SAC was pending. But even accepting their unsupported argument that they could not have made a motion for leave to assert additional counterclaims after May 17, 2019, when they filed their motion for judgment on the pleadings, this argument overlooks the many months when the Defendants could have sought leave to assert such claims before that motion was filed. Indeed, they could have filed a motion to amend at any time during the nearly 17 months after they filed their Original Counterclaims. Instead, they have asserted the truly new counterclaims as an afterthought and have attempted to justify it despite their concession that the SAC provided no basis for adding new claims. This undue delay would be accompanied by significant prejudice to MRI if the Court were to allow a late amendment of the Defendants' counterclaims. Any additional litigation on the truly new counterclaims would necessitate a continuance and a reopening of periods of this litigation that have long been closed. The Court declines to allow the introduction of new material in the New Counterclaims to magically reset this litigation so that the Defendants can get a second chance to litigate the case more diligently than they have up to this point.

The Court also notes that the Defendants never asked the Court to modify the scheduling order to allow them to bring a motion to amend after the July 12, 2019 deadline. Under Rule 16(b)(4), such a modification can occur when there is good cause, but here, the Defendants' concessions belie its existence. Defense counsel acknowledged that none of the claims in the SAC gave rise to a new counterclaim, except perhaps MRI's indemnification claim against Mr. Brown. This was somewhat curious, given that the FAC contained an indemnification claim as well. [ECF No. 59 ¶¶ 197–201, Count XIV (asserting a claim for indemnification under Sections 6.5 and 8.2 of the Stock Purchase Agreement); ECF No. 251 ¶¶ 146–48, Count X (same).] In any event, MRI withdrew that claim without prejudice in February this year. [ECF No. 382.] Despite the Defendants' argument that MRI simply moved the claim to *The MBM Lawsuit*, MRI's most recent pleading in that case includes no claims against Mr. Brown at all. And defense counsel confirmed that an Order in this case preventing Mr. Brown from asserting his indemnification counterclaim here would only mean that it would have to be litigated elsewhere, if at all. But perhaps most importantly, there is no good cause for allowing any late motion to amend in this case because the Defendants have not identified anything they learned after the deadline for amendment of the pleadings expired that gave rise to any of the truly new counterclaims. This is a classic situation where, had the Defendants acted diligently, there is no reason they could not have sought leave to amend in a more timely fashion.

## RECOMMENDATION

For the reasons stated above, **the Court makes the following recommendations:**

1.      MRI's Motion for Dismissal of Counterclaims Based Upon Lack of Damages, Judicial Estoppel, and Stipulation of Admitted Facts (ECF No. 360) should be **GRANTED IN PART** and **DENIED IN PART** as follows:

    a.  The motion should be denied without prejudice to the extent that MRI seeks dismissal of claims based on the doctrine of judicial estoppel or the effect of the Defendants' alleged admissions by operation of Rule 36;

    b.  The motion should be denied to the extent that MRI seeks dismissal of several Counts in the New Counterclaims based on a failure to disclose information relating to damages; and

    c.  The motion should be granted to the extent that the Defendants should not be allowed to use any documentary evidence to support a damages claim on a motion, at a hearing, or at trial.

2.      MRI's Motion for Dismissal of Counterclaims (ECF No. 394) should be **GRANTED IN PART** and **DENIED IN PART** as follows:

    a.  The motion should be denied to the extent MRI seeks dismissal of Counts I (breach of contract), II (tortious interference with prospective economic advantage), III (defamation), IV (tortious interference with contractual relationships), VII (common law fraud), VIII (negligent misrepresentation), and X (unjust enrichment) of the New Counterclaims for failure to state a

claim because MRI could have raised its arguments previously, but failed to

do so;

      b.   The motion should be granted to the extent MRI seeks dismissal of all

claims asserted on behalf of Mr. Batinich because they are untimely; and

      c.   The motion should be granted to the extent MRI seeks dismissal of Counts

XI (promissory estoppel), XII (indemnification), and XIII (breach of

promissory note) from the New Counterclaims because they are untimely.

Date: July 29, 2020

                                          *s/Katherine Menendez*
                                          Katherine Menendez
                                          United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.