UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Management Registry, Inc. | Case No. 0:17-cv-5009-JRT-KMM |
| Plaintiff, | |
| v. | **ORDER** |
| A.W. Companies, Inc., et al. | |
| Defendants. | |

This matter is before the Court on Management Registry Inc.'s ("MRI") motion to disqualify Defendants' counsel, Nilan Johnson Lewis P.A. ("NJL"). ECF No. 491. MRI argues that NJL's representation of the Defendants violates several provisions of the Minnesota Rules of Professional Conduct ("MRPC") because NJL attorneys previously received confidential information from a former co-defendant in this case, Eric Berg, and NJL has since taken positions against Mr. Berg's interests in related proceedings. For the reasons that follow, the motion to disqualify is denied.

**I.    Background**

In November 2017, MRI filed its initial complaint against A.W. Companies, Inc., Al Brown, Wendy Brown, and Mr. Berg. The Court will refer to this group as "the Original Defendants." In late 2017 and early 2018, the Original Defendants were represented by Darren Sharp and Lawrence Schaefer from the Schaefer Halleen law firm, and the parties began discussing settlement. At the same time, the Original Defendants

1

were considering hiring a different law firm to represent them going forward. They reached out to a number of law firms in the Twin Cities area, one of which was NJL.

As part of their early efforts at settlement, MRI and the Original Defendants arranged to mediate before Retired Judge John W. Borg in January 2018. Because the Original Defendants were considering retaining NJL at that time, NJL attorneys Joel O'Malley and Katie Connolly agreed to attend the mediation along with the Original Defendants and the attorneys from Schaeffer Halleen. On January 5, 2018, the parties mediated the case with Judge Borg, and O'Malley and Connolly attended as planned. After the mediation failed to result in a settlement, however, NJL and the Original Defendants did not reach an agreement regarding representation. Instead, the Original Defendants decided to retain attorneys with the Sapientia Law Group to represent them.

Sapientia's involvement in the case did not last, however, because a rift developed among the Original Defendants that created a conflict of interest. Specifically, while the litigation was in its relatively early stages, Mr. Berg became adverse to the Browns and AW Companies. The conflict was raised with this Court, and shortly thereafter, the Sapientia lawyers withdrew. The Browns and AW Companies then retained attorneys from Stinson Leonard Street LLP to represent them.

On July 2, 2018, attorney Scott Moriarty filed a notice of appearance on behalf of Mr. Berg, and the same day, Mr. Berg and MRI filed a stipulation for dismissal of Mr. Berg from the lawsuit. The District Court adopted the stipulation, and Mr. Berg ceased being a party to this dispute. The litigation continued with lawyers from the Stinson firm representing the remaining Defendants until April 9, 2019. On April 9th,

2

attorney Alexander Loftus appeared on behalf of AW Companies, the Browns, and Milan Batinich.[1]

Meanwhile, in December 2018, Mr. Berg had filed a lawsuit in Hennepin County District Court on behalf of himself and his consulting company against AW Companies and the Browns. This Court has previously referred to that case as "the Berg Litigation." There, Berg asserted breach-of-contract and fraud claims against the Browns and AW Companies. His claims were tried to a jury in February 2020, and Berg was awarded damages. The Browns and AW Companies filed an appeal in April 2020, and Mr. O'Malley signed the appeal brief in the Berg Litigation. Up until that time, neither Mr. O'Malley nor any other NJL attorney was involved in the Berg Litigation.

In the present federal case, on April 28, 2020, Mr. O'Malley and Ms. Connolly appeared as local counsel for Defendants. That appearance was entered just over a week after this Court recommended the imposition of significant sanctions against Mr. Loftus and the Defendants for discovery irregularities and misconduct. For the next few months, Mr. Loftus continued as the Defendants' lead counsel, but he ultimately withdrew from the case on September 2, 2020. The same day, NJL attorneys Donald Lewis, Ms. Connolly, and Mr. O'Malley entered appearances as the Defendants' lead counsel in this proceeding. Mr. Lewis, Ms. Connolly, and Mr. O'Malley have also been involved in a related arbitration concerning Mr. Brown's employment agreement with MRI.

---

[1]  Mr. Batinich was not originally a defendant in this action, but MRI's related case against him has been consolidated with this proceeding.

3

MRI did not move to disqualify NJL in April 2020. Instead, the motion to disqualify followed on the heels of yet another unfortunate discovery issue in this matter. During a March 10, 2021 hearing addressing other matters, MRI's counsel, James Morris, and defense counsel advised the Court that NJL had recently produced over 90,000 previously undisclosed documents from the Defendants, documents that should have been produced long before. Remarkably, for at least three different reasons, none of which were the fault of NJL's attorneys, these documents had never been provided to MRI. NJL produced the large tranche of documents without conducting a complete privilege review because defense counsel wanted to ensure that MRI received the materials as soon as possible. In conducting the review of this extremely belated production, Mr. Morris and his team discovered materials indicating that Mr. O'Malley and Ms. Connolly had been involved in the January 5, 2018 mediation and had communicated with the Original Defendants and their Schaeffer Halleen lawyers leading up to and following the mediation.

Mr. Morris believed these documents showed that NJL had a prior attorney-client relationship with Mr. Berg in connection with the mediation. He became concerned that NJL's continued representation of the Defendants in this case, and the steps taken by the Defendants in the Berg Litigation and the companion arbitration to discredit Mr. Berg,

could be a violation of ethical rules. He was also concerned that his own ethical obligations required him to address these issues.[2]

Concerned that NJL may have received privileged communications from Mr. Berg, provided him legal advice, and then improperly disclosed or used that privileged information against Mr. Berg, Mr. Morris notified Mr. Moriarty about a perceived conflict of interest. Mr. Moriarty sent NJL a lengthy letter on April 16, 2021 regarding the alleged conflict of interest. Among other things, Mr. Moriarty's April 16th letter suggested that Mr. Berg had received legal services from NJL, engaged in privileged communications with Mr. O'Malley and Ms. Connolly, and that NJL's continued involvement in this case would jeopardize Mr. Berg's attorney-client privilege and violate several provisions of the MRPC. In the end, NJL, MRI, and Mr. Berg were not able to resolve their differences regarding the ethical issues MRI alleged, and MRI filed the motion to disqualify NJL from continuing to represent the Defendants.

## II.     Legal Standard

Disqualification of opposing counsel is an "extreme measure" to be imposed "only when absolutely necessary." *Macheca Transp. Co. v. Philadelphia Indem. Co.*, 463 F.3d 827, 833 (8th Cir. 2006) (quoting *Banque Arabe Et Internationale D'Investissement v. Ameritrust Corp.*, 690 F. Supp. 607, 613 (S.D. Ohio 1988)). Motions to disqualify receive

---

[2] MRI's memorandum in support of its motion to disqualify asserted that NJL also accused Mr. Berg of committing perjury. However, during the May 26, 2021 hearing on the motion, Mr. Morris did not persist in the claim that NJL had accused Mr. Berg of perjury. Mr. Moriarty also indicated in his letter, filed after NJL's response to the motion for disqualification, that he does not believe any accusation of perjury has been made. ECF No. 509 at 2–3.

"strict scrutiny" because of the "potential for abuse by opposing counsel." *Id.* (quotations omitted); *Jackson v. Ossell*, Civil No. 17-5483 (JRT/BRT), 2019 WL 2137368, at *3 (D. Minn. May 16, 2019) (same).[3] However, "legitimate doubts" are resolved in favor of disqualification. *Olson v. Snap Prods., Inc.*, 183 F.R.D. 539, 542 (D. Minn. 1998). The party seeking disqualification of an opponent's counsel bears the burden of demonstrating that continued representation is not permissible. *Id.*

The decision whether to disqualify counsel is left to the trial court's discretion. *In re RFC and Rescap Liquidating Trust Litig.*, Civil Nos. 13-3506 (SRN/HB, 13-3451 (SRN/HB), 2016 WL 7177706, at *5 (D. Minn. Dec. 8, 2016). "Factors to consider when determining whether to disqualify counsel include the balance of interests between the attorneys, clients and the public as well as the court's duty to maintain public confidence in the legal profession and its duty to insure the integrity of the judicial proceedings." *Id.* (quotations omitted). Courts also consider a party's important right to choose its own counsel, but that interest "may be overridden when compelling reasons exist." *Id.* (quotations omitted). In addition, courts must guard against the risk that a party's own confidential information could be used against it unfairly. *Gifford v. Target Corp.*, 723 F.

---

[3]    The Court declines to find that MRI or Mr. Morris brought this motion to gain a tactical advantage over the Defendants, to harass MRI's opponents, or for another improper purpose. The record reflects that Mr. Morris believed himself ethically obligated to report what he thought to be violations of the Minnesota Rules of Professional Conduct. Mr. Morris has further represented that he checked with his own Bar Counsel in Kentucky regarding the proper way to raise the issues presented in the disqualification motion. Under these circumstances, the Court finds it unnecessary to explore whether this motion was brought for an improper purpose, a concern addressed at times in the jurisprudence surrounding motions to disqualify counsel.

6

Supp. 2d 1110, 1117 (D. Minn. 2010). "Disqualification is appropriate where an attorney's conduct threatens to work a continuing taint on the litigation and trial." *Arnold v. Cargill, Inc.*, Civ. No. 01-2086, 2004 WL 2203410, at *5 (D. Minn. Sept. 24, 2004).

### III. Discussion

All the parties agree that the MRPC govern the conduct of counsel appearing before this Court. D. Minn. LR 83.6(a). In the motion to disqualify, MRI points to several MRPC provisions, including Rule 1.6 (Confidentiality of Information); Rule 1.7 (Conflict of Interest: Current Clients); Rule 1.9 (Duties to Former Clients); and Rule 1.18 (Duties to Prospective Client). The Court concludes that MRI has failed to show that NJL or any of its attorneys has violated their ethical obligations.

In addition to finding no violation of any ethical rule, the denial of the motion to disqualify is based on the reality that there is no indication NJL improperly gained access to MRI's own privileged or confidential information. As a result, there is no potential risk that MRI's confidential information could be used against it by Mr. Lewis, Ms. Connolly, or Mr. O'Malley. There is also no evidence in the record indicating that Mr. Berg revealed any confidential information to NJL at any time that could taint the remainder of this case should NJL continue representing the Defendants.

*MRPC 1.6*

MRI asserts that NJL has violated Rule 1.6. In relevant part, the Rule provides that "[a] lawyer shall make reasonable efforts to prevent the inadvertent or unauthorized disclosure of, or unauthorized access to, information relating to the representation of a client." MRPC 1.6(c). MRI and Mr. Berg suggest that Mr. O'Malley and Ms. Connolly

7

must have received privileged communications from Mr. Berg in connection with the January 5, 2018 mediation. However, MRI has not identified any unauthorized disclosure of confidential information. Mr. O'Malley and Ms. Connolly have both declared, under penalty of perjury, that they cannot recall any communications with Mr. Berg before, during, or after the mediation. They have also averred that their records contain no such communications with Mr. Berg. There is no basis before the Court to disregard such averments by members of the Bar who are in good standing and have conducted themselves with integrity before this Court. Accordingly, MRI has failed to show that NJL should be disqualified for a violation of Rule 1.6(c).

This conclusion is further supported by the absence of any evidence directly from Mr. Berg regarding any alleged unauthorized disclosure or use. Mr. Berg has not submitted any evidence showing that NJL obtained confidential information from him. Nor has he provided any support for the suggestion that NJL improperly disclosed such information. Moreover, neither Mr. Moriarty's April 16, 2021 letter to NJL, nor his May 20, 2021 letter to the Court identifies unauthorized disclosure or use of any confidential information by NJL attorneys. Indeed, Mr. Moriarty's April 16th letter states that he is unaware of any disclosures of Mr. Berg's confidential information, and the May 20th letter does not change that reality. Under these circumstances, the Court finds disqualification neither necessary nor appropriate to protect the integrity of these proceedings.

*MRPC 1.9*

MRI asserts that NJL's continued representation of Defendants violates Rule 1.9(a).[4] Under Rule 1.9(a):

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

MRPC 1.9(a). "A party seeking disqualification of opposing counsel under Rule 1.9(a) must establish that (1) the moving party and opposing counsel had a prior attorney-client relationship, (2) the interests of opposing counsel's current client are materially adverse to the interests of the moving party, and (3) the present lawsuit is substantially related to a matter in which opposing counsel previously represented the moving party." *State ex rel. Swanson v. 3M Co.*, 845 N.W.2d 808, 816 (Minn. 2014).

For two critical reasons, the Court finds no violation of this Rule. As an initial matter, the Court notes that the "moving party" in this instance is MRI. MRI does not argue and has not shown that it ever had a prior attorney-client relationship with NJL or any of its attorneys. As a result, MRI cannot establish a violation of Rule 1.9(a) with respect to its own interests. Whether articulated as a matter of "standing" to seek

---

[4] Although MRI highlighted language from Rule 1.9(b) in its memorandum supporting the motion for disqualification, during the hearing, MRI did not persist in this claim. That Rule provides that "[a] lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 1.6 and Rules 1.9(c)…." MRPC 1.9(b). In any event, none of the NJL lawyers representing the Defendants have moved from one firm to another, so Rule 1.9(b)'s prohibition is inapplicable.

9

disqualification or by the use of some other term, the absence of a prior attorney-client relationship means that MRI cannot meet its burden for disqualification under Rule 1.9(a)

MRI nevertheless suggests that disqualification under this Rule is warranted because Mr. Berg is NJL's former client, and NJL's continued representation of Defendants in this case is prohibited because the Defendants' interests are materially adverse to Mr. Berg's. But here again, it is worth noting that MRI is the moving party, not Mr. Berg, a distinction that the Court finds material. Although Mr. Berg intervened earlier in this case to protect his own interests regarding a previous violation of the Protective Order, he has not sought permission to intervene to seek disqualification of NJL. Whenever permissible, this Court seeks not to elevate formal requirements over pragmatics, especially where doing so will unnecessarily delay or distract from reaching the merits of a contested issue. Despite such efforts at practicality, the lack of either intervention by Mr. Berg or a motion asserting his own interests are not mere formalities that can be easily overlooked. The remedy sought here—disqualification of Defendants' chosen counsel—is one courts generally consider to be extreme. And the interests at stake belong to Mr. Berg, meaning that he should act to advance those interests if he believes they truly need protection from continued involvement of NJL. The fact that he did not find it appropriate to make a motion on his own behalf and provide evidence to support any accusation of unethical conduct by defense counsel leaves the Court without a moving party asserting a conflict of interest.

Second, even more critical than the "standing" of MRI to raise this issue is the reality that there has been no showing that NJL ever formed an attorney-client

relationship with Mr. Berg, a prerequisite for disqualification under Rule 1.9(a). The record reveals that leading up to the January 2018 mediation, NJL's involvement was quite limited, both overall and with respect to Mr. Berg specifically. It is apparent that Mr. O'Malley and Ms. Connolly exchanged some communications with the Original Defendants and their attorneys from Schaeffer Halleen. However, these messages largely involved preparations in the event an agreement for NJL to take over the case was reached. The only written communications of real substance involved Ms. Brown discussing a subpoena issue and possible legal arguments related to an attached document. These communications involved the attorneys from Schaeffer Halleen and Mr. O'Malley, but they did not include Mr. Berg. Other relevant communications include: an email Mr. O'Malley sent himself during the mediation summarizing the parties' settlement positions; a message from Mr. Sharp forwarding MRI's discovery requests to Mr. O'Malley; and draft representation agreements that the Original Defendants never executed.

Mr. O'Malley also exchanged some emails with the Browns during the days following the January 2018 mediation regarding potential representation. These communications concerned potential payment terms for a joint representation of the Original Defendants. Mr. O'Malley sent other emails to other NJL lawyers, discussing steps that would need to be taken if the firm ultimately ended up taking the case. In the end, NJL did not represent the Original Defendants, and Mr. Sharp informed the Browns and Mr. Berg that NJL would not be taking the case. By January 30, 2018, attorneys from the Sapientia Law Group entered an appearance on behalf of the Original Defendants,

and Schaeffer Halleeen withdrew from the case. According to the Declarations of Mr. O'Malley and Ms. Connolly, none of these communications include a request for legal advice from Mr. Berg, and they do not recall ever receiving a request for legal advice from Mr. Berg before, during, or after the mediation.

From these facts, there is no basis to conclude that Mr. Berg ever formed an attorney-client relationship with NJL under either a contract or tort theory of attorney-client relationship. There is no evidence of offer, acceptance, and consideration that could establish a contractual basis for such a relationship between NJL and Mr. Berg. *See TJD Dissolution Corp. v. Savoie Supply Co., Inc.*, 460 N.W2d 59, 62 (Minn. Ct. App. 1990) (finding no attorney-client relationship under the contract theory where there was never a mutual exchange of promises and no bills submitted for services rendered). Neither MRI nor Mr. Berg suggests otherwise.

Under the tort theory, "an attorney-client relationship is created whenever an individual seeks and receives legal advice from an attorney in circumstances in which a reasonable person would rely on such advice." *Id.* (quoting *Togstad v. Vesely, Otto, Miller & Keefe*, 291 N.W.2d 686, 692 (Minn. 1980)). There is no evidence before the Court indicating that Mr. Berg sought or received legal advice from Mr. O'Malley, Ms. Connolly, or any other lawyer from NJL. A text message Mr. Berg sent shortly before the mediation indicates that he thought NJL might be taking over the case, but that never came to pass. Meanwhile, Mr. Berg and the other Original Defendants continued to be represented by Schaeffer Halleen during and after the failed mediation, and that firm

advised them that NJL would not take the case. As a result, the Court concludes that Mr. Berg was never a former client of NJL under the tort theory.

Because a violation of Rule 1.9(a) requires a showing that there was a prior attorney-client relationship, and no evidence of such a relationship has been provided, disqualification is not appropriate.

### *MRPC 1.7*

MRI further suggests that NJL should be disqualified for violating Rule 1.7, which addresses conflicts of interests for current clients. Under Rule 1.7(a), a lawyer is prohibited from representing a client if the representation involves a "concurrent conflict of interest." Such a conflict is present where "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person, or by a personal interest of the lawyer." MRPC 1.7(a)(2). MRI contends that NJL should be disqualified because its representation of the Defendants will be materially limited by NJL's responsibilities to Mr. Berg as a former client. However, for the reasons explained above, Mr. Berg is not a former client of NJL. As a result, the Court finds that Rule 1.7(a)'s provisions are inapplicable to this case.

### *MRPC 1.18*

Finally, the disqualification motion addresses the terms of Rule 1.18, which outlines counsel's duties to prospective clients. NJL does not dispute that Mr. Berg was a prospective client. Rule 1.18(b) provides:

> (b) Even when no client-lawyer relationship ensues, a lawyer who has consulted with a prospective client shall not use or reveal information obtained in the consultation, except as Rule 1.9 would permit with respect to information of a former client.
>
> (c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter….

MRPC 1.18(b) & (c). With respect to the use or disclosure of information, Rule 1.9 states:

> A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter: (1) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client, or when the information has become generally known; or (2) reveal information relating to the representation except as these rules would permit or require with respect to a client.

MRPC 1.9(c). MRI argues that NJL has violated Rule 1.18 by challenging Berg's credibility; accusing him of canceling contracts without the Browns' knowledge; asserting that he lied to certain customers; and accusing him of causing the damages that MRI seeks to recover in this litigation. For the reasons that follow, the Court concludes that MRI has failed to show any violation of Rule 1.18 by NJL.

As an initial matter, Rule 1.18(c) provides only that a lawyer cannot represent a party when it received information from a materially adverse prospective client that could be "significantly harmful" to that prospective client. MRPC 1.18(c). However, neither MRI nor Mr. Berg has shown that Mr. Berg ever actually provided information to NJL in connection with the mediation or otherwise, let alone information that could be

14

"significantly harmful" to him. MRI and Mr. Moriarty's May 20th letter suggest only that NJL must have received confidential information from Mr. Berg because Mr. O'Malley and Ms. Connolly attended the January 2018 mediation and were aware of the Original Defendants' settlement positions and views on settlement. This contention is not persuasive for two reasons. First, the only evidence before the Court is that neither O'Malley nor Connolly recall receiving such information as part of their limited involvement in the mediation, and their written communications further support that they did not. Second, the party seeking to disqualify opposing counsel bears the burden of showing that disqualification is warranted. Mr. Berg and MRI invite the Court to presume that NJL received potentially disqualifying information from Mr. Berg, but such a presumption would impermissibly shift the burden to NJL, instead of on the moving party. The Court declines to reallocate the burden in that manner.

    Rule 1.18(b) prohibits a lawyer's use or disclosure of information learned during a consultation with a prospective client, except under circumstances where Rule 1.9 would allow the lawyer to use or disclose it. "Information that has been disclosed to the public or to other parties adverse to the former client ordinarily will not be disqualifying." MRPC 1.9, cmt. 3. MRI has pointed to places in the record, both in this case and in the Berg Litigation, where Defendants have placed the blame on Mr. Berg or challenged his credibility. However, the information to which MRI points in its motion consists of testimony that Mr. Berg provided by several affidavits submitted in this case, his own deposition testimony, and his testimony in the February 2020 trial in the Berg litigation. None of that testimony is information that NJL obtained from Mr. Berg when he was a

15

prospective client of NJL. And because that information was made available to adverse parties, including the Defendants, NJL is not prohibited from referencing it in its representation of the Defendants in this case.

### IV. Conclusion

For the reasons stated above, the motion to disqualify is **DENIED**. The Court will schedule a phone conference with the parties to discuss the next steps in this litigation.

Date: June 15, 2021

       *s/Katherine Menendez*
       Katherine Menendez
       United States Magistrate Judge