# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

MANAGEMENT REGISTRY, INC.,

                                             Civil No. 17-5009 (JRT/DTS)

                              Plaintiff

v.                                    **ORDER DENYING PLAINTIFF'S MOTION**
                                      **TO SHOW CAUSE AND DENYING**
A.W. COMPANIES, INC., ALLAN K.        **PLAINTIFF'S MOTION FOR RENEWED**
BROWN, WENDY BROWN, and MILAN         **SANCTIONS**
BATINICH,

                              Defendants

Anna Koch, Nicholas N. Sperling, and V. John Ella, **TREPANIER MACGILLIS BATTINA, PA,** 8000 Flour Exchange Building, 310 South Fourth Avenue, Minneapolis, MN 55415; James M. Morris, **MORRIS & MORRIS P.S.C.**, 217 North Upper Street, Lexington, KY 40507 for Plaintiff.

Donald M. Lewis, Joel Andersen, and Katie M. Connolly, **NILAN JOHNSON LEWIS PA,** 250 Marquette Avenue, Suite 800, Minneapolis, MN 55401, for Defendants.

Plaintiff Management Registry, Inc. ("MRI") brought claims against A.W. Companies, Inc. ("A.W."), Allan Brown, Wendy Brown, and Milan Batinich (collectively "Defendants") for events that transpired after a corporate acquisition went wrong. The Defendants answered and filed several counterclaims alleging misconduct by MRI. MRI initially bought several companies from an entity partially owned by Allan Brown. Allan Brown supported the sale of the companies based on the understanding that MRI would in turn sell a portion of those companies to Wendy Brown. The sale to Wendy Brown

never took place.  In the fallout from the second sale, the Defendants created a new company, A.W., and took several employees and clients from MRI.

In the two motions at issue here, MRI argues that the Defendants should once again be sanctioned for their failure to conduct themselves honestly in the discovery process.  MRI asserts that no financial sanction will be sufficient to punish the Defendants for their wrongdoing, and as such, the Court should enter declaratory judgment against the Defendants on MRI's claims, dismiss the Defendants' counterclaims, and order the Defendants and several non-defendant declarants to show cause as to why they should not be held in contempt for perjuring themselves.

Because MRI fails to demonstrate any prejudice it suffered or any actual wrongdoing on the part of the Defendants or Defendants' current attorneys that has not already been punished by the Court's previous sanctions order, the Court will deny both of MRI's motions for sanctions.

## BACKGROUND

### I.   Factual Background

This case's tortured discovery process has dragged on for years and was thoroughly outlined in Magistrate Judge Menendez's Report and Recommendation recommending that the Court sanction the Defendants and Defendants' attorney.[1]  (R&R, Apr. 20, 2020,

---

[1] Defendants have since obtained new counsel.

Docket No. 404; Order Adopting R&R, Aug. 21, 2020, Docket No. 442.)  Below is a brief overview of the discovery process in this case.

From the start of the case, Defendants and their attorney failed to adequately comply with discovery.  On November 15, 2020, the Magistrate Judge issued an order detailing the Defendants' discovery obligations.  (Mag. Judge Order, Nov. 15, 2019, Docket No. 359.)  Over the next several months, the Magistrate Judge issued several successive orders all intended to corral the Defendants and the Defendants' attorney into complying with the November 15 Order.  (Order in Response to Parties' Email, Jan. 29, 2020, Docket No. 380; Order, Feb. 13, 2020, Docket No. 387.)  Throughout that period, the Defendants produced discovery in batches, including at least one batch in early January 2020 and one in February 2020.[2]  In the end, due to the Defendants' continued failures to comply with discovery, the Magistrate Judge recommended that the Court sanction the Defendants and their counsel for their failure to adequately comply, and the Court adopted the recommendation.  (R&R; Order Adopting R&R.)

Several months after the Court issued sanctions—and after the Defendants had obtained new counsel—the parties engaged in an arbitration proceeding in Kentucky.  (Decl. of James M. Morris ("2nd Morris Decl.") ¶¶ 22–32, Oct. 25, 2021, Docket No. 536.)  By this point, the parties believed discovery was completed.  However, while preparing

---

[2] The Court does not have a record indicating every time discovery was produced, and so must rely on the parties' assertions.  However, the parties' do not contest that discovery was produced on January 6, and in early February.

for the arbitration, MRI discovered that the Defendants were relying on evidence that had not been produced. (*Id.* ¶¶ 27–30.) The Defendants and their new counsel determined that, due to unintentional error, they had failed to produce more than 100,000 text messages. (Decl. of James M. Morris ("1st Morris Decl.") ¶ 97, Oct. 20, 2021, Docket No. 528.) The Defendants immediately produced the missing documents. (Defs.' Mem. Opp. Mot. Sanctions at 19–21, Nov. 15, 2021, Docket No. 560.)

The Kentucky arbitrator granted MRI's request for costs and fees directly related to the late text message production, including "attorney fees and direct costs (court reporter, actual costs of depositions, costs of preparing the arguments seeking recovery, costs of preparing the petition, etc.) actually incurred as a direct result of being required to take or re-take depositions and submit this Motion." (Decl. of Katie M. Connolly ("Connolly Decl."), Ex. Q at 5–6, Nov. 15, 2021, Docket No. 564-14.) Additionally, MRI was permitted to take several additional depositions in 2021 after the production of the text messages with the Defendants covering the costs. (*Id.*; Order Addressing Issues at 1–2, Jan. 27, 2021, Docket No. 479; *see also* Defs.' Mem. Opp. Mot. Sanctions at 22–23.)

MRI now asserts that this Court's sanctions were inadequate to punish the Defendants for their wrongful actions, that the late production of text messages was just another indicator of Defendants' ongoing bad faith actions in discovery, and that MRI has

no confidence that it has received all the discovery to which it is entitled.  MRI requests

dispositive sanctions, attorney's fees, and spoilation sanctions.[3]

**ANALYSIS**

I.      **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 37 permits the imposition of sanctions "[i]f a party

. . . fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A).  The

Court may consider various sanctions, including:

(i)     directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii)    prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii)   striking pleadings in whole or in part;

(iv)    staying further proceedings until the order is obeyed;

(v)     dismissing the action or proceeding in whole or in part;

(vi)    rendering a default judgment against the disobedient party; or

(vii)   treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

*Id.*

---

[3] On August 8, 2022, MRI filed an additional motion for sanctions based on what it alleges are additional discovery violations it discovered after the Court held a hearing on this Motion through discovery produced in a separate case.  (Supp. Mot. Sanctions, Aug. 8, 2022, Docket No. 651.)  This Order does not address whether sanctions are appropriate for these alleged new violations and only considers filings and arguments made during and prior to the June 16, 2022, hearing.  Because the August 8 filings allege additional violations for which the Court has not held a hearing and discovery disputes are typically handled by magistrate judges in the first instance, the Court will direct the Magistrate Judge to address these new allegations, which the Magistrate Judge may do so in the context of the full history of this case notwithstanding this Order.

Rule 37 similarly provides for sanctions where a party fails to provide information as required by Rule 26(a) or (e), even without a court order.  Fed. R. Civ. P. 37(c)(1). "Courts also possess inherent authority to impose discovery sanctions, which may be imposed '[e]ven in the absence of a discovery order.'"  *In re Polaroid Corp.*, No. 08-46617, 2017 WL 1183983, at *7 (D. Minn. Mar. 29, 2017) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106–07 (2d Cir. 2002)).  This authority "is a broad and powerful tool" that "should be used sparingly," and "courts first should turn to specific rules tailored for the situation at hand, such as Rule 37, to justify sanctions.  Then, as an alternative basis for support or in circumstances where specific rules are insufficient, *i.e.*, when there is a need, it may be appropriate to invoke their inherent authority."  *Sentis Grp., Inc. v. Shell Oil Co*, 559 F.3d 888, 900 (8th Cir. 2009) (cleaned up).

Sanctions should not be lightly imposed but are important tools to "penalize those whose conduct may be deemed to warrant such a sanction" as well as "to deter those who might be tempted to such conduct in the absence of such a deterrent."  *Universal Coops., Inc. v. Tribal Co-op. Mktg. Dev. Fed'n of India, Ltd.*, 45 F.3d 1194, 1196 (8th Cir. 1995) (cleaned up) (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)).

## II.    DISCUSSION

MRI renews its previous motion for sanctions even though the Court already ruled on that motion and issued sanctions.  However, MRI now argues that the late disclosure of text messages and other documents renders the Court's sanctions insufficient and asks

the Court to issue dispositive sanctions, dismissing the Defendants' counterclaims and entering default judgment for MRI on its claims. Additionally, MRI argues that it has discovered new facts that give rise to spoilation and perjury sanctions.

### A.    Factual Contentions

MRI cites three factual points to support its arguments that the Defendants are continuing to act in bad faith and should face strict sanctions: (1) various employees of the Defendants issued false declarations and the declarations failed to conform to the requirements in the Magistrate Judge's orders; (2) Wendy Brown falsely declared that she had reviewed Tyler Brown's emails and produced all relevant communications between herself and current or former MRI employees and customers when several thousand messages had not been produced; and (3) the Defendants failed to disclose over 100,000 text messages and other documents until MRI discovered that they were attempting to use certain of those messages during the arbitration proceedings in Kentucky.

### 1.    A.W. Employee Declarations

On February 17, 2020, Defendants supplied several declarations concerning the production of A.W. employees' emails. A.W. employees Andrea Smith, Benjamin Gertz, Shawn Baker, Cleo Zanmiller, Jeanine Janos, Annie Bennett, and Tyler Brown submitted declarations. (1st Morris Decl. ¶ 24.) Nearly all the declarations contained substantially identical language (including a typo misstating the statute number). They read:

> Pursuant to 28 U.S.C. 146 [sic], [AW Employee Declarant], declare as follows:

1. I am an employee of defendant A.W. Companies in the above-entitled action.
2. On or about November 7, 2017 I was directed by James Morris to retain my email communications relating to MRI.
3. On or about November 10, 2017, I was directed by counsel for A.W. Companies to retain all my email communications.
4. I complied with both directions and retained all of my personal emails regarding A.W. Companies and MRI.
5. On or about February 10, 2020, I searched my personal emails saved pursuant to the two prior directives for all emails referring or relating to the parties in this case.
6. I produced all emails to or from anyone employed by A.W. Companies or MRI and all emails relating to the business of either A.W. Companies sent or received from my personal email [AW Employee Declarant's personal e-mail address] from October 23, 2017 to November 10, 2017 to Defendants' counsel.
7. My personal email account is my own and not the property of A.W. Companies. I never turned over my emails to A.W. Companies and instead preserved the emails as directed by counsel.
8. I swear and affirm this production is complete and all responsive documents have been produced.

February 18, 2020
/s/ AW Employee Declarant

(*Id.* ¶ 25.)

On February 11, 2020, Defendants turned over fewer than 100 emails from those A.W. employees. (*Id.* ¶ 32.) However, after "reverse-engineering" other discovery produced by Defendants, MRI discovered more than 700 other emails from those employees. (*Id.*; *see also* Mem. Supp. Mot. Show Cause at 11, October 20, 2021, Docket No. 531.) Most of the newly discovered emails, 564 emails, belonged to Allan Brown's son, Tyler Brown. (1st Morris Decl. ¶ 32.)

Additionally, MRI points out that paragraph 6 of the declaration states that the A.W. employees limited their search to an 18-day period in late 2017.  (*See id.* ¶ 25.) However, in her November 15 Order, the Magistrate Judge ordered the Defendants to produce A.W. employee emails from a much wider period.  (Mag. Judge Order ¶¶ 2–3, 5.)[4]

The Defendants argue that MRI's interpretation of declarations in relation to the emails turned over is incorrect.  They state that several of the "missing emails"—including 573 emails from Tyler Brown—were not missing from production, they were just produced to MRI during the January 6 production prior to the declarations and the February 11 production.   MRI contends it did not produce the "missing emails" on February 11 because they had already done so.  They then engage in an extensive analysis of several other individual missing emails that either (1) predated any litigation hold date, (2) were from outside the 18-day timeframe, or (3) were not to or from the employees'

---

[4] There are three relevant paragraphs in the Magistrate Judge's Order: (1) "Defendants shall conduct complete searches of A.W. Companies, Inc.'s employees' e-mail accounts regarding discussions of MRI and MRI's customers and shall provide communications to opposing counsel. . . . Defendants [agreed to] run these searches for employees' emails between 2017 and 2019." (Mag. Judge Order ¶ 2); (2) "Defendants shall conduct full searches of the personal e-mail accounts of Al Brown, Wendy Brown, and Tyler Brown used to discuss business matters during the late 2017 and early 2018 timeframe[.]" (*Id*. ¶ 3); and (3) "Defendants shall produce employee-related documentation, including but not limited to . . . relevant correspondence with employees . . . [and] letters . . . . These documents must be produced for the time period between October 30, 2017 and November 1, 2018."  (*Id*. ¶ 5.)

emails, but rather generated automatically and not necessarily visible in the employees' email boxes.[5]

### 2.     Wendy Brown's Declaration

In response to the Magistrate Judge's Order compelling Defendants to produce discovery, Wendy Brown submitted a declaration stating that she had (1) conducted full searches of the personal email accounts of Allan, Wendy, and Tyler Brown, (2) that she had produced all relevant communications between Defendants and any former or current MRI customer (including electronic messages in any form or application), and (3) that she had produced all communication between Defendants and former or current MRI employees from September 1, 2017 through March 2018.  (1st Morris Decl. ¶¶ 88–90.)  MRI argues that those assertions were false.

First, MRI argues that Wendy Brown did not conduct a search of Tyler Brown's email because hundreds of Tyler Brown's emails had not been produced.  Defendants' response again is that those emails had been produced, just not in the February 11 production.  MRI then argues that Wendy Brown could not have conducted a search of Tyler Brown's email because Tyler Brown declared "I never turned over my emails to A.W.

---

[5] MRI responds that several of the emails that Defendants argue were not wrongfully withheld based on the above reasons do not fit within those categories.  In particular, it points to emails from Annie Minenko that MRI states did not originate from Minenko's email, and states that the messages did not originate from Minenko's email but were forwarded by Minenko.  However, MRI presents no evidence to corroborate that assertion.  Moreover, as relevant to MRI's perjury and contempt arguments, MRI presents no argument or evidence that the emails withheld or missed pertained to material facts in this case.

Companies and instead preserved the emails as directed by counsel." (1st Morris Decl., Ex. A at 21–22, Oct. 20, 2021, Docket No. 528-1.)  MRI does not respond directly to that argument, but the response is readily ascertainable; Tyler Brown not turning over his emails to A.W. and that Wendy Brown conducting a search of his email are not mutually exclusive.  MRI provides no further factual support for its contention that either Tyler Brown or Wendy Brown was lying.

MRI also asserts that Wendy Brown falsely declared that she had produced the relevant communications of former or current MRI employees and customers because several thousand relevant text messages were not disclosed at that time and would not be disclosed until early 2021, during the Kentucky arbitration.  Defendants respond that the failure to produce was entirely unintentional and immediately rectified once discovered so Wendy Brown did not willfully lie in her declaration.

### 3.    Late Production of Text Messages

Finally, MRI contends that the Defendants late disclosure of text messages is an indication that they did not correct their behavior after the Court sanctioned them in April 2020.  It argues, without presenting any factual basis, that the Defendants' failure to turn over those messages and other bad acts in discovery are an indication that Defendants may not have disclosed all the materials they should have.  Thus, it argues, MRI and the Court have no reason to believe that the Defendants did not withhold or otherwise spoliate pertinent evidence.  The Defendants' response is simply that they did turn over all the relevant evidence, and any mistakes made after the imposition of sanctions were

unintentional and quickly rectified. Moreover, Defendants point out that the Kentucky Arbitrator awarded MRI attorney fees arising from the late production of text messages and that this Court permitted MRI to take several additional depositions with costs covered by the Defendants. (*See* 2nd Morris Decl. ¶ 24; Connolly Decl., Ex. Q at 5; Order Addressing Issues at 1–2.) Thus, any harm suffered by MRI was cured.

### B.    Legal Arguments

MRI argues that the allegedly faulty declarations, missing emails, and late disclosure of text messages are grounds for sanctions. Specifically, it argues that the declarants perjured themselves, that the declarants and the Defendants should be held in contempt, and the declarants and the Defendants spoliated evidence. MRI fails to present sufficient evidence to support a finding of any of the above.

#### 1.    Perjury

"Perjury occurs when a witness gives false testimony concerning a material matter with the willful intent to provide false testimony." *United States v. Waters*, 799 F.3d 964, 974 (8th Cir. 2015) (internal quotation marks omitted). Because perjury is fraudulent testimony, whether by oath or affirmation, when a witness commits perjury within the context of a civil case, courts have inherent authority to levy sanctions necessary to avert or correct a judgment based upon such fraudulent testimony. *Cf. Plaintiffs' Baycol Steering Comm. v. Bayer Corp.,* 419 F.3d 794, 802, 804 (8th Cir. 2005) (discussing courts' inherent power to impose sanctions to manage their cases and defining "perjury"). For example, the Eighth Circuit affirmed a dismissal of a plaintiff's claims where the plaintiff

lied in her deposition and her answers to the defendant's interrogatories. *Martin v. DaimlerChrysler Corp.*, 251 F.3d 691, 695 (8th Cir. 2001); *see also Chrysler Corp. v. Carey,* 186 F.3d 1016, 1020, 1023 (8th Cir. 1999) (affirming the striking of an answer and entering default judgment where multiple answers to interrogatories, document requests, and deposition testimony "were plainly perjurious and not credible"); *Pope v. Federal Exp. Corp.,* 974 F.2d 982, 983–84 (8th Cir. 1992) (affirming dismissal of a plaintiff's claims where the District Court found that the plaintiff had manufactured a note, allegedly written by one of the defendant's employees, which the plaintiff produced in response to a discovery request and testified about during her deposition).

"'A witness testifying under oath or affirmation violates [the federal perjury statute] if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *Baycol Steering Comm.,* 419 F.3d at 804 (quoting *United States v. Dunnigan,* 507 U.S. 87, 94 (1993)) (alteration in original). In *Martin,* the plaintiff testified in her deposition that she was never part of any previous lawsuits, despite the fact that she was the plaintiff in two prior lawsuits with identical claims. *Martin*, 251 F.3d at 693. The *Martin* plaintiff also responded in her interrogatories and deposition that she only received treatment by professionals in St. Louis, Missouri, despite the fact that her medical records revealed that she received treatment in Oklahoma and the filings within her previous divorce proceeding showed that she received treatment in Oklahoma. *Id.*

-13-

In *Martin,* either the court or medical records were false or the Plaintiff's deposition testimony and affidavit were false.  *Cf.* Minn. Stat. § 609.48, subd. 3 (stating that perjury is shown in part where "the declarant has made two inconsistent statements under such circumstances that one or the other must be false").  Furthermore, showing that a witness's statement "may have been contradicted by another witness" or that a witness's "statements are not entirely consistent" is not sufficient to show perjury.  *United States v. Nelson,* 970 F.2d 439, 443 (8th Cir. 1992).

As indicated by these cases, perjury must be proven definitively before a Court can exercise its inherent authority to levy sanctions that preclude the jury from reaching its own conclusion as to the testimony.  *See, e.g.*, *Baycol Steering Comm.*, 419 F.3d at 804–05; *Pope*, 974 F.2d at 984.

MRI has not shown, and the Court cannot determine with certainty, whether the declarants intentionally and willfully lied in their declarations.  They attested that they reviewed the emails they received within a specified period and turned over the emails they discovered in that timeframe.[6]  They did not declare that they turned over the emails after the declaration, thus the fact that the emails did not appear in the February 11 production does not prove that they lied.  Moreover, any emails that may not have been

---

[6] While MRI points out that the timeframe was likely shorter than the period the Magistrate Judge ordered the Defendants to review, that is not relevant to perjury.  Moreover, MRI waited nearly two years before raising this issue, and it raised no concerns about the timeframe when the Court was initially determining whether to sanction the Defendants.

turned over, even if they should have been, may not have been maliciously or intentionally withheld.   Therefore, the Court will deny MRI's motion to sanction the Defendants and the declarants for perjury.

### 2.    Civil Contempt

"A party seeking civil contempt bears the initial burden of proving, by clear and convincing evidence, that the alleged contemnors violated a court order." *Chicago Truck Drivers v. Bhd. Labor Leasing*, 207 F.3d 500, 505 (8th Cir. 2000).   "Civil contempt may be employed either to coerce the defendant into compliance with a court order or to compensate the complainant for losses sustained, or both.   Either incarceration or a fine may accomplish the purpose of coercion[.]"   *Id.* (citation omitted).   MRI argues that the Defendants violated the Magistrate Judge's order in two ways: (1) they failed to turn over all discovery since they failed to turn over the text messages and other documents until early 2021 and (2) the declarants truncated the range of their search without justification.

First, MRI has already been compensated for the losses it suffered from the late disclosure of evidence, both by compensation from the Defendants at the direction of the Kentucky arbitrator, and by this Court when it permitted MRI to conduct several additional depositions at the Defendants' cost.   Moreover, the Court has no reason to

coerce the Defendants into compliance with the order since the Defendants have now complied.[7]

Second, as mentioned above, the limited timeframe of the search for evidence—while likely a violation of a Court order—occurred two years ago and was only brought before the Court on the eve of summary judgment.  Moreover, MRI fails to present a compelling argument that it was harmed by this limitation or explanation for the delay. Additionally, because MRI did not engage in an analysis of the emails produced on January 6, 2020, it is unclear if the emails produced there were also limited to the 18 days in late 2017 or if they covered the wider timeframe ordered by the Magistrate Judge. Sanctioning the Defendants at this point does not benefit the progression of the litigation. MRI does not request fees as a sanction; in fact they state that ordering fees is futile. Holding the Defendants and declarants in contempt would greatly delay the litigation and it is doubtful that any valuable discovery would be produced.  Therefore, the Court will deny MRI's motion to order the Defendants to show cause or be found in contempt of court.

### 3.    Spoliation

Spoliation is the intentional destruction of evidence with the intent to hide the truth. *See Cenveo Corp. v. S. Graphic Sys., Inc.*, No. 08-5521, 2010 WL 3893709, at *4 (D.

---

[7] Moreover, it appears that the failure to overturn the discovery was unintentional.  And while MRI contends that there is more evidence yet to be turned over, they present no evidence nor convincing argument to support that assertion.

Minn. Sept. 30, 2010). Courts may impose sanctions when there is resulting prejudice to the opposing party. *Id*. "A spoliation sanction requires a finding of intentional destruction of evidence indicating a desire to suppress the truth." *Greyhound Lines, Inc. v. Wade,* 485 F.3d 1032, 1035 (8ᵗʰ Cir. 2007) (internal quotation marks omitted). Courts may rely upon inferences to find that a spoliator had the requisite intent to destroy the evidence and suppress the truth. *See Morris v. Union Pac. R.R.,* 373 F.3d 896, 901 (8ᵗʰ Cir. 2004). "Intent rarely is proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." *Id.* Moreover, there must be a finding of prejudice to the opposing party before imposing a sanction for destruction of evidence. *Dillon v. Nissan Motor Co., Ltd.,* 986 F.2d 263, 267 (8ᵗʰ Cir. 1993).

MRI fails to present any evidence, direct or indirect, that indicates that the Defendants intended to destroy evidence. Even if the Court were to infer that the Defendants intended to destroy evidence based on the fact that the Defendants were noncompliant with Court orders throughout the first few years of the litigation, MRI would still fail on the second required finding. MRI merely states that this "spoliation" affects every facet of the litigation. It does not provide any evidence or indication of prejudice. Therefore, the Court will deny MRI's motion for sanctions for spoliation of evidence.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion to Show Cause [Docket No. 527] is **DENIED**;

2. Plaintiff's Renewed Motion for Sanctions [Docket No. 534] is **DENIED**; and

3. Plaintiff's Supplemental Motion for Sanctions [Docket No. 651] is referred to the Magistrate Judge for additional proceedings.

DATED:  September 26, 2022
at Minneapolis, Minnesota.

                    JOHN R. TUNHEIM
             United States District Judge