## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

MANAGEMENT REGISTRY, INC.,

Civil No. 17-5009 (JRT/DTS)

Plaintiff,

v.

A.W. COMPANIES, INC.; ALLAN K.
BROWN; WENDY BROWN; and MILAN
BATINICH,

Defendants.

**ORDER ON ARBITRATION AWARD,
MOTION TO LIFT STAY, AND
ADDITIONAL EVIDENCE**

Anna Koch, Nicholas N. Sperling, and V. John Ella, **TREPANIER MACGILLIS BATTINA, PA,** 8000 Flour Exchange Building, 310 South Fourth Avenue, Minneapolis, MN 55415; James M. Morris, **MORRIS & MORRIS P.S.C.**, 217 North Upper Street, Lexington, KY 40507, for Plaintiff.

Austin J. Spillane, Joel Andersen, and Katie M. Connolly, **NILAN JOHNSON LEWIS PA**, 250 Marquette Avenue South, Suite 800, Minneapolis, MN 55401, for Defendants.

On February 27, 2018, the Court entered an order that compelled arbitration of several of Defendant Allan Brown's counterclaims against Plaintiff Management Registry, Inc. ("MRI") that were within the scope of his Employment Agreement, which contained a binding arbitration clause. The Court stayed those counterclaims from Mr. Brown, including fraudulent inducement, until the close of arbitration. Mr. Brown's claims proceeded through arbitration, and litigation continued in this Court as to the other claims and counterclaims at issue in this case. The Arbitrator then issued a final

order/award on November 14, 2022, ordering Mr. Brown to pay MRI $1,441,591.00 for its breach of contract claim, plus additional arbitration expenses and sanctions, for a total of $1,568,864.69.

The parties then filed cross motions relating to the arbitration award. Mr. Brown asks the Court to vacate the arbitration award. MRI asks the Court to enforce the arbitration award with modifications to allow it to recover costs and fees pursuant to the Rule 68 Offer of Judgment and the Kentucky Uniform Trade Secrets Act. Because the Arbitrator's order is rational and manifests regard for the law and because MRI waived its claim to costs and fees by not raising them during the arbitration proceeding, the Court will confirm the award.

Mr. Brown also filed a motion to lift the stay on his fraudulent inducement counterclaim, arguing that the Arbitrator effectively refused to hear his fraud counterclaim by not admitting relevant evidence. Because the Arbitrator found no evidence admissible, and because Mr. Brown later agreed to dismiss his fraud counterclaim, the Court finds that the arbitration proceeding effectively resolved the claim. The Court will therefore lift the stay on the fraudulent inducement claim and dismiss it accordingly.

Lastly, MRI has asked the Court for permission to address recent admissions by Defendant Wendy Brown in a related litigation in Illinois in its upcoming summary judgment reconsideration briefing. The Court will deny MRI's request.

**BACKGROUND**

I.    **FACTS**

The Court has previously detailed the facts of this case and will therefore limit its

discussion here to only the relevant facts for the present motions.  *See Management*

*Registry, Inc. v. A.W. Companies, Inc.*, No. 17-5009, 2022 WL 4706702, at *1–4 (D. Minn.

Sept. 30, 2022).   In September 2017, MRI acquired several business entities from Mr.

Brown.  (1ˢᵗ Am. Compl. ¶ 13, Nov. 21, 2017, Docket No. 59.)  Before that acquisition

closed, MRI and Mr. Brown entered into an Employment Agreement whereby Mr. Brown

would help lead the companies that MRI would acquire.  (*Id.* ¶¶ 16–21, Ex. A, Docket No.

59-1.)  The Employment Agreement contained a mandatory arbitration clause.  (*Id.* ¶ 16,

Ex. A at 8, ¶ 21.)

Around the time of the acquisition, there was allegedly an understanding that,

after closing, MRI would sell AllStaff Recruiting, Inc. ("ARI")—one of the acquired

companies—to Defendant Wendy Brown, Mr. Brown's wife.  (Answer ¶ 240, Dec. 5, 2017,

Docket No. 72.)  The sale of ARI to Ms. Brown never happened, and the parties vigorously

dispute whether such agreement existed.  Mr. Brown's employment with MRI ended in

October 2017.

MRI initiated this action against the Browns and their newly formed company,

A.W. Companies, Inc. ("A.W.") and Milan Batinich, asserting thirteen claims.  (2ⁿᵈ Am.

Compl., July 12, 2019, Docket No. 251.)  Mr. Brown asserted several counterclaims against

MRI related to the termination of his employment.   Specifically, he asserted a counterclaim for breach of contract (Count II), alleging that MRI fired him without cause; and counterclaims for common-law fraud (Count VII) and negligent misrepresentation (Count VIII), alleging that MRI induced Mr. Brown to enter into the Employment Agreement with MRI by falsely representing to Mr. Brown that MRI would sell ARI to Ms. Brown.  (Answer ¶¶ 353–358, 383–399.)

MRI moved to compel arbitration of three of Mr. Brown's counterclaims pursuant to the mandatory arbitration clause in the Employment Agreement.  (Mot. Compel Arbitration, Dec. 26, 2017, Docket No. 90.)   The Court found that Mr. Brown's counterclaims fell within the scope of the arbitration clause and ordered Brown to arbitrate Counts II, VII, and VIII of his counterclaims.  *Management Registry, Inc. v. A.W. Companies, Inc.*, No. 17-5009, 2018 WL 1073176, at *3 (D. Minn. Feb. 27, 2018).  The Court stayed those counterclaims "until such arbitration has been had in accordance with the terms of the agreement."  *Id.*

## II.   ARBITRATION SCOPE

Mr. Brown's counterclaims proceeded into arbitration before the American Arbitration Association.  In the arbitration, MRI brought a procedural motion to dismiss Mr. Brown's counterclaims and amended counterclaims.  (Decl. Joel Andersen ("1st Andersen Decl."), Ex. A, Jan. 30, 2022, Docket No. 748.)  In denying MRI's motion to dismiss, the Arbitrator noted that "equitable considerations lend further support to the conclusion" that Mr. Brown's counterclaims should be part of the arbitration proceeding.

(1st Andersen Decl., Ex. D, at 5, Docket No. 748-3.)  Because MRI moved the Court to compel arbitration, it would be unfair for the Arbitrator to then dismiss those counterclaims because that would "presumably preclude those claims being litigated in any forum."  (*Id.*)

The Arbitrator found it beneficial for the parties to provide suggestions regarding the scope of the issues and the complexity of the claims in advance of the arbitration hearing to reduce the likelihood of inconsistent determinations of fact or law.  (1st Andersen Decl., Ex. E, at 7, Docket No. 748-4.)  Accordingly, in advance of the arbitration, the parties filed with the Arbitrator various motions *in limine*, proposed exhibits and objections, and other pre-hearing memoranda.  (1st Andersen Decl., Ex. F ("Scope Order"), at 2, Docket No. 748-5.)

On July 30, 2021, the Arbitrator issued an order on the scope of arbitration.  (*See generally id.*)  The Arbitrator found that both parties had submitted arguments and proposed exhibits that related to matters beyond the scope of their agreement to arbitrate.  (*Id.* at 5.)  Mr. Brown had reiterated his position that "[b]oth the MRI litigation and the [] arbitration were precipitated by MRI's breach of a contractual obligation to sell [the ARI stock] back to Wendy Brown."  (*Id.* at 7.)  Mr. Brown presented four subjects/categories of evidence that he believed to be within the scope of the arbitration and therefore admissible.  (*Id.* at 7–8.)  One such category of evidence was "[e]vidence

regarding MRI's false or fraudulent inducement of [Mr.] Brown to enter into the Agreement." (*Id.* at 8.)

The Arbitrator carefully considered the parties' positions and found that Mr. Brown's fraudulent inducement claim—that MRI promised to convey certain assets to Wendy Brown—was not within the scope of arbitration because it was not contained in, or supported by, the clear and unambiguous language in the Employment Agreement. (*Id*. at 8–9.)  The Arbitrator concluded that "[Mr. Brown]'s claim that [MRI] violated the Employment Agreement by failing to transfer certain assets to Wendy Brown is not supported by the terms of the Agreement, nor subject to interpretation/modification by parole [sic] evidence." (*Id.*)  Because the contract's words were plain and unambiguous, the Arbitrator found any extrinsic or parol evidence inadmissible.  (*Id.* at 8–11.)  The Arbitrator also considered the "high level of complexity and detail in this transaction and between these sophisticated parties," which further supported excluding parol evidence. (*Id.* at 12.)  Accordingly, the Employment Agreement was unambiguous and there was no actual "dispute" between MRI and Mr. Brown that could properly be adjudicated in the arbitration.  (*Id.* at 9.)

Mr. Brown then agreed to not pursue his fraud claim in the arbitration.  (Decl. James M. Morris ("1st Morris Decl."), Ex. G, at 4, Apr. 6, 2023, Docket No. 772-7.)  Though many of MRI's claims proceeded, only Mr. Brown's breach of contract claim proceeded in the arbitration.  (*Id.* at 4.)

### III.     ARBITRATION AWARD

Arbitration proceedings were held in March and May 2022.  (1st Morris Decl., Ex. J ("Final Order/Award"), Apr. 6, 2023, Docket No. 772-10.)  Over twenty witnesses testified over the course of eight days, and the hearing featured over 900 exhibits.  (*Id.* at 1–2, 7.) The parties submitted additional briefs after the proceeding.  (*Id.* at 2.)

The Arbitrator entered the final arbitration award on November 14, 2022, concluding that Mr. Brown violated the terms of his Employment Agreement by engaging in activities that "directly and indirectly" involved "setting up and running a business that was competitive with MRI."  (*Id.* at 14.)  The record was "replete" with examples of Mr. Brown impermissibly furnishing A.W. with confidential information from MRI and ARI.  (*Id.* at 23.)  The Arbitrator concluded that there was substantial record evidence to support a finding that Mr. and Ms. Brown "launched an audacious, persistent, and (ultimately) effective effort to hastily set up a business to compete with [MRI] by targeting its existing clients, recruiting its employees, and (using [Mr. Brown]'s insider knowledge of the industry and [MRI]'s business information and practices), aggressively attempting to convert its existing and prospective customers."  (*Id.* at 27.)  The Arbitrator awarded MRI a sum of $1,422,716.00 in compensable damages resulting from the breach of contract claim, plus an additional $18,875.00 in additional out-of-pocket expenses as a direct consequence of Mr. Brown's actions relating to MRI's claims.  (*Id.* at 56–57.)  These sums are subject to six percent post-judgment interest.  (*Id.* at 57.)

The Arbitrator found MRI's claims for breach of loyalty and fiduciary duty, common law fraudulent misrepresentation, common law fraud, breach of implied covenant of good faith and fair dealing, tortious interference with contractual and prospective advantages, conspiracy, and misappropriation of trade secrets to be subsumed into the breach of contract claim. (*Id.* at 55–56.)  MRI's unjust enrichment, unfair competition, and conversion claims were dismissed. (*Id.* at 56.)  The Arbitrator also dismissed Mr. Brown's breach of contract counterclaim, concluding that MRI had cause to terminate Mr. Brown's employment because Mr. Brown had engaged in acts of willful misconduct that violated the Employment Agreement and caused significant financial harm to MRI. (*Id.* at 50.)

In addition to the damages for breach of contract, the parties were instructed to pay $146,445.24 in other expenses related to the arbitration. (*Id.* at 57.)  In a separate order, the Arbitrator awarded MRI $127,273.69 in attorney/paralegal fees and costs due to Mr. Brown's discovery abuses. (1st Morris Decl., Ex. I, at 15, Apr. 6, 2023, Docket No. 772-9.)

## IV.  PENDING MOTIONS

The parties filed a flurry of motions after the Arbitrator issued the final order/ award.  MRI hastily filed a motion for entry of judgment to confirm the arbitration award. (1st Mot. Confirm Award, Nov. 21, 2022, Docket No. 716.)  Mr. Brown then asked the Court to stay consideration of MRI's motion until after he had the chance to challenge the award. (Defs.' Mot. Stay Consideration, Jan. 9, 2023, Docket No. 731.)  A month later,

Defendants moved to vacate the arbitration award. (Defs.' Mot. Vacate, Feb. 13, 2023, Docket No. 752.) MRI then filed another motion pertaining to the arbitration award, asking the Court to modify the award to reflect the scope of damages available under the Kentucky Uniform Trade Secrets Act. (Mot. Alter Award, Feb. 13, 2023, Docket No. 758.)

Throughout this period, the parties also filed several motions pertaining to the Court's summary judgment order. (*See* Summ. J. Mem. Op. Order, Sept. 30, 2022, Docket No. 676.) The parties asked the Court for permission to file motions to reconsider, which the Court granted. (*See* Mot. Alter/Amend/Correct J., Nov. 14, 2022, Docket No. 708; Mot. Reconsider, Nov. 14, 2022, Docket No. 712.) After the arbitration award was issued, MRI requested permission to file an additional motion to reconsider that relied on the Arbitrator's findings of fact, which the Court also granted. (1st Letter, Dec. 2022, Docket No. 730; Order, Feb. 14, 2022, Docket No. 762.)

To clarify the numerous and confounding motions, the Court held a status conference on March 16, 2022. (Minute Entry, Mar. 16, 2023, Docket No. 764.) The Court indicated its intent to first address all motions pertaining to the arbitration award, then to consider the summary judgment arguments. (Order at 1, Mar. 22, 2023, Docket No. 769.) The Court also limited the scope of the parties' summary judgment arguments. (*Id.* at 2.)

The parties have now refiled their motions pertaining to the arbitration award in a coherent manner. MRI asks the Court to modify the arbitration award to correct the

scope of damages under the Kentucky Uniform Trade Secrets Act and Rule 68, but to otherwise confirm the arbitration award.  (2nd Mot. Confirm Award, Apr. 6, 2023, Docket No. 771.)   Mr. Brown asks the Court to vacate the arbitration award because the Arbitrator erred in finding MRI did not breach Mr. Brown's Employment Agreement and failing to hear evidence related to Mr. Brown's fraudulent inducement argument.  (Mot. Related to Enforcement, Apr. 6, 2023, Docket No. 776.)

Defendants also filed a motion to lift the Court's stay on Mr. Brown's fraudulent inducement counterclaim.  (Mot. Lift Stay, Jan. 30, 2023, Docket No. 742.)  Mr. Brown argues that he has never had the opportunity to be heard on his fraudulent inducement counterclaim in any forum.  (Defs.' Mem. Supp. Mot. Lift Stay at 1, Jan. 30, 2023, Docket No. 747.)

Lastly, MRI filed a letter with the Court seeking permission to include in its summary judgment arguments various admissions made by Defendant Wendy Brown in her answer and counterclaim filed in pending litigation in Illinois.  (2nd Letter, Mar. 30, 2023, Docket No. 770.)  Defendants have refused to meet and confer on the matter and have not responded to MRI's request.  (*Id.*)

## DISCUSSION

### I.   ARBITRATION AWARD MOTIONS

First, the Court will consider Defendants' motion to vacate the arbitration award and MRI's motion to modify the arbitration award.

A court's review of an arbitration award is very limited. *Lee v. Chica*, 983 F.2d 883, 885 (8th Cir. 1993). Where parties agree to arbitrate, a court cannot substitute a judicial determination for the arbitrator's decision. *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 40–41 n.10 (1987). Courts may not review the merits of an arbitration award "even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *Bureau of Engraving, Inc. v. Graphic Commc'n Int'l Union, Loc. 1B*, 284 F.3d 821, 824 (8th Cir. 2002) (quoting *Misco*, 484 U.S. at 36). Even if the Court is convinced that the arbitrator committed serious error, so "long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," arbitration awards must be confirmed. *Bureau of Engraving*, 284 F.3d at 824 (quoting *Misco*, 484 U.S. at 38).

Although extremely limited, arbitration awards are not entirely free from judicial review. The Federal Arbitration Act ("FAA") provides limited grounds on which an arbitration award may be vacated. 9 U.S.C. § 10. The FAA requires that an arbitration be upheld unless it is obtained by "corruption, fraud, or undue means," where there is "evident partiality or corruption in the arbitrators," where there was misconduct by the arbitrators, or where the arbitrators exceeded their powers. 9 U.S.C. § 10(a)(1)(2). The Eighth Circuit has held that beyond the grounds provided in the FAA, an arbitration award will be vacated only where it is "completely irrational or evidences a manifest disregard for the law." *Hoffman v. Cargill, Inc.*, 236 F.3d 458, 461 (8th Cir. 2001) (citation omitted).

-11-

### A.    Mr. Brown's Motion to Vacate Award

Mr. Brown asks the Court to vacate the arbitration award on two grounds: (1) the Arbitrator's erred by determining that MRI did not breach Mr. Brown's Employment Agreement when MRI failed to pay him a certain contractually promised salary upon termination; and (2) the Arbitrator failed to hear evidence related to Mr. Brown's fraudulent inducement argument, which is both a defense to MRI's breach of contract claim and an independent counterclaim for damages.  (Defs.' Mem. Supp. Mot. Vacate at 1–2; Apr. 6, 2023, Docket No. 778.)  These arguments, however, are not persuasive and do not overcome the deference that courts must give to arbitration proceedings.

### 1.    Breach of Contract Determination

First, Mr. Brown urges the Court to vacate the Arbitrator's finding that MRI did not breach the Employment Agreement by terminating Mr. Brown.  Section 9(e) of the Employment Agreement sets out the rights and obligations of the parties in the event of a "without cause" termination during the first three years of Mr. Brown's employment. (Final Order/Award at 47.)  Section 9 identifies certain bases for terminating Mr. Brown's Employment Agreement.  (*See* 1st Morris Decl., Ex. 1 ("Employment Agreement"), at 3–5, Docket No. 772-1.)  Broadly, Mr. Brown's Employment Agreement could be terminated by mutual consent, death, disability, by the company for cause, by the company without cause before the end of three years, by voluntary resignation, by retirement, or an enumerated list of good reasons for termination.  (*Id.*)  If Mr. Brown is terminated without cause within the first three years of his employment, he is entitled to eleven months'

salary.  (*Id.*)  If Mr. Brown is terminated by MRI for cause, MRI must provide written notice

of the termination and Mr. Brown is not entitled to the eleven months' salary.  (*Id.*)

Upon reviewing the record, the Arbitrator found that MRI's management had good

reason to suspect that Mr. Brown was engaging in improper conduct.  (Final Order/Award

at 48.)  MRI investigated the situation, the results of which provided a reasonable basis

to support MRI's then-belief that Mr. Brown had resigned and was actively engaging in

inappropriate conduct.  (*Id.* at 48–49.)  MRI management consequently traveled to Mr.

Brown's office on October 30, 2017, to deal with the situation.  (*Id.* at 49.)  Upon arrival,

MRI management presented Mr. Brown with a letter that stated they had received his

notification of his request to resign, that they had learned of "numerous substantial and

serious concerns" relating to Mr. Brown's activities at MRI, and that they accepted his

voluntary resignation.  (*Id.*)  The Arbitrator interpreted the October 30, 2017 letter to

mean that MRI believed Mr. Brown had effectively resigned and that it had "substantial

and serious" concerns about his activities.  (*Id.*)

During the arbitration proceedings, MRI asserted that Mr. Brown voluntarily

resigned.  Mr. Brown asserted that he was terminated without cause.  The Arbitrator

reviewed the record to determine (1) whether Mr. Brown resigned or was involuntarily

terminated by MRI, and, if he was involuntarily terminated, (2) whether such termination

was "without cause" under the terms of the Employment Agreement.  (Final Order/Award

at 48.)  The Arbitrator reviewed the evidence and concluded that MRI terminated Mr.

Brown.  (*Id.*)  The Arbitrator found that MRI terminated Mr. Brown for cause within the scope of Section 9(d) of the Employment Agreement because the record established that Mr. Brown "had engaged in acts of willful misconduct that violated his Employment Agreement and caused significant financial harm to [MRI's] business."  (*Id.* at 50.)  The Arbitrator also concluded that MRI provided a notice of termination for cause in the October 30, 2017 letter that stated MRI had "learned of numerous substantial and serious concerns related to [Mr. Brown's] activities while employed by Management Registry, Inc."  (*Id.* at 49–50.)

Mr. Brown argues that the Arbitrator violated FAA §§ 10(a)(3) and 10(a)(4) by inserting a new provision into the Employment Agreement that provides that if the provision for termination with cause **could** apply, then it **does** apply.  (Defs.' Mem. Supp. Mot. Vacate at 15.)  But the Court concludes that the Arbitrator's interpretation of the Employment Agreement does not rise to the level of misconduct or action in excess or improper execution of his powers such that relief is permissible under the FAA.  *See Bureau of Engraving*, 284 F.3d at 824 ("As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.").  The language of the October 30, 2017 letter suggests that MRI had cause to end its relationship with Mr. Brown.  The Arbitrator's conclusion to that extent is not "completely irrational."  *See Hoffman*, 236 F.3d at 461.

Mr. Brown also argues that the Arbitrator acted outside the scope of his authority because neither party asserted that Mr. Brown was terminated for cause; Mr. Brown argued to the Arbitrator that he was terminated without cause, while MRI argued that he voluntarily resigned.  It is true that an arbitrator's decision should be vacated when they decide a matter outside the issues submitted for arbitration.  *See Minn. Nurses Ass'n v. Am. N. Mem. Health Care*, No. 14-4529, 2015 WL 2373446, at *3 (D. Minn. May 18, 2015) (citing *Bowater Carolina Co. v. Rock Hill Loc. Union No. 1924*, 871 F.2d 23, 25 (4th Cir. 1989)).  But the parties here asked the Arbitrator to determine how Mr. Brown's employment with MRI ended to determine whether MRI breached the Employment Agreement.  Though the Arbitrator arrived at a conclusion that was not asserted by either party, it was still properly within the scope of the arbitration.  The Court will therefore affirm the Arbitrator's dismissal of Mr. Brown's breach of contract claim.

### 2.    Mr. Brown's Fraudulent Inducement Counterclaim and Defense

Next, Mr. Brown asserts that the Arbitrator's decision should be vacated because he refused to consider Mr. Brown's evidence that he was induced into signing his Employment Agreement by a promise that MRI would sell certain assets to Wendy Brown.

"An arbitrator is not free to ignore or abandon the plain language of the parties' agreement."  *Gas Aggregation Servs., Inc. v. Howard Avista Energy, LLC*, 319 F.3d 1060, 1065 (8th Cir. 2003) (citation omitted).  An arbitration award will be found to be irrational where it does not draw its essence from the agreement, meaning that it is not "derived from the agreement, viewed in light of its language, its context, and any other indicia of

-15-

the parties' intention." *Boise Cascade Corp. v. Paper Allied-Indus., Chem. and Energy Workers (PACE), Local 7-0159*, 309 F.3d 1075, 1080 (8th Cir. 2002).  An arbitrator may utilize sources outside of the contract language only when "there is no clear and unambiguous agreement." *Howard Avista*, 319 F.3d at 1065; *see also Boise Cascade Corp.*, 309 F.3d at 1081–82 ("Where the plain language of the parties' agreement is silent or ambiguous with respect to a disputed issue, an arbitrator is obliged to consider other relevant sources of the parties' intent.").

The Arbitrator considered the evidence Mr. Brown intended to submit in support of his assertion that MRI falsely or fraudulently induced him to enter into the Employment Agreement.  (Scope Order at 7.)  The Arbitrator found that an agreement that MRI would convey assets to Wendy Brown "is not contained in or supported by the clear and unambiguous language in the Employment Agreement, that such arguments are otherwise precluded by its terms, and that evidence related to such an agreement will therefore be inadmissible in [the arbitration] proceeding."  (*Id.* at 7–8.)  In other words, the Arbitrator found that Mr. Brown's claim was unsupported by the terms of the Employment Agreement and extrinsic evidence was barred by the parol evidence rule.  (*Id.* at 8.)

The Arbitrator noted that "[i]f the parties had intended to include such a significant, specific, and unambiguous contingency relating to the sale of assets in [Mr. Brown's] Employment Agreement, it should have been clearly referenced and included in

the terms of that Agreement." (*Id.* at 10.)  The Arbitrator found Mr. Brown's argument did "not convincingly answer how and why, in interpreting a detailed and nuanced Employment Agreement between sophisticated and business-savvy parties, each represented by experienced and capable corporate counsel, this Arbitrator would be permitted to overlook, revise, or effectively re-write clear contractual language, including in a specific and detailed integration clause." (*Id.* at 11.)  Mr. Brown then voluntarily stipulated to not pursue his fraudulent inducement claim.  (1st Morris Decl., Ex. G, at 4.)

Mr. Brown asks the Court to vacate the arbitration award because the Arbitrator supposedly violated § 10(a)(3) of the FAA by refusing to hear evidence that MRI fraudulently induced Mr. Brown to enter into the Employment Agreement.  *See* 9 U.S.C. § 10(a)(3) (allowing courts to vacate arbitration awards "where the arbitrators were guilty of misconduct in . . . refusing to hear evidence pertinent or material to the controversy").  But Mr. Brown misunderstands the nature of parol evidence and the Arbitrator's decision.

The Arbitrator found that the Employment Agreement was clear and unambiguous, and explained that when a contract's words are plain, a tribunal must assign them their ordinary meaning and enforce the contract as written.  It is only when an ambiguity exists that the tribunal may resort to extrinsic or parole [sic] evidence to interpret the intentions of the parties." (Scope Order at 7–9).  The Employment Agreement did not contain any agreement by MRI to sell certain assets to Wendy Brown, and in fact included an extensive integration provision. (*Id.* at 9.)  Because the

Employment Agreement is unambiguous, the Arbitrator refused to consider any extrinsic parol evidence. (*Id.* at 10–11.)

The Arbitrator's analysis and conclusion is rational, manifests regard for the law, and comports with his responsibilities under the FAA. *See Howard Avista*, 3019 F.3d at 1065 (describing when arbitrators must consider extrinsic evidence of parties' agreements to not be vacated by the FAA). The Employment Agreement contained a comprehensive integration clause that unambiguously precludes Mr. Brown's fraudulent inducement claim, so it was proper for the Arbitrator to not consider extrinsic parol evidence. Thus, the Arbitrator did not violate § 10 of the FAA and this is not grounds to vacate the arbitration award.

Mr. Brown asserts that his evidence is not barred by the parol evidence rule because it is effectively a tort claim, not a contract law claim. Kentucky courts have addressed this distinction:

> Where an individual is induced to enter into the contract in reliance upon false representations, the person may maintain an action for a recission of the contract, or may affirm the contract and maintain an action for damages suffered on account of the fraud and deceit . . . . And since such a misrepresentation claim sounds in tort rather than in contract, the parol evidence rule does not apply.

*Radioshack Corp. v. ComSmart, Inc.*, 222 S.W.3d 256, 261 (Ky. Ct. App. 2007) (citations omitted). In those instances, parol evidence may be admissible to prove a fraudulent inducement claim "notwithstanding the merger and integration clauses in the contracts." *Id.* The Arbitrator considered this argument and found it unpersuasive because this is a

very detailed Employment Agreement between sophisticated and well represented parties.  (Scope Order at 10.)  Even considering extrinsic evidence, the Arbitrator would not be permitted to "overlook, revise, or effectively re-write clear contract language, including a specific and detailed integration clause."  (*Id.*)  The Arbitrator's analysis is not "completely irrational or evidences a manifest disregard for the law," *Hoffman*, 236 F.3d at 461, and this is not a ground to vacate the arbitration award.

Even if the Arbitrator's failure to consider parol evidence was considered "completely irrational"—which it is not—the Court would still deny Mr. Brown's request because Mr. Brown has failed to show that he is entitled to relief under 9 U.S.C. § 10(a)(3).  The Eighth Court has explained that courts may set aside an arbitrator's decision where they are guilty of misconduct that is "not simply an error of law, but which also affects the rights of a party that it may be said that he was deprived of a fair hearing."  *El Dorado Sch. Dist. No. 15 v. Continental Cas. Co.*, 247 F.3d 843, 847–48 (8th Cir. 2001) (quoting *Grahams Serv. Inc. v. Teamsters Local 975*, 700 F.2d 420, 422 (8th Cir. 1982)).

Here, the Arbitrator held an eight-day, in-person hearing featuring over 900 record exhibits.  (Final Order/Award at 7.)  The parties compiled a "voluminous record in this case, including extensive deposition testimony."  (*Id.*)  Given the extent of the record and how detailed the arbitration proceedings were, it cannot be said that the Arbitrator's refusal to consider extrinsic evidence of fraudulent inducement was so destructive of Mr.

Brown's right to present his case that it warrants vacating the arbitration award.  The Court will therefore deny Mr. Brown's motion to vacate the arbitration award.

### B.     MRI's Motion to Modify Award

The Court will next consider the parties' arguments on the amount of the award. MRI asks the Court to correct the arbitration award to allow for (1) post-judgment recovery of attorneys' fees pursuant to the Kentucky Uniform Trade Secrets Act ("KUTSA"); and (2) post-judgment recovery of costs and attorneys' fees pursuant to a valid Rule 68 Offer of Judgment.  Mr. Brown argues that neither modification is permitted under FAA § 11.

### 1.     Attorneys' Fees under the KUTSA

MRI first urges the Court to allow recovery of attorneys' fees under the KUTSA. The Arbitrator found that Mr. Brown repeatedly engaged in actions that constitute misappropriation of trade secrets under Kentucky law.  (Final Order/Award at 46.)  This misappropriation resulted in substantial damage to MRI's business/financial interests and profitability.  (*Id.* at 46–47.)  However, because the Arbitrator found that the actions by Mr. Brown's that constitute misappropriation of trade secrets were the same acts that formed the basis of MRI's breach of contract claim, the resulting damages were the same. (*Id.* at 47.)  The Arbitrator therefore found that, for the purposes of assessing damages, MRI's KUTSA claim was subsumed into its breach of contract claim.  (*Id.*)  MRI argues this finding was erroneous because the KUTSA allows for post-judgment damages not available under MRI's breach of contract claim.

Confirmation of arbitration decisions is governed by 9 U.S.C. § 9, which states that courts may confirm arbitration awards unless they are vacated, modified, or corrected under FAA §§ 10 and 11.  Section 11 provides that courts may modify or correct an arbitration award in three circumstances:

> (a) Where there was evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
>
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
>
> (c) Where the award is imperfect in a matter of form not affecting the merits of the controversy.

9 U.S.C. § 11.

MRI argues that sections 11(a) and 11(c) both permit modification of the Arbitrator's award to include post-judgment fees and costs as a prevailing party under the KUTSA.  The KUTSA provides that courts "**may** award reasonable attorney's fees to the prevailing party" if "willful and malicious misappropriation exists."  Ky. Rev. Stat. § 365.886.

The Court will decline to modify the award to allow additional damages under the KUTSA for several reasons.  First, section 11(a) is clearly inapplicable because there is no apparent miscalculation or material mistake in the description of "any person, thing, or property."  9 U.S.C. § 11(a).  Second, the Arbitrator did not explicitly find that the misappropriation was "willful and malicious," as required under KUTSA.  Third, even if

there was willful and malicious misappropriation, the KUTSA is a discretionary award—courts are not required to award reasonable attorneys' fees.  Fourth, MRI never asked the Arbitrator to award attorneys' fees under the KUTSA.  *See Boehringer Ingelheim Vetmedica, Inc. v. United Food and Commercial Workers*, 739 F.3d 1136, 1140 (8th Cir. 2014) (precluding consideration of a party's arguments that they failed to first raise in arbitration); *Nat'l Wrecking Co. v. Int'l Broth. of Teamsters, Loc. 731*, 990 F.2d 957, 960–61 (7th Cir. 1993) ("Failure to present an issue before an arbitrator waives the issue in an enforcement proceeding . . . .  Parties . . . cannot stand by during arbitration, withholding certain arguments, then, upon losing the arbitration, raise such arguments in federal courts.").  Therefore, MRI's claim to attorneys' fees under the KUTSA was waived when it was not raised with the Arbitrator and fails because it is not within the scope of 9 U.S.C. § 11.

### 2.     Fees and Costs Related to Rule 68 Offer of Judgment

Next, MRI asks the Court to modify the arbitration award to permit recovery of attorneys' fee, arbitrator fees, and costs related to Mr. Brown's rejection of a valid offer of judgment.   The Employment Agreement is governed by the laws of Kentucky. (Employment Agreement at 8.)  Kentucky Rule of Civil Procedure 68 mirrors Federal Rule of Civil Procedure 68 and provides that if an offer of judgment goes unaccepted, and the judgment finally obtained by the offeree is not more favorable than the offer, then the offeree "**must** pay the costs incurred after making the offer."  Ky. R. Civ. P. 68(3) (emphasis added).  The purpose of this rule is to encourage settlement.  *Marek v. Chesny*, 473 U.S.

1, 5 (1985) ("The Rule prompts both parties to a suit to evaluate the risks and costs of litigation, and to balance them against the likelihood of success upon trial on the merits."). MRI notes that many states have applied Rule 68 to arbitration proceedings. *E.g., Simcor Const., Inc. v. Trupp*, 912 N.W.2d 216, 222 (Mich. Ct. App. 2018); *WPH Architecture, Inc. v. Vegas VP, LP*, 360 P.3d 1145, 1148 (Nev. 2014); *Elrac, Inc. v. Britto*, 775 A.2d 547 (N.J. 2001). But MRI has not identified any Kentucky courts that have applied Rule 68 to arbitration proceedings.

MRI gave Mr. Brown a Rule 68 Offer of Judgment for $10,000 in 2018. (1st Morris Decl., Ex. 5 ("Offer of Judgment"), Docket No. 772-5.) The Offer of Judgment advised Mr. Brown that if the judgment finally obtained by him is not more favorable than the offer, he "will be required to pay all costs incurred by [MRI], after the making of this Offer of Judgment, which may include all attorneys' fees, **in the discretion of the Arbitrator** herein." (*Id.* at 1–2 (emphasis added).) The Arbitrator ultimately did not award Mr. Brown any damages. (Final Order/Award at 57.) Though MRI asked the Arbitrator for fees and costs generally, it never asked the Arbitrator to award it fees and costs pursuant to Rule 68. (*See* 1st Morris Decl., Ex. 9, at 15 (awarding MRI $127,273.69 in attorney/paralegal fees/costs based on Mr. Brown's discovery abuses).)

Because MRI acknowledged in its Offer of Judgment that any Rule 68 fees would be awarded at the discretion of the Arbitrator, but then never asked the Arbitrator for such fees, it has waived that argument. The Court therefore declines to modify the

arbitration award to include fees and costs pursuant to Rule 68.  Accordingly, the Court will confirm the arbitration award without any modifications.

## II.   MOTION TO LIFT STAY

Next, the Court will consider the Defendants' motion to lift the stay on Mr. Brown's fraudulent inducement counterclaim.  The Court has the inherent power to stay proceedings to control its docket, to conserve judicial resources, and to ensure that each matter is handled "with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  A stay under the FAA is mandatory upon a party's application and continues until the arbitration is completed.  9 U.S.C. § 3; *Simitar Entm't, Inc. v. Silva Entm't, Inc.*, 44 F. Supp. 2d 986, 997 (D. Minn. 1999) ("Once a Court has determined, that a dispute falls within the scope of an arbitration agreement, the proceedings in the case, on the issues referable to arbitration, must be stayed pending the completion of arbitration.").  "A court may modify or vacate a stay, however, when circumstances have changed and made the stay inequitable."  *Spice Corp. v. Foresight Mktg Partners, Inc.*, No. 07-4767, 2009 WL 10678230, at *3 (D. Minn. Feb. 17, 2009).

As discussed previously, the Arbitrator declined to consider Mr. Brown's evidence that he was fraudulently induced to enter into the Employment Agreement.  The Arbitrator's Scope Order indicates that he would not consider parol evidence because the Employment Agreement was specific, unambiguous, entered into by sophisticated parties, and contained a comprehensive integration clause.  (Scope Order at 9–12.)

-24-

Mr. Brown asks the Court to lift the stay on his fraudulent inducement counterclaim because "the end result was that, though the Scope Order did not dispose of the actual [Employment Agreement] fraud counterclaim that Allan asserted, it indisputably had the effect of precluding Allan from presenting evidence to support his fraud theory" to the Arbitrator.  (Defs.' Mem. Supp. Mot. Lift Stay at 10.)  Mr. Brown further asserts that the Arbitrator's decision was solely evidence-precluding, not a dispositive decision on the merits.  (*Id.* at 7.)  But unlike typical exclusionary rules such as the rule against hearsay, "the parol evidence rule is not a rule of evidence at all; it is a substantive rule of law that defines a contract as the final, written expression of the parties' intent."  *Grandoe Corp. v. Gander Mountain Co.*, 761 F.3d 876, 883–84 (8th Cir. 2014).  By barring extrinsic evidence, the Arbitrator substantively defined the contract as only what was contained in the Employment Agreement—which made no reference to assets being transferred to Wendy Brown.

To state a claim for fraud in the inducement, a plaintiff must show that (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffered pecuniary damage as a result of the reliance.  *Alotech, Ltd. v. North Star Imaging, Inc.*, No. 14-3443,

2016 WL 1122024, at *5 (D. Minn. Mar. 22, 2016); *accord, e.g.*, *Hoyt Props., Inc. v. Prod. Res. Grp., LLC*, 736 N.W.2d 313, 318 (Minn. 2007).

The Arbitrator effectively considered the substance of Mr. Brown's fraudulent inducement claim and refused to allow extrinsic evidence because the contract language was clear, included a specific and detailed integration clause, and the parties were sophisticated and business-savvy.  He concluded that he would not "be permitted to overlook, revise, or effectively re-write clear contract language, including a specific and detailed integration clause."  (Scope Order at 11.)  Mr. Brown then voluntarily stipulated to not pursue the claim, so equity does not weigh in his favor.  *See Kronzer v. First Nat. Bank of Minneapolis*, 235 N.W.2d 187, 195 n.19 (Minn. 1975) ("[T]he stipulation, as approved by the district court . . . should be treated as having a collateral estoppel effect equivalent to that of a consent judgment and precluding litigation of all issues which could have been litigated at that time.").

Because the express language of the Employment Agreement is clear and includes a thorough integration clause, Mr. Brown cannot succeed on his fraudulent inducement claim.  The Court will therefore grant Mr. Brown's motion to lift the stay on his fraudulent inducement claim and dismiss the claim accordingly, having found it effectively resolved in the arbitration proceeding.

## III.   MRI'S REQUEST TO EXPAND SUMMARY JUDGMENT SCOPE

Lastly, the Court considers MRI's request to expand the scope of its summary judgment argument to include Wendy Brown's admissions made in an answer and

counterclaim filed in litigation pending in Illinois.  (2nd Letter.)  MRI did not identify which admissions are in fact against interest or contradictory.  (*See id.*)  Rather, MRI simply attached the entire fifty-five-page answer and counterclaim to its request.  (*Id.*, Ex. 1.) Defendants have refused to meet and confer on the matter.  (2nd Letter.)

Though MRI has not explicitly filed a motion pursuant to Federal Rule of Civil Procedure 60(b), Rule 60(b) is informative here.  Rule 60(b) allows the Court to relieve a party from a final judgment, order, or proceeding for, among other reasons, "newly discovered evidence" that could not have been discovered previously with reasonable diligence.  Fed. R. Civ. P. 60(b).  "Rule 60(b) 'provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances."  *Schwieger v. Farm Bureau Ins. Co. of Neb.*, 207 F.3d 480, 487 (8th Cir. 2000) (quotation omitted).  The Court "has wide discretion in deciding whether or not to grant a motion" under Rule 60(b)(2).  *Atkinson v. Prudential Prop. Co., Inc.*, 43 F.3d 367, 371 (8th Cir. 1994) (citation omitted).  Relief under 60(b)(2) is appropriate where "(1) the evidence was discovered after the summary judgment hearing; (2) the moving party exercised due diligence to discover the evidence; (3) the evidence is material and not merely cumulative or impeaching; and (4) a new hearing considering the evidence would probably produce a different result."  *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1535 (8th Cir. 1996) (citation omitted).

Here, MRI has diligently brought this evidence to the Court's attention. However, it has failed to identify what portions of Ms. Brown's answer and counterclaim are in fact material, and the Court will not surmise an argument on MRI's behalf. To be sure, this is not the first time in this litigation that Defendants have exercised bad faith and blatantly refused to meet and confer. *E.g., Management Registry, Inc. v. A.W. Companies, Inc.*, No. 17-5009, 2020 WL 1910589, at *18 (D. Minn. Apr. 20, 2020). And it is not surprising that Defendants have once again ignored the District of Minnesota's meet and confer requirement. *Id.* at *3 n.2. *See also* D. Minn. LR 7.1(a). However, the Court must deny MRI's request because it has not presented an exceptional circumstance that warrants expanding the scope of the upcoming arguments.

## CONCLUSION

Because the Arbitrator acted rationally, with regard to the law, and within the scope of his authority under the Federal Arbitration Act, the Court will confirm the Arbitrator's arbitration award. The Court will deny MRI's request to modify the arbitration award to allow for fees and costs pursuant to KUTSA and Rule 68 because they are not within the scope of 9 U.S.C. § 11 and were waived by not being raised during the arbitration proceedings. Accordingly, the Court will enter judgment in favor of MRI for $1,568,864.69, plus interest at a rate of 6% per annum, from December 14, 2022, until paid in full, in accordance with the Arbitration Award and the Arbitrator's sanctions award. The Court will also grant Defendants' motion to lift the stay on Mr. Brown's

fraudulent inducement counterclaim and dismiss the claim because the Arbitrator effectively resolved the claim by not allowing extrinsic evidence, and Mr. Brown then stipulated to not pursue that claim. Lastly, the Court will deny MRI's request to include facts from Wendy Brown's recently filed answer in its motion for summary judgment briefing because MRI has not shown exceptional circumstances warrant its consideration.

The parties must file motions for summary judgment with the Court by within 30 days from the date of this Order, with responses filed within 45 days from the date of this Order, and replies filed within 50 days from the date of this Order. The summary judgment motions will be considered only on the papers.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion to Confirm Arbitration Award, for Recovery of Costs and Attorney's Fees, and to Correct a Technical Error in the Arbitration Final Award [Docket No. 771] is **GRANTED in part and DENIED in part** as follows:

   a. Plaintiff's request to confirm the arbitration award is **GRANTED**; and

   b. Plaintiff's request to modify the arbitration award for recovery of costs and fees pursuant to 9 U.S.C. § 11 is **DENIED**;

2. Defendant Allan K. Brown's Motion Related to the Enforcement of the Arbitration Award [Docket No. 776] is **DENIED**;

3.  Defendants' Motion to Lift Stay on Fraudulent Inducement Counterclaim [Docket No. 742] is **GRANTED** and the claim is **DISMISSED**;

4.  Plaintiff's Request to Address Wendy Brown's Admissions and Arguments [Docket No. 770] is **DENIED**;

5.  Plaintiff is awarded $1,568,864.69, plus interest at a rate of 6% per annum, from December 14, 2022, until paid in full, per the Arbitration Award and the Arbitrator's Order/Award on Claimant's Motion for Attorney Fees and Costs; and

6.  Summary judgment briefs must be filed with the Court within 30 days from the date of this Order, with responses filed within 45 days from the date of this Order, and replies filed within 50 days from the date of this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:  June 28, 2023
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge