# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

MANAGEMENT REGISTRY, INC.,

Plaintiff,

v.

A.W. COMPANIES, INC.; ALLAN K.
BROWN; WENDY BROWN; and MILAN
BATINICH,

Defendants.

Civil No. 17-5009 (JRT/DTS)

**AMENDED SUMMARY JUDGMENT
ORDER**

---

Anna Swiecichowski and V. John Ella, **FAFINSKI MARK & JOHNSON, P.A.**, 775 Prairie Center Drive, Suite 400, Eden Prairie, MN 55344; James M. Morris, **MORRIS & MORRIS P.S.C.**, 217 North Upper Street, Lexington, KY 40507, for Plaintiff.

Andrew Peterson, Christopher T. Ruska, Gregory A. Bromen, Austin J. Spillane, Joel Andersen, and Katie M. Connolly, **NILAN JOHNSON LEWIS PA**, 250 Marquette Avenue South, Suite 800, Minneapolis, MN 55401, for Defendants.

Plaintiff Management Registry, Inc. ("MRI") alleges myriad claims against A.W.

Companies, Inc. ("A.W."), Allan and Wendy Brown, and a former MRI employee, Milan

Batinich (collectively, "Defendants"). MRI's claims arise out of Allan Brown's sale of

several companies to MRI, after which Allan and Wendy allegedly stole those companies

from MRI. MRI claims that Allan, Wendy, and Batinich also stole customers, employees,

and materials from MRI while establishing A.W. as a rival company.

The Court issued a summary judgment order on September 30, 2022, that granted in part and denied in part the parties' cross motions for summary judgment. Both sides then filed requests to file motions to reconsider, which the Court granted for the purpose of correcting errors in its prior summary judgment order. The Court asked the parties to construe their motions to reconsider as renewed motions for summary judgment. The Court limited the parties' arguments to (1) MRI's claim that Allan breached the Stock Purchase Agreement ("SPA"); (2) Allan's claim for fraudulent inducement; (3) Defendants' defamation claim; and (4) how the Arbitrator's findings of fact impact the Court's prior summary judgment order, as well as the extent to which the Court may rely on those factual findings for its present analysis.

First, because the Arbitrator expressly stated that his findings of fact should not be given a preclusive effect or otherwise impact this litigation, the Court will not rely on the Arbitrator's findings here or consider how they otherwise impact its prior summary judgment analysis.

Second, the Court will grant summary judgment to Allan on MRI's claim that he breached the SPA because MRI cannot show it is entitled to damages. The SPA's offset provision provides the sole remedy for Allan's contractual breach, and MRI has already obtained the full extent of the remedy available under the offset provision, so it was erroneous for the Court to award MRI the difference in the value of the Promissory Note

between when this litigation commenced and when MRI provided the requisite offset notice.

Third, the Court will deny MRI's motion for summary judgment on Allan's claim for fraudulent inducement because Allan has set forth sufficient evidence of fraudulent inducement at this stage that preclude summary judgment, and the SPA's integration clause does not foreclose the possibility of fraud.

Fourth, the Court will deny MRI's motion for summary judgment on Defendants' defamation claim pertaining to Dorinda Kruggel because a reasonable jury could conclude that her text message indicates she learned of the defamatory statements from MRI.

Finally, the Court will deny Defendants' Motion for Indicative Ruling to Correct Clerical Errors because Defendants appealed the Court's Order on the Arbitration Award more than twenty-eight days after Judgment was entered, so the Court lacks jurisdiction to modify the Judgment at this time.

## BACKGROUND

### I.    FACTUAL BACKGROUND

The Court has previously detailed the complex factual allegations in this litigation and will therefore not reiterate them in detail again here. *See Management Registry, Inc. v. A.W. Companies, Inc.* ("*MRI*"), No. 17-5009, 2022 WL 4706702, at *1–4 (D. Minn. Sept. 30, 2022).  Broadly, MRI is a recruiting and staffing company owned by Joe Malone and his two sons, Tim and Terry Malone.  *Id.* at *1.  Defendant Allan Brown was the president

and part owner of a suite of companies collectively referred to as AllStaff, along with Mary and Mel Zwirn.  *Id.*

Mel Zwirn's health began declining in 2016, and the Zwirns contemplated selling AllStaff to the Malones.  *Id.* at *2.  Allan and the Malones negotiated the sale of AllStaff via a Stock Purchase Agreement ("SPA"), and the sale closed in September 2017.  Of relevance to the present discussion, the SPA prohibited Allan from engaging or assisting others who were in competition with MRI, from inducing or encouraging actual or prospective clients to terminate or modify their relationship with MRI, or to solicit or hire any person who is currently offered employment by MRI or allow any affiliates to do so. *Id.* at *3.  The SPA also contained an indemnification clause which required the Zwirns and Allan to indemnify MRI against "all Losses" incurred, sustained, or imposed upon MRI "with respect to or by reason of: (a) any inaccuracy in or breach of any of the representations or warranties of Sellers contained in this Agreement; or (b) any breach or non-fulfillment of any covenant, agreement or obligation to be performed by Sellers pursuant to this Agreement."  *Id.* at 4.  The SPA also included the following provision:

> **Offset of Purchase Price.** Notwithstanding anything to the contrary contained herein, Buyer's [MRI's] sole recourse for indemnification from Sellers [Allan Brown and the Zwirns] shall be by way of an offset of the remaining portion of the Purchase Price payable under the Promissory Note. Such offset shall be applied on advance written notice to the Sellers of no less than 30 days.

*Id.*

During the sale process, Allan Brown and the Malones supposedly discussed selling back several Minnesota based non-industrial divisions of AllStaff (the "Minnesota Businesses") to Allan's wife, Defendant Wendy Brown.  *Id.*  That deal never materialized and the facts underlying that alleged deal are still highly disputed by the parties.  Under the terms of the sale, Allan would continue to serve as the president of AllStaff companies, other than Minnesota Businesses that would supposedly be sold back to Wendy.  *Id.* at *2.

Though there are many disputed facts, it is clear that by the end of October 2017, the negotiations for Wendy to purchase the Minnesota Businesses fell apart.  *Id.*  Shortly thereafter, Wendy and Allan set out to create their own institution, Defendant A.W., and Allan resigned from his position with MRI.  *Id.*  The Browns used a great deal of data and information from the Minnesota Businesses to form A.W.  *Id.*

## II.    PROCEDURAL BACKGROUND

MRI initiated this action on November 3, 2017.  (Compl. at 1, Nov. 3, 2017, Docket No. 1.)  In its Second Amended Complaint, MRI brought claims for conversion, common law fraud, malicious injury, business defamation, violation of the Minnesota Deceptive Trade Practices Act, tortious interference, unjust enrichment, breach of contract, breach of the duty of loyalty, indemnification, misappropriation of trade secrets, civil conspiracy, and civil theft.  (2nd Am. Compl. at 34–52, July 12, 2019, Docket No. 251.)  Defendants moved to dismiss MRI's claims, which the Court denied.  (Order on Mot. Dismiss, Jan. 30, 2020, Docket No. 381.)  Defendants filed an answer, asserting counterclaims for breach

of contract, tortious interference with prospective economic advantage, defamation, tortious interference with contractual relationships, common law fraud, negligent misrepresentation, unjust enrichment, promissory estoppel, indemnification, and breach of promissory note. (Answer and Countercls. at 78–93, Feb. 14, 2020, Docket No. 388.)

The parties filed cross motions for summary judgment on January 14, 2022. (Pl.'s Mot. Summ. J., Docket No. 589; Defs.' Mot. Summ. J., Docket No. 605.) The Court issued an order on the parties' summary judgment motions on September 30, 2022. *See MRI*, 2022 WL 4706702. Of relevance for this present issue, the Court granted summary judgment for MRI on its breach of contract claim against Allan. *Id.* at *7–8. The Court denied MRI's motion for summary judgment on Allan's counterclaim for fraudulent inducement, alleging that MRI fraudulently induced him to sign the SPA with the false promise of selling the Minnesota Businesses to Wendy, because Allan set forth sufficient evidence for a jury to find that he entered into the SPA relying on MRI's assurances that it would sell the businesses to Wendy. *Id.* at *14. Because the statements that MRI supposedly made to the IT vendor did not contain any accusations about Defendants, the Court granted MRI's motion for summary judgment on this portion of Defendants' defamation claim. *Id.* at *13. However, the Court found that MRI's statements to its own employee, Dorinda Kruggel, could be sufficient to establish the publication prong of Defendants' defamation claim. *Id.*

Both parties requested reconsideration shortly after the Court issued its summary judgment order.  (Defs.' Letter to District Judge, Oct. 4, 2022, Docket No. 678; Pl.'s Letter to District Judge, Oct. 7, 2022, Docket No. 681.)  The Court granted the parties' requests to file motions to reconsider and asked them to style their motions as supplemental summary judgment motions.  However, the Court requested that the parties focus on certain issues.  Defendants were instructed to only address MRI's breach of contract claim against Allan Brown, specifically analyzing the Stock Purchase Agreement and the facts, inconsistencies with other findings, and the liability of individual Defendants.  (Briefing Order at 2, Mar. 22, 2023, Docket No. 769.)  MRI was instructed to only address (1) Allan's claim for fraudulent inducement, specifically the nature of the facts Defendants allegedly relied on and the effect of the integration clause; and (2) Defendants' claim for defamation, specifically the facts in the record that may establish a genuine dispute of material fact with regard to the actual malice element.  (*Id.*)

Throughout this litigation, various contractual claims pursuant to Allan's Employment Agreement with MRI proceeded through arbitration.  The Arbitrator issued an Arbitration Award on November 14, 2022, that included factual findings that are relevant to the parties' claims in this litigation.  (*See* 1st Declaration of James Michael Morris ("1st Morris Decl."), Ex. J ("Final Order/Award"), Apr. 6, 2023, Docket No. 772-10.) The Court therefore allowed the parties to brief the extent to which the Court should rely

on the Arbitrator's findings of fact and how those factual determinations impact the Court's summary judgment analysis. (Briefing Order at 2.)

The Court then issued an order confirming the Arbitration Award on June 28, 2023. (Order on Arbitration Award, June 28, 2023, Docket No. 789.) Defendants have since appealed that order to the Eighth Circuit. (Notice of Appeal, July 5, 2023, Docket No. 792.) After filing their appeal, Defendants also filed a Motion for Indicative Ruling to Correct Clerical Errors requesting that the Court modify the Judgment entered for the Arbitration Award. (Mot. Alter/Amend/Correct J., Aug. 10, 2023, Docket No. 808.) In accordance with the Court's prior instruction, the parties also filed their supplemental summary judgment motions on the limited areas the Court permitted. (Pl.'s Mem. Supp. Supplemental Mot. Summ. J., July 28, 2023, Docket No. 805; Mem. Supp. Defs.' Renewed Mot. Summ. J., July 28, 2023, Docket No. 799.)

## DISCUSSION

### I.    STANDARD OF REVIEW

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most

favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party may not rest on mere allegations or denials but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial. *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

## II.   ANALYSIS

The Court will begin by considering the extent to which it can rely on the Arbitrator's findings of fact. It will then turn to MRI's claim that Allan breached the Stock Purchase Agreement, Allan's claim for fraudulent inducement, and Defendants' defamation claim. Lastly, it will consider Defendants' Motion for Indicative Ruling to Correct Clerical Errors.

### A.   Arbitrator's Findings of Fact

The Court must first determine the extent to which it should consider the Arbitrator's findings of fact in its analysis. The Court compelled arbitration of three of Allan's counterclaims against MRI pursuant to the arbitration clause in Allan's Employment Agreement. (Mem. Op. Order Granting Pl.'s Mot. Compel Arbitration at 1–2, Feb. 27, 2018, Docket No. 123.) Allan's claims proceeded through arbitration and the

Arbitrator held a multi-day hearing in March and May 2022. (Final Order/Award at 1–2.) The Arbitrator then issued an Arbitration Award on November 14, 2022, that extensively detailed how Allan breached his Employment Agreement. (*Id.* at 57.) MRI asserts that *res judicata* applies and the Arbitrator's factual findings should be afforded the same preclusive effect as typical court proceedings. In contrast, Defendants assert that *res judicata* does not apply because the Arbitrator specifically limited his findings' preclusive effect.

The Eighth Circuit has held that an arbitrator's award constitutes a final judgment for the purposes of collateral estoppel and *res judicata*. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Nixon*, 210 F.3d 814, 817 (8th Cir. 2000), *abrogated on other grounds by E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279 (2002). In determining whether *res judicata* applies, the Court must consider three elements: "(1) whether the prior judgment was entered by a court of competent jurisdiction; (2) whether the prior decision was a final judgment on the merits; and (3) whether the same cause of action and the same parties or their privies were involved in both cases." *Ripplin Shoals Land Co., LLC v. U.S. Army Corps of Engineers*, 440 F.3d 1038, 1042 (8th Cir. 2006).

Here, the Court cannot give the Arbitrator's findings of fact preclusive effect. Even assuming the Court were to find that the *res judicata* elements are met, it would nevertheless conclude that the Arbitrator's factual findings do not have a preclusive effect here because the Arbitrator **explicitly said so**. The Arbitrator stated that:

It is noted that disputes related to this history, between these and other parties, have also resulted in litigation in the federal courts in Illinois and Minnesota (some of which is on-going as these claims are being decided). As has been noted at numerous stages of this arbitration, it is recognized that claims in this case may overlap claims in proceedings in other jurisdictions. In making findings on the claims accepted for adjudication herein, and as further defined by the Scope Order, this Arbitrator recognizes that he is not authorized to interpret or enforce the orders of other courts, and he **does not intend for the findings in this arbitration to preclude or influence the consideration of similar or related claims in any other jurisdiction.**

(Final Order/Award at 6–7 (emphasis added).)  Thus, the Arbitrator acknowledged that his findings may impact this litigation but explicitly stated they should not be given any preclusive effect.  In other words, the Arbitrator expressly disclaimed *res judicata*.  It would therefore be inappropriate for the Court to now give his findings preclusive effect. *Cf. Matter of Amberson*, 73 F.4th 348, 352 (5th Cir. 2023) (giving an arbitrator's findings preclusive effect despite a general disclaimer because "at no place in his 53-page, single-spaced award does the arbitrator provide an 'express instruction' to future tribunals not to grant the Award preclusive effect"); *see also* Restatement (Second) of Judgments § 26 cmt. b (Am. L. Inst. 1982) ("A determination by the court that its judgment is 'without prejudice' (or words to that effect) to a second action on . . . the findings of fact . . . unless reversed or set aside, should ordinarily be given effect in the second action.").

Moreover, though MRI previously asked the Court to modify portions of the Arbitration Award, it did not request that the Court modify the portion of the Arbitration Award relating to preclusion.  (*See* Pl.'s Mot. Confirm Arbitration Award, Apr. 6, 2023,

-11-

Docket No. 771; Mem. Supp. Mot. Confirm Arbitration Award, Apr. 6, 2023, Docket No. 773.)  And the Court confirmed the Arbitration Award, which necessarily means it confirmed the Arbitrator's statement limiting the Arbitration Award's preclusive effect. (*See* Order on Arbitration Award at 29.)

Because the Arbitrator expressly stated that his findings of fact should not preclude or influence the Court's consideration of the remaining claims in this litigation, and because MRI did not challenge that statement when it asked the Court to review and enforce the Arbitration Award, the Court will not consider the Arbitrator's factual findings here.  The Court will now analyze the parties' remaining arguments and claims without looking to the Arbitrator's findings of fact.

## B.    Breach of Contract

In its prior summary judgment order, the Court considered whether MRI had set forth sufficient evidence that Allan breached the SPA, which prohibited Allan from engaging or assisting others who are involved in competition with MRI, from inducing or encouraging actual or prospective clients to terminate or modify their relationship with MRI, or to solicit or hire any person who is offered employment by MRI or allow any affiliates to do so for a period of two years following the closing date.  *MRI*, 2022 WL 4706702, at *7–8.  The Court granted summary judgment for MRI on this breach of contract claim because it had found that there was sufficient evidence that Allan assisted in forming and acquiring clients for A.W.  *Id.* at 8.  Based on the SPA's offset of purchase price provision, the Court ordered Defendants to pay the difference between the value of

the Promissory Note at the time of breach on October 30, 2017, and May 2, 2018.  *Id.*

Defendants maintain that summary judgment should have been granted to Allan on this

claim because MRI cannot prove damages and because summary judgment to MRI would

be irreconcilable with the Court's decision that Allan's fraudulent inducement

counterclaim must proceed to trial.  Alternatively, Defendants ask that the Court only

grant summary judgment against Allan, since the other Defendants are not implicated in

this claim.

The parties agree that this contractual claim is governed by Illinois law.  To

establish breach of contract in Illinois, a plaintiff must show "(1) the existence of a valid

and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the

defendant; and (4) resultant injury to the plaintiff."  *Van Der Molen v. Wash. Mut. Fin.,*

*Inc.*, 835 N.E.2d 61, 69 (Ill. App. Ct. 2005).  In their briefing, Defendants do not dispute

that the first three elements are met.  Rather, they primarily dispute whether MRI can

prove damages.  Defendants contend that MRI's sole recourse is offset of the purchase

price, which MRI already obtained in May 2018.  (*See* Factual Stipulation, Jan. 14, 2022,

Docket No. 600.)  MRI was accordingly released of the $4,712,811 remaining on the

Promissory Note as of May 8, 2018.  (*Id.*)  Defendants assert that MRI is not entitled to

any additional damages.[1]  In contrast, MRI believes it is entitled to the value of the

---

[1] Though MRI argues that this argument was never raised in Defendants' prior filings and is therefore waived, that is simply untrue.  (*See* Def.'s Mem. Supp. Mot. Summ. J. at 43, Jan. 14, 2022, Docket No. 607.)

Promissory Note when this litigation was commenced ($5,840,513), rather than only the value of the Promissory Note in May 2018. If true, MRI would be entitled to the $1,127,632 difference.[2]

The SPA's offset of purchase price provision states that MRI's "**sole recourse** for indemnification" from Allan Brown "shall be by way of an offset of the remaining portion of the Purchase Price payable under the Promissory Note." *MRI*, 2022 WL 4706702, at *4 (emphasis added). The SPA provides that "[s]uch offset shall be applied **on advance written notice** to the Sellers of no less than 30 days." *Id.* (emphasis added). The parties stipulated that MRI provided such formal written notice on May 2, 2018. (Factual Stipulation at 1.)

Thus, under the plain terms of the SPA, the only available damages for Allan's breach of the SPA is the offset amount. That offset amount is only applied on advance written notice. MRI provided written notice of the offset on May 2, 2018. Thus, under the plain language of the SPA, MRI is only entitled to the portion of the Purchase Price payable under the Promissory Note as of May 2018. It was therefore erroneous for the

_____

[2] In its briefing, MRI states that the differential identified in the parties' joint stipulation of fact is $1,127,**932**, which the Court believes is a typographical error. (Pl.'s Mem. Opp. Def.'s Mot. Summ. J. at 10, Aug. 14, 2023, Docket No. 816.) The joint stipulation indicates that the remaining portion of the Note as of October 30, 2017, was $5,840,513, while the remaining portion of the Note as of May 8, 2018, was $4,702,881. The accurate difference between these two values is $1,127,**632**.

Court to grant MRI the difference between the value of the Promissory Note as of the time of the breach and May 2, 2018. *Id.* at *8.

In the alternative, MRI asks the Court to allow it to proceed with its unjust enrichment claim that the Court previously dismissed so that it can properly recover the full scope of damage caused by Defendants' conduct. The theory of unjust enrichment is an equitable remedy based upon a contract implied in law. *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992). The basis for the unjust enrichment doctrine is that no one ought to enrich themselves unjustly at the expense of another. *Village of Bloomingdale v. CDE Enterprises, Inc.*, 752 N.E.2d 1090, 1102 (Ill. 2001). But where there is a specific contract that governs the relationship of the parties, the doctrine of unjust enrichment has no application. *Hartigan*, 607 N.E.2d at 177. Even if the Court were to find that Defendants were unfairly enriched in this instance, the doctrine of unjust enrichment does not apply because there is no dispute that there is a specific contract the governs the relationship of the parties: the SPA. Because a valid contract exists, MRI cannot succeed on an unjust enrichment claim, so the Court will decline to allow such claim to proceed.

Because MRI was already released from the $4,712,881 remaining on the Promissory Note as of May 8, 2018, it is not entitled to any additional damages under the express terms of the SPA. Accordingly, the Court will grant summary judgment to Allan on MRI's breach of contract claim. Because MRI loses on this claim, the Court need not

consider whether it is irreconcilable with the Court's findings on Allan's fraudulent inducement counterclaim.

### C.    Fraudulent Inducement

In its prior summary judgment order, the Court denied MRI's motion for summary judgment on Allan's claim that he was fraudulently induced by MRI to sign the SPA with the false promise of selling the Minnesota Businesses to Wendy. *MRI*, 2022 WL 4706702, at *14. The Court found that there was sufficient evidence for a jury to find that Allan entered into the SPA because of MRI's assurances that it would sell Wendy the Minnesota Businesses. *Id.*

Minnesota courts have summarized the law of fraudulent inducement as follows:

> To establish a claim for fraud, a plaintiff must show: (1) A false representation of a material past or present fact susceptible of knowledge; (2) The defendant either knew it to be false or asserted it as his own knowledge without knowing whether it is true or false; (3) The defendant intended the plaintiff to act on his representation; (4) The plaintiff was induced to act in reliance on the representation; and (5) The plaintiff suffered damages which were the proximate cause of the representation.

*Progressive Techs., Inc. v. Shupe*, No. A04-1110, 2005 WL 832059, at *4 (Minn. Ct. App. Apr. 12, 2005) (internal quotation omitted). In other words, to establish that MRI fraudulently induced Allan to sign the SPA, Defendants must prove that MRI made a false representation to Allan of a material fact, knowing it to be false, with intent to induce Allan to sign the SPA, and that Allan relied on the misrepresentation and was injured. *See Davis v. Re-Trac Mfg. Corp.*, 149 N.W.2d 37, 38–39 (Minn. 1967).

-16-

MRI asserts that the Court erred in not granting its motion for summary judgment on Allan's fraudulent inducement claim because the SPA included an extensive integration clause.[3]  Specifically, the SPA stated that:

> This Agreement, the Asset Purchase Agreement and the documents and instruments and other agreements specifically referred to herein or therein or delivered pursuant hereto or thereto **constitute the entire agreement among the parties** with respect to the subject matter hereof **and supersede all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof**; and are **not intended to confer upon any other person any rights** or remedies hereunder.

(1st Connolly Decl., Ex. 5 ("SPA"), at 29, Jan. 14, 2022, Docket No. 608-2 (emphasis added).) Because this provision of the SPA disclaims any agreement to sell the Minnesota Businesses to Wendy, or that any other rights would be conferred upon Wendy or another third party, MRI argues that it is entitled to summary judgment on Allan's fraudulent inducement claim.

However, Minnesota has well-established caselaw demonstrating that "fraud cannot be waived by contractual disclaimers." *Great Plains Educ. Foundation, Inc. v. Student Loan Fin. Corp.*, 954 N.W.2d 844, 851 (Minn. Ct. App. 2020); *see also Ganley Bros.*

---

[3]  MRI also argues that Allan's fraudulent inducement claim fails because he did not identify any "past or existing material fact," but rather a **future** fact: that MRI would sell the Minnesota Businesses to Wendy in the future.  Because MRI never raised this argument in its first summary judgment motion, it is waived.  (Order on Reconsideration Letters at 2, Oct. 21, 2022, Docket No. 701 (noting that all arguments that were not raised previously were waived); *see* Pl's 1st Mem. Supp. Mot. Summ. J. at 60–61, Jan. 14, 2022, Docket No. 601.)

*v. Butler Bros. Bldg. Co.*, 212 N.W. 602, 603 (Minn. 1927) (explaining that Minnesota law does not permit "a covenant of immunity to be drawn that will protect a person against his own fraud"). Courts in this circuit have similarly allowed fraud claims to proceed despite the existence of no-reliance and integration clauses. *Randall v. Lady of Am. Franchise Corp.*, 532 F. Supp. 2d 1071, 1075 (D. Minn. 2007); *Comm. Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 938 F.2d 870, 875 (8th Cir. 1991).

A court may "find that reliance on an oral representation was unjustifiable as a matter of law only if the written contract provision explicitly stated a fact completely contradictory to the claimed misrepresentation." *Johnson Bldg. Co. v. River Bluff Dev. Co.*, 374 N.W.2d 187, 194 (Minn. Ct. App. 1985); *see also Randall*, 532 F. Supp. 2d at 1086 ("[O]nly when an allegedly fraudulent statement directly contradicts a substantive contract term will courts rely on the parol-evidence rule to reject a fraud claim."). But if the written contract is not completely contradictory to the oral representation, the question of reliance is one for the trier of fact. *River Bluff Dev. Co.*, 374 N.W.2d at 194.

Here, the alleged representation that MRI would sell the Minnesota Businesses to Wendy is not "completely contradictory" to the SPA's integration clause because the integration clause makes no reference to the Minnesota Businesses. It is simply a general integration clause. Thus, the fact that the SPA included an integration clause does not necessarily foreclose the possibility of Allan having been fraudulently induced and MRI should not be granted summary judgment on this claim based solely on the clause.

-18-

Moreover, Defendants have set forth sufficient evidence of the fraudulent inducement elements to survive MRI's summary judgment motion.   Tim Malone confirmed in a declaration that the Malones were at some point willing to sell the Minnesota Businesses to the Browns.  (Decl. Tim Malone ("Malone Decl.") ¶ 38, Nov. 15, 2017, Docket No. 37.)   Allan submitted a declaration indicating that it was MRI's suggestion to sell the Minnesota Businesses directly to Wendy, and that MRI told him that the sale to Wendy needed to be a separate transaction from the SPA.  (Decl. Allan K. Brown ("Brown Decl.") ¶¶ 9–10, 16, Nov. 10, 2017, Docket No. 26.)  Allan also stated that the Malones and their counsel repeatedly assured them that the sale to Wendy would occur as planned, but that they were unable to complete the Minnesota Businesses closing documents prior to the overall closing.  (*Id.* ¶¶ 18–20.)  Allan indicated that he "would only be willing to be a part of the sale of these businesses" if he could retain a majority controlling ownership interest in the Minnesota Businesses, which suggests that the Minnesota Businesses were material.  (*Id.* ¶ 8.)   These statements could lead a reasonable jury to conclude that MRI fraudulently induced Allan to sign the SPA under the promise that it would sell the Minnesota Businesses back to Wendy.  Any question about whether Allan actually relied on MRI's statements about the Minnesota Businesses is best left for the jury. *River Bluff Dev. Co.*, 374 N.W.2d at 194.

Because the SPA's integration clause does not foreclose Allan's fraudulent inducement claim and because Allan has set forth sufficient facts that could lead a

reasonable jury to conclude that he was fraudulently induced into signing the SPA, the Court will deny MRI's motion for summary judgment on this claim. Of course, a jury may evaluate the evidence and witness testimony and find that Allan was not fraudulently induced. *United States v. Meads*, 479 F.23d 598, 602 (8th Cir. 2007) ("Credibility is always an issue for the jury to determine."). But, at this juncture, MRI is not entitled to summary judgment on Allan's fraudulent inducement claim.

### D.    Defamation

Finally, in its prior summary judgment order, the Court found that MRI's alleged statements to A.W.'s client, Meijer, that it must cease and desist from working with A.W. did not constitute defamation because they were not statements about the Defendants. *MRI*, 2022 WL 4706702, at *13. The Court therefore granted summary judgment to MRI on this claim. *Id.* Defendants had also claimed that MRI defamed them by telling Dorinda Kruggel (an MRI employee) and one of A.W.'s IT vendors that Defendants stole MRI's trade secrets and company files. *Id.* The Court found that the statements to the IT vendor were not accusations, but rather simple requests for the IT vendor to not share any of MRI's trade secrets with A.W., so they did not constitute defamation and granted summary judgment to MRI on this claim. *Id.* However, MRI's statements to Ms. Kruggel were sufficient to establish the publication prong of Defendants' claim, so the Court denied MRI's motion for summary judgment as to the statements to the employee. *Id.*

-20-

MRI asserts that the Court erred in denying summary judgment to it on the claim involving Ms. Kruggel because Defendants failed to show malice.

To succeed on a defamation claim under Minnesota law, a plaintiff "must prove that the defendant made: (a) a false and defamatory statement about the plaintiff; (b) in [an] unprivileged publication to a third party; (c) that harmed the plaintiff's reputation in the community." *Maethner v. Someplace Safe, Inc.*, 929 N.W.2d 868, 873 (Minn. 2019) (quoting *Weinberger v. Maplewood Rev.*, 668 N.W.2d 667, 673 (Minn. 2003)). The second element recognizes some common law privileges, both absolute and qualified, that defeat defamation claims. *Id.* But qualified privilege "is overcome if the plaintiff demonstrates that the defendant made the statement with malice," *id.* (citing *Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 920 (Minn. 2009)), meaning that the defendant made the statement "from ill will and improper motives, or causelessly and wantonly for the purpose of injuring the plaintiff." *Stuempges v. Parke*, *Davis & Co.*, 297 N.W.2d 252, 257 (Minn. 1980) (citation omitted) (internal quotation marks omitted).

Defendants rely on a single text message from Ms. Kruggel as evidence that MRI made false statements to her. (Decl. Wendy Brown, Ex. 13, at 34–37, Nov. 10, 2017, Docket No. 25-2.) Ms. Kruggel wrote:

> Malone/AllStaff came down to me today. Annie lied to us (me). Wendy and Al defaulted on their payment to Malone to buy the company. Malone didn't get their money as agreed. They pulled the offer for lack of payment hence Monday. Wendy can't buy a company with no financial backer.

(*Id.* at 34.)  Ms. Kruggel also wrote that "Wendy convinced Jeanie and [B]arb after Annie left to steal company files.  Wendy couldn't afford to buy the company so she wanted them to steal it."  (*Id.* at 35.)  It is unknown who was the recipient of Ms. Kruggel's text message.

MRI argues that this text message does not overcome their motion for summary judgment because the statements made in the message are not attributed to MRI specifically.  The Court disagrees.  Ms. Kruggel wrote that "Malone/AllStaff came down to me today."  (*Id.* at 34.)  She then proceeded to share Wendy's alleged actions.  The reasonable inference is that she learned about Wendy's alleged actions from "Malone/AllStaff."  Because the Malone family owns MRI and MRI purchased AllStaff, a reasonable jury could conclude that MRI made these statements to Ms. Kruggel.

MRI also argues that the text messages do not overcome its motion for summary judgment because Defendants have not set forth evidence of malice sufficient to overcome the burden of qualified privilege afforded to intra-corporate communications.  The Minnesota Supreme Court has suggested that intra-corporate communications may be qualifiedly privileged.  *Frankson v. Design Space Int'l*, 394 N.W.2d 140, 143 (Minn. 1986).  Qualified privilege is an affirmative defense that may be destroyed by a showing of actual malice.  *Id.*  Because it is an affirmative defense, qualified privilege is generally forfeited if it is not raised in responsive pleadings.  *Sayre v. Musicland Grp., Inc.*, 850 F.2d 350, 354 (8th Cir. 1998).

The Court is unable to find any evidence in the record that MRI ever advanced the intra-corporate communication qualified privilege argument prior to its present briefings. In fact, it was never even raised in MRI's initial summary judgment briefs—let alone at the pleading stage. (*See* Pl's 1st Mem. Supp. Mot. Summ. J. at 59–60, Jan. 14, 2022, Docket No. 601; Pl.'s 1st Reply Mem. Supp. Mot. Summ. J., Feb. 25, 2022, Docket No. 625.)  MRI has therefore forfeited its qualified privilege argument.  (*See* Order on Reconsideration Letters at 2, Oct. 21, 2022, Docket No. 701 (noting that all arguments that were not raised previously were waived).)   Because MRI waived its qualified privilege argument, Defendants need not show malice.  Accordingly, the Court did not err in denying MRI's motion for summary judgment on Defendants' defamation pertaining to statements made to Ms. Kruggel.

In sum, the Court will amend its prior summary judgment order and will grant summary judgment to Defendants on MRI's breach of contract claim because MRI is not entitled to any damages beyond the remedy provided in the SPA's offset provision clause, which it has already obtained.  The Court also finds that it did not err in regard to Allan's fraudulent inducement claim or Defendants' defamation claim, and therefore will affirm its prior summary judgment order in all other regards.

## III.     MOTION FOR INDICATIVE RULING TO CORRECT CLERICAL ERRORS

For the sake of efficiency, the Court will take this opportunity to also address Defendants' Motion for Indicative Ruling to Correct Clerical Errors.   (Mot.

Alter/Amend/Correct J.)  The Court issued an order on the Arbitration Award on June 28, 2023, in which it held that MRI is entitled to $1,568,864.69, plus interest, per the Arbitration Award.  (Order on Arbitration Award at 30, June 28, 2023, Docket No. 789.) The Clerk's Office then entered judgment in favor of MRI on June 29, 2023.  (J., June 29, 2023, Docket No. 790.)  Allan Brown appealed the order affirming the Arbitration Award to the Eighth Circuit on July 5, 2023.  (Notice of Appeal, July 5, 2023, Docket No. 792.)  On August 10, 2023, Defendants filed a "Motion for Indicative Ruling to Correct Clerical Errors," asserting that the Order on the Arbitration Award's Judgment was incorrectly recorded as jointly against Allan Brown, A.W. Companies, Inc., Wendy Brown, and Milan Batinich.  (Mem. Supp. Mot. Alter, Aug. 10, 2023, Docket No. 810.)  Thus, Defendants ask the Court to correct this clerical error and enter judgment only against Allan Brown because he was the sole Respondent in the Arbitration Award.

A district court "may correct a clerical error or mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record."  Fed. R. Civ. P. 60(a).  However, "after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave."  *Id.*  "[N]o leave is necessary if the Rule 60(a) motion is filed within twenty-eight days of entry of judgment."  *BancorpSouth Bank v. Hazelwood Logistics Ctr., LLC*, 706 F.3d 888, 897 (8th Cir. 2013) (citing Fed. R. App. P. 4(a)(4)(A)(vi), (B)(i)).  Here, the Judgment was entered on June 29, 2023, and Defendants' motion to correct the clerical error was

not filed until August 10, 2023—more than twenty-eight days after the entry of judgment. Accordingly, the mistake may not be corrected without leave from the Eighth Circuit.

However, Federal Rule of Appellate Procedure 12.1 provides that the court of appeals may remand an order for further proceedings while retaining appellate jurisdiction "[i]f a timely motion is made in the district court for relief that it lacks authority to grant" because of the pending appeal, and the "district court states that it would grant the motion or that the motion raises a substantial issue." Fed. R. App. P. 12.1.

The Court intends to grant the Defendants' motion to correct the clerical error if the Eighth Circuit remands for that specific purpose. *See* Fed. R. Civ. P. 62.1(a)(3). The order on the Arbitration Award expressly stated that Judgment should be entered in favor of MRI "per the Arbitration Award." (Order on Arbitration Award at 30.) The Arbitration Award was only against Allan Brown. (*See* Final Order/Award at 55–57.) Thus, it was erroneous for Judgment to be entered against all Defendants in this action and should have instead been entered only against Defendant Allan Brown. If the Eighth Circuit remands to this Court for the purpose of deciding this motion and Defendants file a renewed motion, the Court will grant it. Defendants should promptly notify the Eighth Circuit pursuant to Federal Rule of Civil Procedure 62.1(a)(3) and Federal Rule of Appellate Procedure 12.1(a).

**CONCLUSION**

Because the Arbitrator expressly disclaimed his factual findings' preclusive effect, the Court finds that *res judicata* does not apply and the Court will not rely on the Arbitrator's factual findings.  As to the Court's prior summary judgment order, the Court will amend it to grant Defendants' motion for summary judgment on MRI's breach of contract claim because MRI has already obtained the full extent of remedies available under the SPA.  The Court will affirm its prior summary judgment order in all other regards.  Further, though the Court currently lacks jurisdiction to correct the Judgment entered per the Arbitration Award, the Court intends to correct it if given permission by the Eighth Circuit.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The Court's Memorandum Opinion and Order Granting in Part and Denying in Part the Parties' Motions for Summary Judgment [Docket No. 676] is amended as follows:

   a. Plaintiff's Motion for Summary Judgment [Docket No. 589] is **DENIED** as to Count VII as it pertains to Allan Brown's Breach of Contract claim;

b.  Defendants' Motion for Summary Judgment [Docket No. 589] is **GRANTED** as to Plaintiff's Count VII as it pertains to Allan Brown's Breach of Contract; and

c.  the Order is **AFFIRMED** with respect to all other claims.

2.  Defendants' Motion for Indicative Ruling to Correct Clerical Errors [Docket No. 808] is **DENIED without prejudice.**

DATED:  October 2, 2023
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge